IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| L. LIN WOOD, JR., | ) |
| | ) |
|     *Plaintiff*, | ) |
| -vs- | ) |
| | )   Case No. 1-21-cv-01169 TCB |
| PAULA J. FREDERICK, *et al.*, | ) |
| | ) |
|     *Defendants*. | ) |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

The Plaintiff respectfully submits this Memorandum In Support of Plaintiff's Motion For Preliminary Injunction.

**I. Introduction**

An attorney who fails or refuses to undergo a mental evaluation when requested to do so by the Georgia State Disciplinary Board faces a grave and imminent threat of serious disciplinary sanctions, including the emergency suspension of his law license and ability to earn a livelihood.

The Plaintiff seeks a preliminary injunction because he faces an imminent threat of irreparable harm having been compelled by a government agency, acting under color of state law, to submit to an involuntary medical examination of the state's choosing and without notice of any complaint from a client regarding his conduct or competency as an attorney, and without evidence indicating that he

suffers from any mental illness, cognitive impairment, alcohol abuse or substance abuse impairing his competency as a lawyer. Instead, the Defendants predicate their demand for a mental evaluation on grievances by four, out-of-state, non-client individuals who admit they have had no interaction with the Plaintiff and whose complaints against the Plaintiff are based solely and exclusively on his public and private speech on matters of national public interest. The Plaintiff seeks this Court's intervention in order to prevent the deprivation of his constitutional rights of privacy, and to prevent future arbitrary enforcement by the Defendants of GA BAR RULE 4-104 in a manner that chills his right of free speech and denies him due process as protected under the First and Fourteenth Amendments of the United States Constitution.

## II.     Facts Supporting Requested Injunctive Relief

L. Lin Wood is an attorney licensed to practice in the State of Georgia, and was admitted to practice on June 10, 1977. He currently resides in South Carolina, but maintains a law office in Atlanta, Georgia, and is actively engaged in the practice of law serving as lead counsel in several complex litigation cases before state and federal courts in the State of Georgia as well as several other jurisdictions.

On January 11, 2021, Adrienne D. Nash, Grievance Counsel for the State Bar of Georgia ("SBG"), sent two letters to Mr. Wood each enclosing a grievance it had received. One grievance, dated January 1, 2021, was from an individual in

Hackensack, New Jersey, John Bellocchio; the other, dated December 17, 2020, was from an individual in Maumee, Ohio named Ted Kurt. (Wood Affidavit at ¶ 4). Both Mr. Bellocchio and Mr. Kurt admitted that they had never been in an attorney-client relationship with Mr. Wood. In addition, neither has ever had any direct contact with Mr. Wood.

John Bellocchio's grievance shockingly accused Mr. Wood of the crime of treason under Georgia Code Section 16-11-1. (Wood Affidavit at ¶ 6). This false, criminal accusation was based entirely on a single political comment made by Mr. Wood on his personal Twitter account criticizing former Vice-President Pence. The comment referenced by Mr. Bellocchio is pure rhetorical hyperbole by Mr. Wood and is protected free speech on a matter of inherent, national public concern. (Wood affidavit at paragraph 6).

Similarly, the complaint filed by Ted Kurt, is a generalized grievance regarding Mr. Wood's "multiple court challenges to overturn Mr. Trump's election loss." Like Mr. Bellocchio, Mr. Kurt bases his grievance on a post by Mr. Wood on his personal Twitter account in December of 2020. The statement, which appears in paragraph 9 of Mr. Wood's affidavit, is a purely political comment by Mr. Wood urging others to take certain precautions and to meet with the leaders in their communities. Mr. Kurt falsely mischaracterized the Plaintiff's political comment as "seditious speech". *Id*. at ¶ 9.

Neither Mr. Bellocchio nor Mr. Kurt accuse Mr. Wood of engaging in any misconduct as an attorney directed toward any client; nor do they cite to any Rule of Professional Conduct which they say he violated. Their sole criticism is leveled at Mr. Wood's exercise of his protected speech activity as a private citizen.

