```
 1                     United States District Court
                       Northern District Of Georgia
 2                          Atlanta Division

 3

 4    Coreco Jaqan Pearson,      )
      et al.,                    )
 5                               )
                                 )
 6                Plaintiff,     )
                                 )      Civil Action
 7          vs.                  )      File No. 1:20-CV-4809-TCB
                                 )
 8                               )      Atlanta, Georgia
      Brian Kemp, et al.,        )      Sunday November 29, 2020
 9                               )      7:45 p.m.
                  Defendant.     )
10    _____)

11

12                    Transcript of Motions Hearing
                Before The Honorable Timothy C. Batten, Sr.
13                    United States District Judge

14
      APPEARANCES:
15

16        FOR THE PLAINTIFFS:          Sidney Powell
                                       L. Lin Wood, Jr.
17                                     Howard Kleinhendler
                                       Harry MacDougald
18                                     Christine Dial Buckler
                                       Attorneys at Law
19
          FOR THE DEFENDANTS:          Russell David Willard
20                                     Charlene Swartz McGowan
                                       Attorneys at Law
21

22

23    Lori Burgess, Official Court Reporter
      (404) 215-1528
24
      Proceedings recorded by mechanical stenography, transcript
25    produced by CAT.
```

U.S. DISTRICT COURT
LORI BURGESS, RMR

EXHIBIT A TO AFFIDAVIT OF L. LIN WOOD, JR.-1

```
1              THE COURT:  Hi.  I'm Judge Batten.
2              THE CLERK:  I think we have everybody here.  Harry
3      MacDougald.
4              MR. MACDOUGALD:  I want to announce that my
5      associate Christine Buckler is in the office with me but off
6      camera.
7              THE COURT:  Thank you, Mr. MacDougald.
8              THE CLERK:  Howard Kleinhendler.
9              THE COURT:  Howard.  Who are you with?
10             MR. KLEINHENDLER:  I am with the Plaintiffs.
11             THE COURT:  Keep going.
12             THE CLERK:  Sidney Powell.
13             THE COURT:  I don't see Ms. Powell.
14             MS. POWELL:  I am also here with Lin Wood for the
15     Plaintiffs.
16             THE COURT:  I don't see either of y'all.
17             THE CLERK:  If you will turn on your video, please,
18     Ms. Powell.
19             MS. POWELL:  I am not sure it is working properly,
20     but I have given it my best shot.
21             THE COURT:  Who else do we have on the call besides
22     Ms. Powell and Mr. Wood?
23             THE CLERK:  Charlene McGowan.
24             THE COURT:  Is she on the video?
25             THE CLERK:  Everyone's video is on except Ms. Powell
```

EXHIBIT A TO AFFIDAVIT OF L. LIN WOOD, JR.-2

1    and Rus Willard.

2         THE COURT:  I can't see everybody.  I suppose that

3    is okay as long as I can hear everybody.  So I think we are

4    ready to proceed.  Are the Plaintiffs ready to proceed and are

5    the Defendants ready to proceed?  One at a time.  Plaintiffs?

6         MS. POWELL:  Yes.

7         THE COURT:  And the Defendants?

8         MR. WILLARD:  Yes, Your Honor.

9         THE COURT:  You know, I am not really sure exactly

10   what it is the Plaintiffs are trying to obtain in the case

11   right now regarding these machines.  There has been a mention

12   of wiping of a machine at the World Congress Center, and also

13   been a discussion about reference to the fact that Union

14   County is going to wipe their machines.  You know, I

15   understand that these county officials are obligated by state

16   law to preserve the data from the election on November 3.

17   What is it exactly that the Plaintiffs want me to order the

18   Secretary of State and/or the other Defendants to do?  I am

19   not -- excuse me, I am sorry -- I am not talking about

20   ultimately under the complaint that has been filed, I am

21   talking about this emergency temporary relief right now.  I

22   know you want me to throw out the election results and et

23   cetera, but I just mean on the short-term basis, what is it

24   exactly that the Plaintiffs would like?  Ms. Powell?

25         MS. POWELL:  Right now what you ordered in your

1    first order of the day would be perfect.  We need access to
2    the machines as soon as possible so we can do mirror images of
3    the data that is on there and the operations that are on
4    there, because it's well-established throughout Dominion
5    software systems and anybody who knows anything about them
6    that they can be easily altered.  And we understand, from what
7    is going on at the Center today, that process has already
8    begun.  Apparently from 11:00 to 1:30 they began substituting
9    software in the machines that was completely unnecessary to
10   count the ballots.
11           THE COURT:  Let me stop you right there and ask
12   Mr. Willard, first of all, I understand the State's
13   argument that -- the Defendants' argument that the Plaintiffs
14   lack standing.  I also understand that they cite *Jacobson* for
15   the proposition that they aren't the right people to be sued
16   to provide this relief and that instead it should have been
17   the county elections officers.  I understand all of that.  But
18   I am wondering, and I am just trying to get factual
19   information here, what is it about access to the voting
20   machines that the Defendants have a problem with?  Why can't
21   the Plaintiffs' experts go ahead and do a forensic
22   examination?  Are they going to damage anything or in any
23   other way interfere with the performance of the government
24   officials' duties?
25           MR. WILLARD:  Your Honor, I appreciate the

EXHIBIT A TO AFFIDAVIT OF L. LIN WOOD, JR.-4

```
1    opportunity to respond.  I apologize about the video.  With
2    the weather out there, we've had it bad with issues all
3    weekend in my subdivision.  I will say that we've got a
4    concern because what your original proposed order and what the
5    Plaintiffs are seeking is going to basically take certain
6    voting equipment out of the equation for the election
7    scheduled to take place this Tuesday, as well as the election
8    scheduled to take place on January 5th, because Plaintiffs are
9    wanting us to hold and basically mothball and preserve these
10   machines at the county level - not in our possession, not in
11   our custody and control - at the county level.  They want to
12   preserve those in the form that they were in after the
13   November 3rd election.  Under state law there is an obligation
14   on those county election officials to preserve the data.  But
15   the State of Georgia has set up a system where the actual
16   equipment is used at each successive election in the cycle.
17   And there is a certain amount of recalibration in terms of
18   getting them ready.  For the individual machines, they are not
19   going to have the November 3rd, 2020 ballot card being
20   inserted in them.  They are not going to have that database
21   built in any longer.  You're going to have a December 1st,
22   2020 database in the machines and in the tabulation computers.
23   You're going to have a January 5th, 2020 database tabulating
24   the results of the federal and state-wide run-off on January
25   5th.  They have cited to *Curling*.  *Curling* is inapposite
```

U.S. DISTRICT COURT
LORI BURGESS, RMR

EXHIBIT A TO AFFIDAVIT OF L. LIN WOOD, JR.-5

1    because it was decided before the 11th Circuit's

2    redressability decision in *Jacobson*.  In addition, they are

3    wanting you to poke the procedure.  You've got election

4    officials who, as of Tuesday morning, have to turn on the

5    lights, conduct in-person voting, Tuesday night of this week

6    have to tabulate results on the very equipment that the

7    Plaintiffs are wanting you to take out of circulation.  And

8    that gets -- now it is so broad, based on what Ms. Powell has

9    asked in some of her more recent emails, you've now implicated

10   the *Purcell* line of cases and the progeny as interpreted by

11   this circuit that says Plaintiffs don't get to come in and

12   poke at an election procedure that is currently underway.