On January 26, 2021, the SBG sent two additional letters to Mr. Wood, each again enclosing a grievance from an out-of-state resident. One was from an individual named Paul Fine, and attorney who resides in Chicago, Illinois; the other was from an individual named Stacy Smith-Goldenberg, an attorney who resides in Eugene, Oregon. (Wood Affidavit at ¶ 12). Both Mr. Fine and Ms. Goldenberg admit that they were never in an attorney-client relationship with Mr. Wood and that they have never spoken with him.

Mr. Fine's grievance was based on solely on a comment posted by Mr. Wood, speaking as a private citizen, on his personal Twitter account that was critical of former Vice President Mike Pence and allegedly published by Mr. Wood on January 1, 2021.

Ms. Stacey Smith-Goldenberg falsely accused Mr. Wood of posting comments on his personal Twitter account that she alleges incited the "riot and insurrection at the U.S. Capitol on January 6, 2021." (Wood Affidavit at ¶ 22).

When notified of these grievances, Mr. Wood sent an email to Paula Frederick, General Counsel for the SBG, on January 29, 2021 expressing his hope

4

that the Executive Committee would make a wise decision and avoid a battle over a medical exam that was both unjustified and based on complaints regarding his exercise of free speech.  (*Id*. at ¶ 29).

Despite Mr. Wood's request, on February 1, 2021, Defendant Margaret Ware Sigman Puccini, acting on the grievance filed by Stacey Smith-Goldenberg of Oregon, issued a subpoena to Mr. Wood's former law firm:  Wade, Grunberg, & Wilson, LLC.  The subpoena requested production of various documents pertaining to a pending lawsuit between Wade, Grunberg & Wilson, LLC and Mr. Wood. (Wood Affidavit at ¶ 26). This lawsuit, which is still in pending litigation in the Fulton County Superior Court, involves sharply contested issues of fact and law which have yet to be argued or decided.

At the present time, no complaint or grievance has been filed by any present or former client of Mr. Wood alleging that he has in any way conducted himself in an unprofessional manner.  No client has accused Mr. Wood of behaving in a manner that calls into question his competency or mental acuity to faithfully perform his duties as a member of the bar. No bar complaint has been filed against Mr. Wood by any person or entity, including the State Bar of Georgia citing specific conduct by him as a violation of a particular Rule of Professional Conduct.

On February 11, 2021, Paula J. Frederick, acting in her capacities as both General Counsel for the State Bar of Georgia and as a member of the Disciplinary

5

Board of the State Bar of Georgia, sent a letter to Mr. Wood stating: On February 11, 2020, I received a letter via electronic mail from Ms. Paula Frederick which stated:

> The Board did not reconsider **its finding** that Mr. Wood may be impaired or incapacitated to practice law. Pursuant to Bar Rule 4-104, the Board hereby requests that you consent to a confidential evaluation by a medical professional. The Board has preliminary identified a medical doctor who has agreed to perform the evaluation at the Bar's expense" **"Pursuant to Bar Rule 4-104, the Board hereby requests that you consent to a confidential evaluation by a medical professional."**
>
> Ms. Frederick closed her letter with the following admonition:
>
> Bar Rule 4-104 provides that a lawyer's refusal to participate in an evaluation recommended under the rule may be grounds for further proceedings under Bar Rules. **If you decline to cooperate, I will convey that decision to the State Disciplinary Board so that they may decide how to proceed.**

(A true and correct copy of Ms. Frederick's letter is Exhibit A in the Appendix of Exhibits filed in support of this motion.)(emphasis not in original).

The following day, on February 12, 2021, Defendant Christian Joseph Steinmetz, III, sent to Mr. Wood a Notice of Investigation enclosing some 1,677 pages of documents. These documents consist of excerpts from four lawsuits and a variety of public statements and private statements by Mr. Wood, including tweets and social media posts. Three of the lawsuits are from jurisdictions outside the State of Georgia in which Mr. Wood participated along with counsel in other states. The

fourth one was a Georgia lawsuit in which Mr. Wood was himself the Plaintiff and was represented by Georgia Attorney Ray S. Smith, III as counsel of record.