13           THE COURT:  Let me interrupt you, Mr. Willard.

14   First of all, refresh my recollection.  The election in two

15   days, which is December 1, is that the run-off for the Public

16   Service Commissioner?  Or is that on January 5, 2021?

17           MR. WILLARD:  The Public Service Commission race has

18   been moved to January 5th, 2021.

19           THE COURT:  What is December 1?

20           MR. WILLARD:  Basically any local race that is still

21   out there that --

22           THE COURT:  Okay.

23           MR. WILLARD:  For example, the Athens Clarke County,

24   Oconee County and, I forget, I think it's the Northeastern

25   Judicial Circuit, that District Attorney's race is on the

U.S. DISTRICT COURT
LORI BURGESS, RMR

EXHIBIT A TO AFFIDAVIT OF L. LIN WOOD, JR.-6

```
 1    ballot for this Tuesday.
 2              THE COURT:  I remember that.
 3              MR. WILLARD:  Clarke County and Oconee are going to
 4    be voting in that.
 5              THE COURT:  Right.
 6              MR. WILLARD:  I am not aware here on Sunday evening
 7    at 7:59 what other counties may have races on Tuesday and what
 8    may not.  We've been sort of struggling ever since the
 9    Plaintiffs filed their emergency motion right before midnight
10    on Friday that we saw sometime around lunchtime on Saturday.
11    We've sort of been scrambling.  I don't think all of my
12    clients have still seen everything, as Plaintiffs acknowledge.
13    There has been a complete absence of notice requisite to grant
14    any relief as to the temporary hearing at this point, because
15    I haven't been able to communicate with all of my clients to
16    see if all of my clients have even been properly served with
17    the emergency motion.
18              Plaintiffs have been sort of trying to do this by
19    the seat of their pants, and they keep asking for this sort of
20    ever-shifting claim of relief that they are saying isn't going
21    to matter all that much in the grand scheme of things, but in
22    terms of a currently underway election, it is going to be
23    throwing sugar in that gas tank and gumming up the works for
24    not only the December 1st election, but also the January 5th
25    election, as well as the recount that is underway.
```

1        THE COURT:  Well, I am having the impression, from

2   what you've just said, Mr. Willard, that there really is not

3   expected to be much turnout for Tuesday's elections, whatever

4   remains statewide.  Obviously we are going to have an enormous

5   turnout January 5th, 2021.  I just -- you know, I don't fault

6   the Defendants for complaining about the timing, and the fact

7   that they've been given precious little time to respond to the

8   Plaintiffs' requests.  I don't blame them.  And my draft

9   proposed orders, the two that we are discussing from today,

10  both reflect a hearing schedule that reflects my understanding

11  of the State's position.  In other words, I feel like, you

12  know, you've complained, understandably, about the timing and

13  said you need a little more time, and I feel like I am giving

14  you that by having the hearing on Friday, giving you till

15  Wednesday to file the brief in opposition.  Believe me, I am

16  not saying that you are getting an abundance of time, but to

17  me, I divided that baby as fair as I thought I could, and I

18  feel like I am giving you enough time.  My point is, if I am

19  going to give you that time, I don't understand why it is

20  asking too much.  And forget for just a moment the argument

21  about it's not under the Secretary of State's control.  I

22  understand that argument.  I am going to deal with that in a

23  minute.  Laying that aside for a second, the question is, why

24  isn't there enough already -- let me put it like this.  What

25  you are asking for, why should you not correspondingly agree

```
 1    to allow a quick inspection of these machines?  And I guess --
 2    you know, I don't know how many counties the Plaintiffs are
 3    talking about.  I think that Jacobson may be on point.  I am
 4    not sure yet.  I don't know.  It seems to me hard to believe
 5    that the Plaintiffs should have to sue 159 elections
 6    commissioners to get the relief they want.  I understand
 7    exactly what Jacobson said, but that was a different case.
 8    What I am trying to accomplish here is, taking into both
 9    sides' consideration, their arguments, their respective
10    positions, but incorporating into them also the law.  The
11    Plaintiffs want to seize these and impound these machines for
12    a forensic audit by their experts.
13              Let me go back to Ms. Powell and ask you,
14    Ms. Powell, which machines are we talking about?  Are you
15    talking about in every county in Georgia?  Where exactly are
16    you talking about?
17              MS. POWELL:  No, Your Honor.  In our motion we asked
18    specifically for machines in ten counties.
19              THE COURT:  Those ten counties that you've
20    highlighted.  Okay.
21              MS. POWELL:  Yes, sir.
22              THE COURT:  And what do you want to do with those
23    machines?  How long is it going to take your experts to do
24    their thing on those machines?
25              MS. POWELL:  It will take approximately a day of
```

1   time per county, but we can dispatch three separate teams and

2   be able to do the bulk of it I would think within three days.

3        THE COURT:  Okay.  What do you say in response to

4   Mr. Willard's argument -- I wasn't -- let me go back to

5   Mr. Willard and just make sure I am clear on this.

6   Mr. Willard, specifically with respect to the Clarke County

7   and Oconee County DA's I guess it is a run-off.  I don't

8   remember if it's a run-off or a special election.  But for the

9   record, which is it, Mr. Willard?

10        MR. WILLARD:  It is a special election run-off.

11        THE COURT:  Yeah.

12        MR. WILLARD:  Your Honor, if I can clarify for the

13   record, that is just one example of a race that is scheduled

14   to be run on Tuesday.  There are a myriad other races that we

15   anticipate are being held throughout Georgia, we just haven't

16   had the opportunity to compile an exhaustive list.

17        THE COURT:  I understand.

18        MR. WILLARD:  But we are letting you know that there

19   is a race scheduled for Tuesday.