The Plaintiff responded to Ms. Frederick's February 11, 2021 determination notice: "Likewise, any request for an independent medical examination, physical or mental, raises serious privacy issues, among other significant concerns. . . . To date, the Bar has not provided me with the alleged factual justification for the Bar's intrusive demand for a mental health examination and I am aware of no basis for this unprecedented demand on a member of the Bar of Georgia." Mr. Wood requested a reasonable extension of time to formally respond to the Bar's demands, and to locate counsel to represent him. (A true and correct copy of this letter dated February 18, 2021 is Exhibit B in the Appendix of Exhibits).

On March 2, 2021, Mr. Wood followed up with a second letter to Ms. Frederick and again requested that she provide him information to assist him in the selection of counsel to represent him in this proceeding. He also renewed his request that the Defendants provide him with an explanation of the basis of its determination that he undergo a mental examination.

> Finally, you have asked for a psychological examination, but that seems premature if there is no basis for your statements that I "appear[] to be impaired to practice law" So far, nothing in the Complaint has dealt in any way with my conduct in the practice of law. Proposed Counsel have asked if there is any specific case which serves as the basis for the Bar to challenge my competency to practice law or which justifies an allegation that I "appeared" impaired. Have you or the Bar identified any case in which a client or former client complained that my

7

competency was impaired, if so, which case? Existing case law only includes arguments for such an examination only after such a hearing had been held and evidence had been presented regarding the attorney's substance abuse or mental incapacities - in all cases which affected his or her competency as a lawyer.

Rule 4-104 reviews are limited to specific and "appropriate" examinations that are tied to a "determination" by the "State Disciplinary Board". There has been no such determination; or, if there has, I was not invited to participate in any hearing prior to that determination. Proposed Counsel has requested copies of that determination, and the basis on which that determination was made. If it does not exist, we suggest that you postpone or rescind this action until such time as an appropriate hearing as to the basis for such a determination is presented and heard.

(A true and correct copy of the letter from L. Lin Wood, Jr. to Paula A. Frederick dated March 2, 2021 is Exhibit C in the Appendix of Exhibits).

As of the date of this motion, Mr. Wood has not received any written findings on which the Defendants based their determination that he submit to a mental evaluation; nor has he been advised of the basis on which that determination was made; nor has he been allowed to present evidence or confront witnesses against him who accuse him of being in need of a mental evaluation.

The Plaintiff does not suffer from any mental illness, cognitive impairment, alcohol abuse, or substance abuse. (Verified Complaint at ¶ 36.)

Not one of the Plaintiff's clients or former clients has complained to the Bar that he has exhibited any signs of "mental illness, cognitive impairment, alcohol abuse, or substance abuse" which are the sole predicate factors stated in Rule 4-104 for

determining an attorney's need for a referral to an appropriate medical or mental health professional.

An attorney who fails or refuses to undergo a mental evaluation when requested to do so by the State Disciplinary Board faces a grave and imminent threat of serious disciplinary sanctions, including the emergency suspension of his law license and ability to earn a livelihood.  GA BAR RULE 4-104(2) specifically provides as follows:

> A lawyer's refusal to cooperate with the medical or mental health professional or to participate in the evaluation or recommended treatment may be grounds for further proceedings under these Rules, including emergency suspension proceedings pursuant to Rule 4-108.

The Defendants' actions compelling the Plaintiff to undergo a mental evaluation or else incur likely disciplinary sanctions are motivated, in whole or in part, on the Plaintiff's exercise of his free speech as a private citizen on matters of national and inherent public concern and on his legal advocacy calling into question certain practices by election officials in Georgia and elsewhere in the country.