20        THE COURT:  Right.  I understand.  I guess what I am

21   wondering is -- well, I guess -- let me think this through.

22   It seems to me that the question should be, and we might -- I

23   might give y'all a little bit of time to find this out.  Other

24   than the -- are there any elections set in these ten counties

25   that are going to take place this Tuesday, December 1?  And if

1   so, are the Plaintiffs going to, to get the relief they want,
2   are they going to have to access these machines and not have a
3   -- which would prevent these ten counties from having the
4   machines to use for those Tuesday elections?
5          MR. WILLARD:  I'm sorry, Your Honor, is that
6   addressed to me or Ms. Powell?
7          THE COURT:  I am kind of thinking out loud and
8   addressing both of you.  Basically we have narrowed it from
9   159 down to 10 counties.  And the Defendants right now can't
10  tell me, and I don't fault them for that at all, what
11  elections are taking place, if any, in those ten counties this
12  coming Tuesday in two days.  So how am I supposed to -- and so
13  that is one issue, is this may be moot if it turns out that
14  there is not even an election taking place in those ten
15  counties on Tuesday, I don't see what the problem would be of
16  me entering a temporary restraining order allowing the
17  Plaintiffs to have quick access to those machines for a
18  forensic examination.  On the other hand, if there is going to
19  be an election in any of those ten counties, that raises the
20  question of can they still have the election without those
21  machines.  Do you have to look at every single machine?  I
22  mean, I don't understand how it works.
23          So I guess I would ask Ms. Powell, let's suppose
24  that in two or three of the ten counties that you are
25  interested in, there are in fact going to be run-off elections

EXHIBIT A TO AFFIDAVIT OF L. LIN WOOD, JR.-11

1    on Tuesday, December 1.  How can your objective be met, your

2    objective being a forensic examination of those machines in

3    those counties if there is going to be an election there on

4    Tuesday?

5            MS. POWELL:  We can get experts to them tomorrow,

6    Your Honor.  We've got at least three teams of experts that

7    could be dispatched to three separate counties to collect the

8    information from the machines.  The important part is, it's

9    not just the data that comes out of the machines that is

10   crucial to the fraud case that is so rampant across the

11   country, it is the fact that an algorithm we believe was

12   uploaded to the Dominion machines that weighted the votes for

13   Mr. Biden over the votes for President Trump at approximately

14   1.22 versus .78, and that is what would change with any

15   alteration of the software that is crucial to making the proof

16   of the fraud absolutely conclusive and irrefutable.  We know

17   they have already gone into the machines in Fulton County to

18   change the software with no basis to do so whatsoever.  In

19   fact, there is an attorney that contacted me just earlier

20   today, in fact while I was replying to the last message from

21   the Court.  I believe her last name is Broyles, a Ms. Broyles,

22   who had been contacted by a witness who was very concerned by

23   what she had seen down at the Center today, and felt like it

24   was an abject pretense that they were going to be redoing all

25   the same ballots and there was no reason to change the

U.S. DISTRICT COURT
LORI BURGESS, RMR

EXHIBIT A TO AFFIDAVIT OF L. LIN WOOD, JR.-12

1   software for any reason whatsoever.

2          THE COURT:  All right.  Mr. Willard, what is your

3   response to that?

4          MR. WILLARD:  Your Honor, I apologize.  I am used to

5   dealing with facts and law, not innuendo and accusation.  The

6   bottom line here, the Plaintiffs have sent you a copy of the

7   *Curling* order which, as I mentioned earlier, is inapposite

8   because it predates *Jacobson*.  But in that case, where the

9   security and reliability of the DRE machines, which have now

10  been retired, even Judge Totenberg recognized that you cannot

11  willy-nilly allow individuals from outside of state and county

12  custody and control procedures to have access to these

13  machines.  It poses a security risk for Ms. Powell's minions

14  to go in and image everything, download the software, and

15  figure out for future elections a way to hack in so that their

16  preferred candidates can win.  That is in effect what they are

17  seeking here.  They want to image, as they just said, not only

18  the data on the machines, but also the entire software package

19  and the security protocols that are set up.  That is something

20  that no Federal Court can possibly countenance.  Even if they

21  had the appropriate defendants here, which they don't, you

22  cannot allow, during the midst of an election cycle, a third

23  party to come in and get the proverbial keys to the software

24  kingdom.  I will say that we are trying to get up to speed on

25  this as much as possible.  Our office is not representing the

1    Secretary in the *Curling* litigation because our office was

2    forced to declare a conflict several years ago, but we have

3    Conflict Special Attorneys General who have spent months and

4    years dealing with the security of the State's electronic

5    voting system in Federal Court.  There was a whole procedure

6    set up where you had a white room established in Virginia

7    where experts were only permitted to go in and inspect a

8    single machine at that white room after security protocols

9    were set in place where they couldn't remove anything from

10   there, where they weren't able to take anything that could

11   later compromise the system with them when they left.

12           MS. POWELL:  Well it's a little bit late to be

13   worrying about the compromise of the system.  That happened,

14   as we have evidence that both Iran and China were hacking into

15   the system during our election, not to mention any number of

16   other foreign entities and domestic actors as well.  The

17   entire system was built to be both hackable from afar and

18   locally to overwrite votes, to overwrite review of signature,

19   to drag and drop ballots into the trash can as wanted.  It was

20   conceived and created by Mr. Chavez's regime for the very

21   purpose of ensuring that he won future elections.  As corrupt

22   as it could possibly be.  And that's the system that the

23   Georgia Secretary of State decided was appropriate to run in

24   Georgia, despite any number of revelations of the myriad

25   problems it has.

```
 1              THE COURT:  The problem I have --
 2          MS. POWELL:  A two-year-old can hack these machines
 3   as they are now, and we are certainly amenable to having an
 4   observer and videotaping the process that we use to create the
 5   mirror images, and to submitting it and holding it under a
 6   protective order.
 7              THE COURT:  And am I correct in expecting that the
 8   Defendants further contend that these are -- there is
 9   proprietary information on these machines that should not be
10   publicly disclosed?
11          MR. WILLARD:  Yes, Your Honor, as well as from a
12   security protocol standpoint.
13              THE COURT:  Right.  Okay.  Well, here is the
14   problem.  It's Sunday, November 29th at 8:12 p.m.  This motion
15   did not come in until late Friday night.  I was not aware of
16   the motion until Saturday.  And the State, including the
17   Secretary of State, the Governor, and the Elections Board
18   members have hardly had any opportunity to respond to these
19   allegations.  I don't know if that is anybody's fault.  I
20   don't know at this particular point -- I haven't considered
21   the issue of whether the suit should have been brought earlier
22   and the Plaintiffs are guilty of laches.  I have no opinion on
23   that issue at this point.  But what I do have an opinion on is
24   that the burden is on the Plaintiffs, and the relief that they
25   seek is extraordinary.  And although they make allegations of
```