The Defendants' insistence that the Plaintiff submit to a psychological mental evaluation also poses a significant threat of intrusion into the Plaintiff's privacy and infringes upon his constitutional rights as protected under the First Amendment of the United States Constitution.

Plaintiff has moved this Court under Rule 65(a) of the Federal Rules of Civil Procedure to enter a preliminary injunction to maintain the status quo and to enjoin or restrain the Defendants, and all those acting in concert with them, from proceeding further with any formal disciplinary action by virtue of the Plaintiff's refusal to submit to an involuntary mental evaluation pending a hearing on Plaintiff's request for preliminary injunctive relief and the further orders of this Court.

## ARGUMENT

**I.     The Plaintiff Meets The Criteria For Preliminary Injunctive Relief.**

A preliminary injunction is granted when (1) the plaintiff is likely to succeed on the merits of his or her claims; (2) the plaintiff would suffer irreparable harm in the absence of an injunction; (3) the harm suffered by the plaintiff absent an injunction would exceed the harm that the injunction would cause the defendant; and (4) an injunction would not disserve the public interest. See *Lebron v. Sec'y, Fla. Dep't of Children and Families*, 710 F.3d 1202, 1206 (11th Cir. 2013). As set forth in the Affidavit of L. Lin Wood, and the brief and exhibits filed contemporaneously with this motion, Plaintiff meets the requirements for a preliminary injunction ordering relief under 42 U.S.C. § 1983.

**A.     Likelihood of Success On The Merits.**

"The balance between an attorney's right to free political speech and a state's right to regulate attorney conduct is delicate." *Berry v. Schmitt*, 688 F.3d 290, 290

(6th Cir. 2012). Were this case about the state's right to sanction Plaintiff's past speech conduct during a judicial proceeding, or his demonstrated lack of mental competence in his representation of a client, it would present a far different balance of competing interests. It does not. Rather, this case seeks prospective relief to prevent the Defendants from arbitrarily carrying out their threat to impose disciplinary action, up to and including the emergency suspension of the Plaintiff's law license, based solely on non-client complaints of his exercise of protected speech activity.

Though the right to practice law is not a natural or constitutional right or an absolute or *de jure* right, it is a valuable special privilege in the nature of a franchise which may be protected by injunction against invasion. *Boykin v. Hopkins*, 174 Ga. 511, 162 S.E. 796; *People ex rel. Illinois State Bar Association v. People's Stock Yards State Bank*, 344 Ill. 462, 176 N.E. 901; *Smith v. Illinois Adjustment Finance Company*, 326 Ill.App. 654, 63 N.E.2d 264; *517 *In re Harrison*, 231 Ind. 665, 109 N.E.2d 722; In re Carver, 224 Mass. 169, 112 N.E. 877; *Unger v. Landlords' Management Corporation*, 114 N.J.Eq. 68, 168 A. 229; *In re Co-Operative Law Company*, 198 N.Y. 479, 92 N.E. 15, 32 L.R.A.,N.S., 55, 139 Am.St.Rep. 839, 19 Ann.Cas. 879; *Land Title Abstract and Trust Company v. Dworken*, 129 Ohio St. 23, 193 N.E. 650; **430 *Dworken v. Apartment House Owners Association of Cleveland,* 38 Ohio App. 265, 176 N.E. 577; In re Application for License to Practice

Law, 67 W.Va. 213, 67 S.E. 597; 5 AM.JUR., Attorneys at law, Section 14; 7 C.J.S., Attorney and Client, Section 4b.

As in all instances in which a statute or governmental regulation is subjected to a challenge on constitutional grounds, if an attorney can show that the recommended discipline infringes on First Amendment rights, the State Bar has the burden of demonstrating that the regulation in question is necessary to further a compelling state interest. *N.A.A.C.P. v. Button* (1963) 371 U.S. 415, 438, 83 S.Ct. 328, 9 L.Ed.2d 405.)