1    tremendous worldwide improprieties regarding the Dominion
2    voting machines, those allegations are supported by precious
3    little proof.  Now let's just suppose hypothetically that the
4    obligations are true, and there simply has not been time to
5    marshal the evidence in support of those allegations.  The
6    problem with that is that that doesn't create an exception for
7    me as to whether I should grant this extraordinary relief of a
8    temporary restraining order, which of course can only be
9    granted in truly extraordinary circumstances, and the
10   Defendant -- and it's not even clear to the Court that the
11   named Defendants are the proper parties to this lawsuit with
12   respect to this particular form of relief that the Plaintiffs
13   are seeking.  So I am going to deny the Plaintiffs' request
14   for a temporary restraining order on the grounds that the
15   Plaintiffs have failed to carry their burden of showing a
16   substantial likelihood, a real likelihood of prevailing on the
17   merits on this claim, or at least I am going to refrain from
18   granting that relief now.  If, in the course of discovery in
19   this case, the Plaintiffs become -- the Plaintiffs acquire
20   additional proof that would support their allegations that
21   might make a difference, I am happy to revisit this order.
22   But for now, that is going to be the order of the Court.  I am
23   going to deny the request for temporary injunctive relief.
24          And here is what we are going to do regarding the
25   scheduling.  The Plaintiffs' response to Defendants' motion

1   will be due on Wednesday December 2 by -- I am going to change

2   that to 5 o'clock p.m. Eastern Standard Time.  If the

3   Plaintiffs choose to file a reply, it will be due 24 hours

4   after the Defendants' response is filed.  And we will have an

5   in-person hearing in my Atlanta courtroom this coming Friday

6   at 10 o'clock a.m. to consider the balance of the claims that

7   have been raised by the Plaintiffs in their complaint.  All

8   right.  Anything else, Counsel?

9           MR. WOOD:  Judge Batten, this is Lin Wood.  How are

10  you, sir?

11          THE COURT:  Yes, sir.  How are you doing, sir?

12          MR. WOOD:  I am doing well.  Please let me make one

13  request.

14          THE COURT:  Okay.

15          MR. WOOD:  I understand Your Honor's ruling.  I kind

16  of live under the theory that he who has nothing to hide hides

17  nothing.  Would there be any way -- would there be any way to

18  give us a very limited, such for example let us go in

19  tomorrow, pick two or three counties, and then randomly two or

20  three machines and do the forensics on that?  Because at least

21  we would have some information in the event all of these

22  machines end up being wiped clean?  Something very --

23          THE COURT:  At first blush, I don't have -- I would

24  not have too much of a problem with that.  It certainly is

25  more reasonable than what we have talked about.  But the

1  problem is, again, the State has represented to me that -- the

2  Defendants have represented to me, through counsel, that there

3  are security concerns that they have, and I am being asked to

4  decide this on a Sunday night, have been received no evidence

5  from the Defendants because they haven't had a chance.  So I

6  am going to respectfully deny, Lin, your request.  But you

7  know, I am going to leave it with -- it is hard for me to

8  believe -- let me ask this.  Let me put it this way.  Doesn't

9  sound like 159 counties in Georgia are going to have special

10  run-off elections on Tuesday, special election run-offs, I

11  should say, on Tuesday.  Why can't you -- if we can find ways

12  to protect the State's legitimate interest in security and

13  proprietary software, can you not look for the algorithm that

14  you claim is there and any other incriminating evidence from

15  some of the other counties, from one or more of the counties

16  where no election is going to take place Tuesday?  Why can't

17  you do that?

18          MR. WOOD:  Your Honor, this is Mr. Wood again.  We

19  can do that.  And in fact, this one solution would be if we

20  identify a very limited number of machines, number of

21  counties, we can have our experts come in and do a mirror

22  image, we can turn it over to the Court so there are no

23  security concerns, and then it can be examined at a different

24  time.  But the problem is, once the machines are wiped, the

25  evidence is gone.  If there is nothing there, there is nothing

1   there.  But at least we will have an opportunity to check on a

2   limited basis and we can preserve it and secure the security

3   of it by having our experts, with their oversight, mirror

4   image and then turn it over to the possession of the Court for

5   a later review.  But we don't get that opportunity, once lost

6   we will never get it again.  I don't see any harm to the State

7   to preserve this information on a very limited basis.

8                THE COURT:  Okay, I am having a hard time

9   identifying any such harm myself.  Mr. Willard, what would be

10  wrong with the Plaintiffs being granted access to three of the

11  counties not among -- not in any county where there is going

12  to be an election this coming Tuesday, but tomorrow be granted

13  access in three of these where all of the evidence that are

14  obtained by Plaintiffs' experts will be accompanied by

15  forensic experts from the Defendants.  I know you may not be

16  able to line that up by tomorrow, so it probably wouldn't be

17  tomorrow, but where we can have a forensic expert with the

18  Plaintiffs on behalf of the Defendants accompanying and

19  overseeing the Plaintiffs' expert's inspection of the

20  machines; and then with all of the data and all of the

21  information obtained from that inspection, or those three

22  inspections, to be turned over to the Court in camera and not

23  provided to Plaintiffs or their counsel or anybody else until

24  further order of the Court?  That's -- I want to hear your

25  response, Mr. Willard.  But I have to say, at first blush that

1   doesn't sound very unreasonable to me.  What is the response?

2   And again, we are laying aside for a moment whether or not

3   they have sued the right parties.  We are not going to address

4   that yet.  But let's assume that they did, and let's assume

5   that they do have standing, what is wrong with that proposal

6   that I have just suggested?

7            MR. WILLARD:  Well Your Honor, I think you've hit

8   the nail on the head, and it is sort of impossible to set

9   aside *Jacobson*.  There is no redressability here as to any of

10  these machines right now.  They are not in the custody and

11  control of the State Defendants.  You can order us every day

12  this week; we cannot give you access to the Hart County voting

13  machines.  I cannot go in and tell the Hart County Elections

14  Superintendent to do squat in regards to discovery in a case

15  that they are not a party to.  Second, if you are violating

16  trade secrets and security protocols, it doesn't matter if you

17  are doing it for one machine or the entirety of machines.  If

18  Plaintiffs' experts are going to come in with a thumb drive

19  and stick it in and take their screwdrivers out and do

20  everything to these machines, we have no safeguards that we

21  can put in place, in this very compressed time frame that

22  Plaintiffs are wanting to have, where you prevent somebody

23  from sticking that thumb drive in their pocket and walking out

24  the door, or doing something else that is going to impact that

25  machine for future elections.