In virtually every case in which a Georgia attorney has been ordered to undergo a mental evaluation under GA BAR RULE 4-104 there was first a threshold determination based on complaints from the attorney's clients which raised concerns of some significant impairment or disability that interfered with the attorney's ability to competently represent his clients' interests.[1]

---

[1] See *In re Rand*, 616 S.E.2d 452, 453, 279 Ga. 555, 556 (2005)(special master found that attorney suffered a significant mental disability and because of that disability failed to account properly for funds held in a fiduciary capacities and that he applied settlement funds improperly); *In re Giallanza*, 695 S.E.2d 254, 254, 287 Ga. 257, 257 (2010)(six separate grievances filed against filed by clients against attorney for mishandling and misappropriation of client funds found to suffer from dementia); *Matter of Levine*, 811 S.E.2d 349, 350–51, 303 Ga. 284, 286 (2018)(attorney sanctioned under Rule 4-104 who admittedly was suffering mental and emotional impairments arising out of his on-going divorce action and preexisting medical issues); *In re Morales*, 651 S.E.2d 84, 86, 282 Ga. 471, 472 (2007)(attorney admitted that he suffered from mental and showed strong feelings of paranoia and persecution); *Matter of Tapley*, 842 S.E.2d 36, 37, 308 Ga. 577, 578 (2020)(attorney who was in his 80s admitted that he was no longer "physically and mentally able to adequately represent his clients" and that he was "just not up to the pressure").

As for the insinuation by one of the non-client, out-of-state grievants that the Plaintiff has frivolously filed "multiple court challenges to overturn Mr. Trump's election loss" The concerns of lack of integrity in the election process in November of 2020, as litigated by the Plaintiff have recently been vindicated by Supreme Court Justice Clarence Thomas:

> That is not a prescription for confidence. Changing the rules in the middle of the game is bad enough. Such rule changes by individual and officials who may lack authority to do so is even worse. When those changes alter election results, they can severely damage the electoral system on which our self-governance so heavily depends. If state individual and officials have the authority they have claimed, we need to make it clear. If not, we need to put an end to this practice now before the consequences become catastrophic.
>
> *Republican Party of Pennsylvania v. Degraffenreid*, 592 U.S. ____ (2021), J. Thomas dissenting from denial of certiorari (joined in a separate dissent by Alito and Gorsuch, JJ).

The validity of some of the concerns litigated by the Plaintiff have also been vindicated in other jurisdictions. In the matter of *Robber Genetski, County of Alleghan Clerk, and Michigan Republican Party v. Jocelyn Benson and Jonathan Brater, Director of Elections* (Case No. 20-000216-MM), the State of Michigan Court of Claims ruled on March 9, 2021 that the Director of Elections' "guidance" to absentee voters via its "Absent Voter Ballot Processing: Signature Verification and Voter Notification Standards" violated Michigan's Administrative Procedures Act ("APA"). The Court in Michigan found that the changes that Michigan's Secretary of State Jocelyn Benson made to the absentee ballots' examination process

13

had to have been promulgated by the Legislature pursuant to APA's procedures, and because it was not, the rule was declared invalid. Plaintiff L. Lin Wood, in his Georgia election integrity lawsuits, challenged similar issues, *i.e.,* the illegality of the Compromise Settlement Agreement and Release that Georgia's Secretary of State entered on March 6, 2020, without the Legislature's input, altering Georgia's mail-in voting and absentee ballots' review.

In addition, the Plaintiff has demonstrated a likelihood that the Defendants' actions in ordering him to submit to a mental examination are substantially motivated as a response to Plaintiff's exercise of constitutionally protected conduct. At the time the Defendants made their determination that Mr. Wood should undergo a mental examination the only "evidence" before the Defendants were the four, out-of-state grievances which relied exclusively as the basis of their complaints the comments posted to Plaintiff's personal social media. A close temporal nexus between protected speech activity and retaliatory action can serve as a sufficient basis for an inference that the government acted out of an improper motive. *Joyner v. City of Atlanta*, 2018 WL 1442931, at *5 (N.D.Ga. 2018). The fact that the Defendants have failed to come forward, despite three requests by the Plaintiff, with any evidence to support their determination strengthens the inference that this determination was made on the basis of the statements contained in the four out-of-state grievances attacking the Plaintiff's political expression.