U.S. DISTRICT COURT
LORI BURGESS, RMR

EXHIBIT A TO AFFIDAVIT OF L. LIN WOOD, JR.-20

1          THE COURT:  Mr. Wood, I will give you the last word.

2          MR. WOOD:  I don't believe we will be using

3    screwdrivers.  I think we can do a simple mirror image, they

4    can see it done, and then it will be turned over to the Court.

5    If we've got the wrong parties, we've got the wrong parties.

6    But if we have the right parties, and the Court determines

7    that the Secretary of State does have the authority as we

8    contend that the Secretary of State does, I don't see any

9    harm.  We will turn it over to the Court.  The battles can be

10   fought.  If we win, then we can have -- we can have the

11   examination completed.  But if we don't get something, then we

12   end up with nothing, and we don't know whether or not it was

13   erased.  I don't see any downside, Your Honor.  We turn it

14   over to you and hold it until further rulings in the case.  It

15   is just a matter of preserving some reasonably minimum amount

16   of evidence with respect to some of these machines.

17          MS. POWELL:  I believe there are no elections Your

18   Honor in Cobb, Gwinnett, Cherokee, or Forsyth, or Paulding, or

19   Hall, or Houston, or Hart, or Hancock, all of which we have

20   requested, or Gwinnett or Henry.  In fact, Defendants haven't

21   said where there are any elections at all.

22          THE COURT:  Okay.

23          MR. WILLARD:  One last point, if I could.

24          THE COURT:  Yes.

25          MR. WILLARD:  I would point you -- you know, I know

U.S. DISTRICT COURT
LORI BURGESS, RMR

1   there has been some question about whether the *Jacobson*

2   decision applies to voting equipment, and decisions made

3   regarding voting equipment.  I would point you to the *Anderson*

4   case, *Anderson versus Raffensperger*, decided by Judge Brown

5   last month, the docket number is 1:20-CV-03263.  It is a

6   78-page decision, and it is very well-reasoned.  And pages 62

7   through 68 go into great detail about how the failure to

8   include county election officials presented a redressability

9   problem.  Remember, Your Honor, you didn't choose who the

10  Plaintiffs sued, I didn't choose who the Plaintiffs sued.  The

11  Plaintiffs knew or should have been aware of the *Jacobson* line

12  of cases and its progeny.  You --

13          MS. POWELL:  *Jacobson* is Florida law.

14          THE COURT:  Let him finish.

15          MR. WILLARD:  -- cannot craft relief to county

16  defendants --

17          THE COURT:  Go ahead.

18          MR. WILLARD:  You cannot craft relief that goes to

19  county defendants and equipment in county custody and control

20  where the Plaintiffs have only chosen to sue State Defendants.

21          THE COURT:  Ms. Powell, let me ask you this along

22  those lines of what he is saying.  I understand the

23  distinction that the Plaintiffs have argued through their

24  counsel's emails to me today between this case and *Jacobson*.

25  But you know, it sounds to me that Mr. Willard is probably

EXHIBIT A TO AFFIDAVIT OF L. LIN WOOD, JR.-22

1    correct that as a matter of fact and law, the Secretary of

2    State can't call up to Marietta and tell the Cobb County

3    elections officials what to do with their machine.  What you

4    want to do is access the machine.  You are not talking about

5    data results from the election.  You want to actually access

6    the physical machines for a forensic inspection.  And --

7              MS. POWELL:  Your Honor.

8              THE COURT:  Just a second.  And so this is the first

9    time we are really addressing the redressability issue.  Tell

10   me what is the Plaintiffs' response to that.

11             MS. POWELL:  The machines are owned by the State of

12   Georgia.  They were purchased by the State of Georgia for $107

13   million of taxpayer money.  They are controlled by the

14   Secretary of State's office which has legal responsibility

15   both for investigating the fraud and making sure the machines

16   are what are supposed to be used and properly used and

17   enforcing the rules and regulations and laws related to

18   elections for the State of Georgia.  It is clear from the

19   *Curling* decision that we do not have to sue 600 people in 159

20   counties to obtain the relief we want.  It couldn't be more

21   clear as a matter of law.

22             MR. WOOD:  Judge, could I say one last thing?

23             THE COURT:  Yes, sir.

24             MR. WOOD:  And I appreciate this has all been done

25   with not a lot of time.

```
1          THE COURT:  Right.
2          MR. WOOD:  Again, if we don't have the correct
3   parties, we can add the correct parties before the Court would
4   release for further examination the materials that we would
5   collect in the next day or two.
6          THE COURT:  I don't understand why the Plaintiffs
7   don't just move to add Cobb County as a party to the case, or
8   the Cobb -- I don't know who it is, Cobb County elections
9   officers?  I don't know.  I am not going to give you a legal
10  opinion.
11         MR. WOOD:  Let me say this.  If the Court gives us
12  until Tuesday to examine, we will add the counties that the
13  Court lets us go examine, we will add them tomorrow; add them
14  tonight.  I just don't think -- I think that is a procedural
15  issue, and ultimately one the Court can decide, but there is
16  no harm, Your Honor, in preserving what could be critical
17  evidence with respect to this election.  We are not asking to
18  look at it until we've got it all down pat and Your Honor is
19  satisfied we are entitled to it, but let's preserve at least
20  some small amount reasonably so we don't find ourselves with
21  no evidence simply because the evidence was erased or
22  destroyed.  If there is nothing there, there is nothing there.
23  But, Your Honor, if there is something there, then this state
24  has a serious problem.  And I think it ought to be in the
25  interest of the taxpayers and the voters that this material,
```

EXHIBIT A TO AFFIDAVIT OF L. LIN WOOD, JR.-24

1    on a reasonable basis, limited basis, be preserved so that

2    down the road, if we meet all the other qualifications to have

3    it fully examined, we've at least got it preserved.  That

4    seems to me to be in the best interest of the citizens of the

5    State of Georgia.

6              THE COURT:  Well let me go back --

7              MS. POWELL:  We have obtained access to machines in

8    another state, with no problem of damage to the machines or

9    exposure of trade secrets or any other concern, and in that

10   instance we found that there were 1,474 votes on two rolls on

11   a machine, 1,474 which were changed across the two rolls,

12   almost the same number of voters that voted had their votes

13   completely changed on Dominion machines.