### B.     The Plaintiff Will Suffer Irreparable Harm In The Absence of An Injunction.

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 96 S.Ct. 2673, 2690, 427 U.S. 347, 373–74 (1976). See *New York Times Co. v. United States*, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971). In the instant case such injury is both threatened and occurring at the time of Plaintiff's motion and demonstrates a probability of success on the merits and a basis granting the requested preliminary injunctive relief. See *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67, 83 S.Ct. 631, 637, 9 L.Ed.2d 584 (1963).

The February 11, 2021 letter from Paula J. Frederick cites to the likelihood that the Defendants will invoke GA BAR RULE 4-104 and may seek disciplinary sanctions up to, and including, the threat of emergency suspension of the Plaintiff's license to practice law if he fails to accede to their demand that he submit to an involuntary mental examination. This warning alone more than subjectively threatens the likelihood of imminent and irreparable injury.

The threat of a state-imposed mental examination in the absence of any credible evidence that such is warranted, and motivated out of concerns over an attorney's political expressions is a powerful proven means of suppressing free speech. *Cf.* A. Rodriguez, "Russian dissidents called mentally ill," *Chicago Trib.* (August 7, 2007) (Citing Victor Bukovsky recording current Russian psychiatry as resuming the

15

Soviet use of psychiatry to quell political opposition: "Soviet psychiatrists revised definitions of mental illnesses, describing paranoia as an obsession with "the struggle for truth and justice,'" or "delusion of reform;" "[U]sing psychiatry for political purposes is a perfectly acceptable way of dealing with opponents," further referencing the psychiatric detention of a lawyer who won "too many" human rights cases. Available at https://www.chicagotribune.com/news/ct-xpm-2007-08-07-0708070053-story.html.

### C. The Plaintiff Has A Reasonable Expectation of Privacy In Not Submitting To A Government Compelled Psychiatric Examination.

It is now well established that the United States Constitution provides protection of an individual's privacy. See *Whalen v. Roe*, 429 U.S. 589, 599–600, 97 S.Ct. 869, 876–77, 51 L.Ed.2d 64 (1977); *United States v. Westinghouse Electric Corp.*, 638 F.2d 570, 577 (3d Cir.1980). This constitutional right of privacy extends to two types of interests:

"One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." *Whalen v. Roe,* 429 U.S. 589, 599–600 [97 S.Ct. 869, 876–77, 51 L.Ed.2d 64] (1977) (footnotes omitted). The latter decisions have encompassed "matters relating to marriage, procreation, contraception, family relationships, and child rearing and education." *Paul v. Davis*, 424 U.S. 693, 713, 96 S.Ct. 1155, 1166,

47 L.Ed.2d 405 (1976).  It is the former zone of privacy that is implicated in the instant case, *i.e.* the forced medical examination and disclosure of medical information.

In his dissent in *Olmstead v. United States*, 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944, Mr. Justice Brandeis characterized "the right to be let alone" as "the right most valued by civilized men".  In *Griswold v. Connecticut*, 381 U.S. 479, 483, 85 S.Ct. 1678, 1681, 14 L.Ed.2d 510, the Court said: "(T)he First Amendment has a penumbra where privacy is protected from governmental intrusion." See also *Stanley v. Georgia*, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542; *California Bankers Assn. v. Shultz*, 416 U.S. 21, 79, 94 S.Ct. 1494, 1526, 39 L.Ed.2d 812 (Douglas, J., dissenting); id., at 78, 94 S.Ct., at 1525 (Powell, J., concurring).