14             THE COURT:  Where was that?

15             MS. POWELL:  That is a county in Michigan.

16             THE COURT:  That was this year?

17             MS. POWELL:  Yes, sir.  Just a few days ago.

18             THE COURT:  Right, okay.  And again, just for my

19   factual understanding, Mr. Willard, are you telling me that if

20   I grant this relief, let's say to -- if I were to add a couple

21   of these counties as defendants, or whatever the right entity

22   or person is that should be the defendant, are you telling me

23   that if I grant this relief for this forensic inspection,

24   there is no way that any election run-off can take place on

25   Tuesday in that county?  Or do you know?

1          MR. WILLARD:  That is my understanding right now.

2     Once again, I am working on Sunday night at 8:28 p.m. and

3     something that I've been aware of for a little over 24 hours.

4     But at this point in time, Your Honor has already indicated

5     which way he was going to rule, and now Plaintiffs are trying

6     to shift the ground underneath us.  The fact is, as I

7     indicated to your clerk last night, Ms. McGowan and I have now

8     given up the entirety of our Sunday, we have responded in a

9     timely fashion, at the Court's request, first on a

10    three-and-a-half-hour turnaround, and then on an hour

11    turnaround, substantively responding to Plaintiffs' arguments.

12    And their responses have been long on rhetoric and short on

13    any authority.  We are at a situation now where if the Court

14    is willing to do what it said it was going to do earlier in

15    this call and earlier this evening via email and deny relief,

16    we go on and we prepare for the Friday hearing.  If the Court

17    is inclined to grant the relief, we would ask you to certify

18    it so that we can immediately take it up to the 11th Circuit

19    and the 11th Circuit can reassure the Plaintiff that it meant

20    what it said when it ruled in *Jacobson*.

21         THE COURT:  All right, I am going to have to think

22    about it.  I am not sure yet what I am going to do, but I need

23    to do some research and think about it a little bit.  I am

24    trying to -- I would like, Mr. Willard -- I am sure we are

25    going to talk again tomorrow.  I guess we ought to just  --

U.S. DISTRICT COURT
LORI BURGESS, RMR

```
1    let's plan on an 11 o'clock Zoom hearing tomorrow to address
2    some of these issues.  And I am going to want to know -- let
3    me just say, in terms of what I am thinking out loud is that
4    if I were to allow -- let me first ask this question of
5    Ms. Powell and Mr. Wood.  If I were to allow the forensic
6    inspection of either the Cobb or Gwinnett or Cherokee or Hart,
7    whatever -- wouldn't it just be sufficient to add one of those
8    counties?  If it is the same machine?
9              MS. POWELL:  No, Your Honor.  The counties can read
10   differently.  We really request Cobb, Gwinnett, and Cherokee
11   counties at the bare minimum.
12             THE COURT:  Okay.  I hear you.
13             MS. POWELL:  And we can add those as Defendants
14   tonight if that is important to the Court.  I really don't
15   think it's necessary as a matter of law, but we can certainly
16   add them.
17             THE COURT:  Who exactly would you move to add?
18             MS. POWELL:  The Board of Elections of each -- all
19   the members of the boards of those four counties.  We would
20   have to add 12 people.
21             THE COURT:  I heard three counties.  Cobb, Gwinnett,
22   and Cherokee.
23             MS. POWELL:  Three counties, but four people per
24   county, is my understanding.
25             THE COURT:  Okay.  Here is what I would like to do.
```

EXHIBIT A TO AFFIDAVIT OF L. LIN WOOD, JR.-27

1  Mr. Willard, if you could tell me when we resume tomorrow at
2  11:00, if you could tell me, having done a little research,
3  what impact, if any, allowing this forensic examination on
4  these three counties' machines would have on the elections
5  that are supposed to take place Tuesday?  It may be that there
6  is no election in any of those counties, there may be an
7  election in all three of them.  I have no idea.
8        MS. POWELL:  It is my understanding, Your Honor,
9  there is no election in those three counties.
10       THE COURT:  Let me have that confirmed.  I will give
11 Mr. Willard a chance to confirm that tomorrow.  And also --
12       MR. WILLARD:  That was Cobb, Gwinnett, and Cherokee.
13 Correct, Your Honor?
14       THE COURT:  Yes, sir.
15       MS. POWELL:  Correct.
16       THE COURT:  I want to hear a little more on the
17 issue of how would -- you know, one of the issues in the
18 decision of whether to grant injunctive relief is what harm
19 the party opposing the injunction would suffer if the relief
20 were granted.  That is one of the four factors that I am sure
21 all of you know quite well, I certainly would expect that you
22 do.  I know you do.  I would like to hear, Mr. Willard, from
23 you tomorrow morning if you could please tell me -- if you
24 could answer that question for me.  What harm would it do the
25 State or to these Defendants, including any newly added

U.S. DISTRICT COURT
LORI BURGESS, RMR

EXHIBIT A TO AFFIDAVIT OF L. LIN WOOD, JR.-28

1   Defendants, if I were to grant that relief?

2          MR. WILLARD:  Your Honor, I will do my best, but it

3   may not be me on the call.  As I indicated to your clerk,

4   we've got two brief responses in the *Woods* case due on

5   Tuesday.  We've already had to give up our Sunday responding

6   to this, after I asked your clerk last night not to schedule

7   anything until after those briefs were filed.  Now because of

8   Plaintiffs' shifting demands, they want to go forward with a

9   hearing in the morning.  Whoever is going to respond to that

10  hearing is going to have to take time away from getting the

11  responses filed in the 11th Circuit on Tuesday, including our

12  client, in the midst of an ongoing state-wide recount for

13  President, in the midst of conducting and supporting county

14  election officials with the December 1st election, as well as

15  getting ready for early and advanced voting for the January

16  5th election.  We --

17         THE COURT:  I understand, Mr. Willard.  Let me ask a

18  question of Ms. Powell.  If there are in fact no elections

19  taking place in those three counties, why does this have to be

20  done tomorrow?  Why do we have to have the answer to this by

21  tomorrow or Tuesday?

22         MS. POWELL:  Time is of the essence, Your Honor, on

23  the entire election proceeding.