Government intrusion into one's medical information is subject to heightened constitutional scrutiny. As recognized by the Third Circuit Court of Appeals in *Fraternal Order of Police, Lodge No. 5 v. City of Philadelphia*, 812 F.2d 105, 112–13 (3rd Cir.1987) :

> In determining whether information is entitled to privacy protection, we have looked at whether it is within an individual's reasonable expectations of confidentiality. The more intimate or personal the information, the more justified is the expectation that it will not be subject to public scrutiny. See *Westinghouse*, 638 F.2d at 577 & n. 5. Applying this approach, we have repeatedly held that medical information such as that sought by questions 18, 19 and 20 is entitled to privacy protection against disclosure. . .In fact, medical information may be accorded special treatment under various rules and statutes in recognition of its confidential character. See, *e.g.,* Fed.R.Civ.P. 35

(higher burden for discovery of medical information than for discovery generally); Freedom of Information Act, 5 U.S.C. § 552(b)(6) (exemption of medical files).

### D. The Harm Suffered By The Plaintiff Absent An Injunction Would Exceed The Harm That The Injunction Would Cause The Defendant.

The specific relief sought by the Plaintiff in this motion is a preliminary injunction preserving the status quo and containing the following terms:

1. Defendants, acting in their capacity as members of the State Disciplinary Board, their attorneys, and all persons acting in concert with them having notice, shall be and hereby are restrained and enjoined from proceeding with any action in furtherance of their requirement that the Plaintiff undergo a mental evaluation or examination;

2. Pending the further orders of this Court, Defendants, their attorneys and those acting in concert with them, are enjoined and restrained from imposing any disciplinary action or otherwise taking any adverse action against the Plaintiff by virtue of his failure or refusal to undergo a mental evaluation or examination;

There is no evidence that the Defendants would suffer any harm or prejudice in the event this requested preliminary injunctive relief were granted. Certainly, any claim of prejudice by the Defendants pales in comparison to the irreparable harm that will likely be suffered if they are permitted to proceed with the compelled psychiatric examination and/or emergency suspension of the Plaintiff's law license.

**E.     An Injunction Would Not Disserve The Public Interest.**

The balance-of-the-harms and public-interest factors "merge" when, as here, the Government is the opposing party. *Swain v. Junior*, 961 F.3d 1276, 1293 (11th Cir. 2020), citing *Nken v. Holder*, 556 U.S. 418, 435, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009). The Eleventh Circuit Court of Appeals has held that "the public interest is always served in promoting First Amendment values." *Rubin v. Young*, 373 F.Supp.3d 1347, 1354 (N.D.Ga. 2019), citing *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1276 (11th Cir. 2001).   The Plaintiff's requested preliminary injunctive relief is not adverse to the public interest.

## CONCLUSION

The Court should grant a preliminary injunction.

Respectfully submitted,

By: */s/ Larry L. Crain*
Larry L. Crain, Esq.
(Tenn. Supr. Crt. #9040)
CRAIN LAW GROUP, PLLC
5214 Maryland Way, Suite 402
Brentwood, TN 37027
Tel. 615-376-2600
Fax. 615-345-6009
Email: Larry@crainlaw.legal

*Counsel for the Plaintiff*
*(Pro Hac Vice Pending)*

*/s/ Ibrahim Reyes*
Ibrahim Reyes, Esquire
Florida Bar No. 581798
REYES LAWYERS, P.A.
236 Valencia Avenue
Coral Gables, FL 33134
Tel. 305-445-0011
Fax. 305-445-1181
Email:ireyes@reyeslawyers.com

*Counsel for the Plaintiff*
*(Pro Hac Vice Pending)*


*/s/ L. Lin Wood, Jr*
L. Lin Wood, Jr., Esq.
State Bar No. 774588
L. LIN WOOD, P.C.
P.O. Box 52584
Atlanta, GA 30355-0584
Tel. 404-891-1402
Fax. 404-506-9111
Email: lwood@linwoodlaw.com

*Counsel, Pro Se*

20