24         THE COURT:  I got you.  In other words, the general

25  time-is-of-the-essence principle.  It sounds to me like having

U.S. DISTRICT COURT
LORI BURGESS, RMR

```
1   a response by 11:00 tomorrow is not necessary and would be
2   unreasonable to expect the Secretary of State, the Governor
3   and the Elections Board Defendants to be able to respond so
4   quickly.  So here is what I am going to do.  I am going to
5   reserve ruling.  I am going to keep the schedule regarding
6   briefing and the hearing, and I am going to reserve ruling on
7   the Plaintiffs' request -- I am going to consider it a motion
8   to amend the pleadings, and a motion to add as parties these
9   elections officers in Cobb, Gwinnett, and Cherokee counties.
10  I want the Secretary of State to let me know -- I will give
11  you a deadline in the second, but what I want the Secretary of
12  State and the other Defendants to let me know is what
13  opposition, if any, they have or what conditions they would
14  like to see complied with if these machines are going to be
15  inspected.  In other words, if they want their own inspector
16  there, et cetera.  I agree with Ms. Powell on the general
17  principle that time is of the essence, but it is not at all
18  reasonable to give the Defendants in this case until 11
19  o'clock tomorrow morning.  There is just no way they can do
20  that.  I am trying to decide right now how much time to give
21  them.  It certainly is going to be this week.  I guess,
22  Mr. Willard, what I would like you to do is let me know, as
23  soon as you find out, but in any event you are going to have
24  to let me know by Wednesday.  That is what my first blush
25  issue is this issue.  I just don't see what the urgency is.
```

```
 1    The case will still be pending after this week.  So I just --
 2    you know, I understand the -- I completely understand the
 3    general urgency of the case, but the Defendants have got to
 4    have a little bit of time to provide that information I want,
 5    which again namely is whether they would oppose these three
 6    counties' machines being forensically examined, and why they
 7    would -- what the basis for any such opposition would be, and
 8    I would want that supported with an affidavit or affidavits
 9    from an expert or experts or somebody affiliated with the
10    Defendants who could provide evidence to why that would be
11    harmful.  Again, we are focusing on the -- I believe is the
12    third prong -- I may have them in the wrong order -- of the
13    four-part test, which is what the harm would be to the party
14    opposing the injunctive relief.  So that is going to be the
15    order of the Court.  And I will --
16              MR. KLEINHENDLER:  Your Honor.
17              THE COURT:  Yes, sir?
18              MR. KLEINHENDLER:  I wanted to make one point here.
19    And that is, I understand the State's concern about having us
20    go in and look at their machines.  However, what we have
21    alleged with affidavit testimony is that they are erasing
22    their machines.  So while they are thinking about what the
23    harm is, and while they are figuring out where their elections
24    are that they can't identify, at a minimum, Your Honor, where
25    there are no elections to be taking place, there should be an
```

U.S. DISTRICT COURT
LORI BURGESS, RMR

EXHIBIT A TO AFFIDAVIT OF L. LIN WOOD, JR.-31

1    order entered now that no machine should be erased.  Because

2    that is very troubling, it is spoliation, it's irreparable

3    injury.  That is point one.  I want to make one other point

4    for you, Your Honor.  They mentioned that the county is under

5    an obligation to preserve the evidence of the election.  Let

6    me explain to you what they preserve.  They have these

7    machines that people vote on, and they produce these memory

8    cards.  They make a copy of the memory card, but the machine

9    stays the same.  It's sort of like you have an iPhone --

10              THE COURT:  I understand.

11              MR. KLEINHENDLER:  You can take out the sim, right?

12              THE COURT:  Right.

13              MR. KLEINHENDLER:  So I would ask Your Honor to

14   please order no more erasing machines that are not being --

15              THE COURT:  Okay.

16              MR. KLEINHENDLER:  -- used for these local

17   elections --

18              THE COURT:  That sounds reasonable to me,

19   Mr. Willard, until we resolve this in just a few days.  Do

20   your clients have any objection to that?  The way I would

21   phrase it, and I am going to give you a chance to respond to

22   this, but my inclination is to order and temporarily restrain

23   the Defendants to the extent it is within their lawful

24   authority, from altering or destroying or erasing or allowing

25   the alteration, destruction, or erasing of any of the computer

U.S. DISTRICT COURT
LORI BURGESS, RMR

EXHIBIT A TO AFFIDAVIT OF L. LIN WOOD, JR.-32

1   information on any of the machines in these three counties
2   that we discussed, specifically Cobb, Gwinnett, and Cherokee.
3   What is y'all's response?  What is the State's response to
4   that, Mr. Willard?
5        MR. WILLARD:  Your Honor, I will say that there are
6   no State officials, there is no one within the direction and
7   control of any of the named State Defendants who is going to
8   be doing anything in regards to this voting equipment this
9   week or in the coming months.  So you still have the same
10  redressability issue.  You can order us to stop all you want,
11  but if we are not the ones behind the wheel, it is not doing
12  anything.
13       THE COURT:  Well then I would think that the
14  Defendants wouldn't have any problem being ordered to stop.
15  If they are not doing anything, there is nothing for them to
16  stop.  So that is going to be another feature of this order.
17  And we are not going to enter a written order, it will be in
18  the transcript.  But again, to the extent that it's within the
19  Defendants' lawful authority, they shall not alter, destroy,
20  or erase any of this information from any of these three
21  computers, nor will they allow anyone within their control and
22  authority, legal authority, from doing any of those things.
23  It sounds to me like you've been put on notice, Plaintiffs'
24  counsel, by Mr. Willard, quite clearly that you need to direct
25  these concerns towards these county officials.  The State, in

```
1   this -- obviously the Defendants in this case are disavowing
2   any authority or any responsibility or connection with these
3   county machines in this sense, they are not going to be going
4   down to any -- they are not going down to Lawrenceville or
5   Canton, or Marietta to try to erase any of these machines, the
6   concern that -- is Mr. Kleinhendler?
7              MR. KLEINHENDLER:  Kleinhendler, Your Honor.
8              THE COURT:  I was close.  Closer than you usually
9   get, I'll bet.  So let's do that.  Why don't we do this, why
10  don't we have a Zoom call tomorrow afternoon at 4 o'clock
11  where we will wait to hear back from someone on behalf of the
12  Defendants, if it is either Mr. Willard or someone else, to
13  respond, and let us know if there is something that the Court
14  is missing regarding the inspection, the forensic examination
15  of these machines.  So my --
16             MR. WILLARD:  Your Honor?
17             THE COURT:  Yes, sir.
18             MR. WILLARD:  Your Honor, we have moved again from
19  Wednesday.  To say --
20             THE COURT:  All I want tomorrow, Rus, is an update.
21  If they can give us an update.  If you want to update.  In
22  fact, I will leave it like that.  But if you want to update
23  us, just let us know tomorrow, and we'll be ready for a call
24  at 4 o'clock.  But if you don't have anything to report
25  tomorrow, that is perfectly fine.  I understand the competing
```

U.S. DISTRICT COURT
LORI BURGESS, RMR


EXHIBIT A TO AFFIDAVIT OF L. LIN WOOD, JR.-34

```
 1   interests that the Defendants have.  They are trying to juggle
 2   a lot of balls in the air at one time.  I understand that.
 3   Let me know if you know something tomorrow.  And if not -- I
 4   guess, you know, I am -- I have to admit, you know, when I
 5   think out loud like this, which is not something judges enjoy
 6   doing because it gets pointed out to them that they are
 7   changing their mind.  And I am inclined to agree with
 8   Mr. Willard on this.  Let's wait until Wednesday to hear back
 9   from Mr. Willard.  How about something in writing,
10   Mr. Willard, by the same time that the brief is due on
11   Wednesday, 5:00 p.m., in response to this inquiry that the
12   Court has as to the basis for any opposition by the Defendants
13   to this particular relief regarding the forensic examination
14   of the Dominion equipment in these three counties.  That is
15   what the order of the Court is going to be.  And contrary to
16   what I said a minute ago, I will put it in writing so everyone
17   can see it and it will be clear and you don't have to read the
18   transcript.  That order will be entered either tonight or
19   more -- I would say almost certainly not until tomorrow
20   morning.  Okay?  Anything else, Counsel?  Yes, sir?
21           MR. WILLARD:  Just two procedural points.  One, do
22   you want as a unified filing on Wednesday, or do you want us
23   to make them as two separate filings?
24           THE COURT:  Separate filings.
25           MR. WILLARD:  All right.  So I won't need, I think
```

U.S. DISTRICT COURT
LORI BURGESS, RMR

```
1    at this juncture, to ask for a page limit extension, but I may
2    revisit that issue with the Court.
3              THE COURT:  You can have however many pages you
4    need.  There is no limit on the pages.
5              MR. MACDOUGALD:  The Plaintiffs as well, Your Honor?
6              THE COURT:  The Plaintiffs' response as well.
7              MR. MACDOUGALD:  Thank you.
8              MR. WILLARD:  Your Honor, the second point, and now
9    that you have said that you are going to reduce this to
10   writing, I know that there has been a lot of rumor, innuendo,
11   and misinformation spread out there regarding what has taken
12   place in a number of courts around the country, and this Court
13   today, there were a number of social media posts made about
14   this Court's indication of the two earlier rulings.
15             THE COURT:  Right.
16             MR. WILLARD:  I ask you to make clear in your order
17   that only the State Defendants are being enjoined by anything
18   in your order and it is not enjoining any county officials
19   from doing anything.
20             THE COURT:  Not at this time.  They are not parties
21   to the case yet.
22             MR. WILLARD:  Thank you.
23             MR. WOOD:  Judge, for what it's worth, when we add
24   them tonight, we will be sending spoliation litigation hold
25   letters.  I think they have already received those a week ago,
```

```
 1    but we will redo it.
 2              THE COURT:  And Mr. Willard, just to be clear, you
 3    are referring to -- you refer to the Governor and the
 4    Secretary of State, not the other members of the Elections
 5    Board?  Is that right?
 6              MR. WILLARD:  I am actually referring -- I'm sorry?
 7              THE COURT:  The Governor and the Secretary of State.
 8    Let's see, of course I don't -- the Governor is a party and of
 9    course the Secretary of State is a party, and then we have
10    the --
11              MR. WILLARD:  The Election Board --
12              THE COURT:  -- four other Election Board members.
13    And what you just wanted to make clear to me, or clarify with
14    me, was that it was your understanding that the order I am
15    going to enter would only be enjoining the Governor and the
16    Secretary of State and not the four Election Board members who
17    are also named as Defendants.  Am I right about that?
18              MR. WILLARD:  No, Your Honor.  I am requesting that
19    you make clear in your order that only the State Defendants
20    are enjoined, and there is no injunction against any of the
21    unnamed county defendants.
22              MR. KLEINHENDLER:  Your Honor, this is Howard again.
23    I think your language earlier was right on.  You said you are
24    going to enjoin the State Defendants and anybody in their
25    control.  And our argument is that all these counties are
```

1    under the control of the Secretary of State.  So now if the
2    State wants to play a game and say, well, we have no ability
3    to control the counties, okay, we will deal with that on a
4    sanctions motion.  But I think you were very clear, Your
5    Honor, anybody -- the Defendants and anybody under their
6    control.  What the State is asking for now is to wiggle out of
7    that order, and I would urge you not to give to them that
8    language.  It is enough for you to say the Defendants in the
9    case and anybody under their control.
10           THE COURT:  Okay.  I understand the issue.  The only
11   point I was trying to make with Mr. Willard was I was trying
12   to see if he was trying to exclude the Governor.  I understand
13   that his main point was really that I was not ordering
14   directly any county officials to do or not do anything.  I
15   understand that that is what he was saying.  I think I
16   understand it.  I am actually clear on it.  So I think
17   everybody has their marching orders, we know what to do.  I am
18   the one that has to move next.  I have to enter an order that
19   clarifies all of this, and I think I do that with no problem.
20   It will probably be in the morning, okay?
21           MR. MACDOUGALD:  Judge, one housekeeping matter.  In
22   terms of serving future papers and filings on the Defendants,
23   can we agree or can the Court order that service on
24   Mr. Willard and Ms. McGowan is sufficient service on the State
25   Defendants?

```
 1              THE COURT:  I can't order them to waive their right
 2    to be served.
 3              MR. MACDOUGALD:  Okay, but what we would have to do
 4    otherwise is send the papers directly to the State Defendants.
 5              THE COURT:  Right.  That is a matter for you and
 6    Mr. Willard to discuss when I am not on the line.  If the
 7    Defendants want to acknowledge and waive service that is fine,
 8    and if they don't that is not something that I am going to
 9    upset with a ruling.
10              MR. MACDOUGALD:  Okay.
11              THE COURT:  We are adjourned, and you will hear from
12    me in the morning.  Y'all have a good night.
13                  (End of hearing at 8:48 p.m.)
14                        * * * * *
15                  REPORTER'S CERTIFICATION
16
17         I certify that the foregoing is a correct transcript from
18    the record of proceedings in the above-entitled matter.
19
20                                 _____
21                                 Lori Burgess
                                   Official Court Reporter
22                                 United States District Court
                                   Northern District of Georgia
23                                 Date:  November 30, 2020
24
25
```

U.S. DISTRICT COURT
LORI BURGESS, RMR