# IN THE SUPREME COURT FOR THE STATE OF GEORGIA

| | |
|---|---|
| IN RE: | ) |
| | ) |
| **L. LIN WOOD, JR.** | )   **File No. 210010** |
| **Georgia State Bar No. 774558** | ) |
| | ) |
| *Petitioner.* | ) |

## <u>VERIFIED PETITION FOR STAY OF BAR PROCEEDINGS</u>

      Comes now the Petitioner L. Lin Wood, Jr. and pursuant to GA BAR Rule 4-225 respectfully submits this Petition for a temporary stay of all proceedings by the State Bar of Georgia to initiate a "Grievance" on February 5, 2021, including the pending March 31, 2021 deadline imposed by the State Board of Discipline for Petitioner to file a response to this grievance and to also respond to the unsupported request for an invasive medical evaluation pursuant to GA BAR Rule 4-104.

## I.
## Introduction

      Petitioner seeks relief in the form of a stay of the State Bar of Georgia Grievance filed on February 5, 2021, pending a hearing on the Plaintiff's Motion for Preliminary Injunction filed on March 29, 2021 in the United States District Court for the Northern District of Georgia to determine the constitutionality of certain actions by the State Disciplinary Board to require that the Petitioner undergo a medical evaluation, allegedly pursuant to Rule

EXHIBIT "G"

4-104 of the Georgia State Bar Rules, yet in the absence of any factual grounds or evidence to support its determination, coupled with its failure to communicate to the Petitioner any basis for imposing this extraordinary measure, and the lack of any due process to review or challenge evidence or findings of fact.

## II.
## Jurisdiction

This Court is vested with original and exclusive jurisdiction to hear and determine the issues presented in this Petition pursuant to GA BAR Rule 4-225 which provides as follows:

> The State Disciplinary Board and any person who is connected with disciplinary proceedings in any way shall not be subject to the jurisdiction of any court other than the Supreme Court with respect thereto, except as provided in Rules 4-214, 4-215 and 4-216.

## III.
## Statement of Facts

Petitioner is a licensed attorney in the State of Georgia and has been practicing law in the state for 43 years. In 1997, he formed L. Lin Wood, P.C. ("LLW PC"), a professional corporation registered to transact business in Georgia, for the purpose of conducting his practice.

On March 23, 2021, Petitioner filed a Verified Complaint in the United States District Court for the Northern District of Georgia in a case styled *L.*

*Lin Wood, Jr. v. Paula J. Frederick, et al.*, Case NO. 1-21-cv-01169, for injunctive and declaratory relief to enjoin the Defendant members of the State Disciplinary Board ("SDB") from violating his constitutional rights of free speech, due process, and privacy as protected under the First, Fifth, and Fourteenth Amendments to the U.S. Constitution. The federal complaint focuses solely on the determination by the SDB to require the Petitioner to undergo an involuntary psychiatric examination without any supporting evidence on which to base such an extraordinary and intrusive request, and in the absence of any stated basis for its findings, or an opportunity to rebut such a finding. A true and correct copy of this complaint is attached hereto as Exhibit A and is incorporated herein by reference.

At the present time, no complaint or grievance has been filed against the Petitioner by any present or former client alleging that Petitioner has in any way conducted himself in an unethical or unprofessional manner or violated any Rule of Professional Conduct. No client has accused Mr. Wood of behaving in a manner that calls into question his competency or mental acuity to faithfully perform his duties as a member of the Bar. No complaint relating in any way to the practice of law has been filed against Mr. Wood by any person or entity, including the State Bar of Georgia, citing specific conduct by him as a violation of any Rule of Professional Conduct.

In addition, no former or present client made any accusation before any court or to the State Bar of Georgia calling into question the Petitioner's competency as an attorney, or suggesting that he suffers from any mental illness, cognitive impairment, alcohol abuse, or substance abuse which would impair his competency as a lawyer.

On February 11, 2021, Paula J. Frederick, acting in her capacities as both General Counsel for the State Bar of Georgia and a member of the Disciplinary Board of the State Bar of Georgia, sent a letter to the Petitioner. Without any evidentiary support or an opportunity for a hearing, the letter referenced a "finding" – which had been made and not "reconsidered" – that Mr. Wood might be "impaired or incapacitated to practice law." The letter continued with a demand for the invasive and unwarranted procedures at issue in this case, stating: **"Pursuant to Bar Rule 4-104, the Board hereby requests that you consent to a confidential evaluation by a medical professional."** (A true and correct copy of Ms. Frederick's letter is attached hereto as Exhibit A and is incorporated herein by reference.)

Ms. Frederick further advised Mr. Wood:

> The Board has preliminarily identified a medical doctor who has agreed to perform the evaluation at the Bar's expense. Please respond to this letter advising me whether you will undergo the evaluation so that we can finalize arrangements with the doctor and give you contact information. I understand that you are now

living in South Carolina, so if you prefer to see a doctor closer
to your residence I will make those arrangements.

The letter concluded with a threat:

Bar Rule 4-104 provides that a lawyer's refusal to participate in
an evaluation recommended under the rule may be grounds for
further proceedings under Bar Rules. **If you decline to
cooperate, I will convey that decision to the State
Disciplinary Board so that they may decide how to proceed.**

(Exhibit A, Letter from Paula J. Frederick at p. 1)(emphasis not
in original).

Since receiving this letter from Ms. Frederick, the Petitioner has written

no fewer than four letters to counsel for both the State Bar and the State

Disciplinary Board requesting that he be provided with the evidence on which

the Board relied in making its finding that he should submit to a mental health

evaluation so that he may make a proper response to this request. Petitioner

has attached hereto as Exhibits A, B, C and D copies of these letters. As of

the date of this Petition, no such evidence or basis for this finding and request

for mental health evaluation has been provided.

As alleged in the federal action, the apparent catalyst for the SDB's

determination to require the Petitioner to undergo a mental health evaluation

was certain grievances filed by four non-client, out-of-state individuals who

fulminated their political opposition to comments by the Petitioner on his

personal social media. While these individuals accuse the Petitioner of the

crime of treason and of engaging in seditious speech, they do not cite to even one Rule of Professional Conduct as a basis for their grievances. More importantly, all of them admit that they have never been in an attorney-client relationship with the Petitioner or have even spoken to him. None of them complain about any matters within the competence of the State Bar to regulate and govern the practice of law. Copies of these grievances filed by John Bellocchio (a resident of Hackensack, New Jersey), Ted Kurt (a resident of Maumee, Ohio), Paul Fine (a resident of Chicago, Illinois) and Stacey Smith Goldenberg (a resident of Eugene, Oregon) are contained in the State Bar File No. 210010.

On February 3, 2021, the Petitioner responded to the grievances filed by Mr. Bellocchio and Mr. Kurt in a letter to Paula J. Frederick, General Counsel to the State Bar, and enclosed a thumb drive of compelling evidence supporting his election-related litigation. The thumb drive also contained the interview of a very credible whistleblower whose statements provide substantial support for Mr. Wood's public comments about former Vice President Mike Pence, which were the subject of the grievants' criticism. No evidence has been presented refuting the claims of the whistleblower. Mr. Wood requested in this letter that the Board consider this evidence in connection with the complaints filed against him by the out of state, non-client

6

citizens and in connection with reported claims that the State Bar intends to request that I submit to a mental health examination. A copy of this letter is attached hereto as Exhibit E and is incorporated herein by reference.

Petitioner submits that political dissent is not mental incapacity. Exercising one's freedom of speech with vigor but within the First Amendment's right to free speech protections is not mental incapacity. Political and ideological speech is at the very core of the First Amendment to the United States Constitution, including speech concerning "politics, nationalism, religion, or other matters of opinion." *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943). If a stay is not granted of all proceedings involving the State Bar Grievance, or should the SDB be allowed to proceed with invoking any sanctions under GA BAR Rule 4-104, as intimated in Paula Frederick's letter dated February 11, 2021, there is a potential risk of inconsistent rulings with regard to the constitutional issues that lie at the foundation of these issues.

In addition, by virtue of the fact that the members of the SDB are now named defendants in the pending federal case, it is mandatory that any Disciplinary Board member involved in this matter who has a conflict of interest that would limit his or her ability to act impartially should immediately withdraw from any deliberations since a conflict of interest exists

disqualifying them from proceeding further with any investigation or deliberations involving the subject matters raised in the State Bar Grievance. Any actions taken by members of any Committee that are tainted with deliberations from persons with conflicts of interest should be suspect and should be immediately rescinded.

WHEREFORE, the Petitioner respectfully requests that this Court issue an order staying all further proceedings in the State Bar Grievance initiated by the State Bar of Georgia on February 5, 2021, including the pending March 31, 2021 deadline imposed by the State Board of Discipline for Petitioner to file a response to this grievance and to also respond to Board's request for a medical evaluation pursuant to GA BAR Rule 4-104.

Respectfully submitted,

Crain Law Group, PLLC

By: /s/ Larry L. Crain
Larry L. Crain, Esq.
(Tenn. Supr. Crt. # 9040)
5214 Maryland Way, Suite 402
Brentwood, TN 37027
Tel. 615-376-2600
Fax. 615-345-6009
Email: Larry@crainlaw.legal

*Counsel for the Plaintiff*

*(Pro Hac Vice Pending)*

*/s/ Ibrahim Reyes*
Ibrahim Reyes, Esq.
Florida Bar No. 581798
REYES LAWYERS, P.A.
236 Valencia Avenue
Coral Gables, FL 33134
Tel. 305-445-0011
Fax. 305-445-1181
Email: ireyes@reyeslawyers.com

*Counsel for the Plaintiff*
*(Pro Hac Vice Pending)*

*/s/ L. Lin Wood, Jr.*
L. LIN WOOD, JR., Esq.
State Bar No. 774588
1201 W. Peachtree Street NW
Atlanta, GA 30309
Tel. 404-572-6600
Email: lwood@linwoodlaw.com

Counsel, *Pro Se*


## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and correct copy of the foregoing document was served on the following individual(s) via the method indicated below on this the 31st day of March, 2021.


Paula J. Frederick
General Counsel
State Bar of Georgia
104 Marietta Street NW
Suite 100
Atlanta, GA 30303

Christian J. Steinmetz, III, Esq.
Gannam, Gnann & Steinmetz, LLC
425 E. President Street
Savannah, Georgia 31401


    ☒    First Class Mail
    ❑    Overnight Delivery
    ❑    Hand Delivery
    ❑    Fascimile
    ❑    Email


*/s/ Larry L. Crain*
Larry L. Crain

EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| **L. LIN WOOD, JR.,** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| -vs- | ) | |
| | ) | **Case No. _____** |
| **PAULA J. FREDERICK,** | ) | |
| **CONNIE S. COOPER,** | ) | **JURY DEMAND** |
| **JEFFREY R. HARRIS, CASEY** | ) | |
| **CARTER SANTAS, PATRICIA** | ) | |
| **F. AMMARI, KAYLA E.** | ) | |
| **COOPER, ELIZABETH L.** | ) | |
| **FITE, ELLISSA B. HAYNES,** | ) | |
| **MARGARET W. SIGMAN** | ) | |
| **PUCCINI, SHERRY BOSTON,** | ) | |
| **ELIZABETH POOL O'NEAL,** | ) | |
| **DAVID F. RICHARDS,** | ) | |
| **JENNIFER D. WARD,** | ) | |
| **MICHAEL FULLER, SR.,** | ) | |
| **JENNIFER ELIZABETH** | ) | |
| **DUNLAP, CHRISTIAN J.** | ) | |
| **STEINMETZ, III, BRANDON** | ) | |
| **L. PEAK, TOMIEKA DANIEL,** | ) | |
| **CHRISTOPHER SUTTON** | ) | |
| **CONNELLY, MELODY** | ) | |
| **GLOUTON,** and **DAWN** | ) | |
| **JONES,** each in their individual | ) | |
| and official capacities, | ) | |
| | | |
| *Defendants.* | | |

## **VERIFIED COMPLAINT**

COMES NOW THE PLAINTIFF L. LIN WOOD, JR., and files this

action against PAULA J. FREDERICK, CONNIE S. COOPER, JEFFREY R.

HARRIS, CASEY CARTER SANTAS, PATRICIA F. AMMARI, KAYLA

E. COOPER, ELIZABETH L. FITE, ELLISSA B. HAYNES, MARGARET

W. SIGMAN PUCCINI, SHERRY BOSTON, ELIZABETH POOL

O'NEAL, DAVID FOREST RICHARDS III, JENNIFER D. WARD,

MICHAEL FULLER, SR., JENNIFER ELIZABETH DUNLAP,

CHRISTIAN J. STEINMETZ, III, BRANDON L. PEAK, TOMIEKA

DANIEL, CHRISTOPHER SUTTON CONNELLY, MELODY GOUTON

and DAWN JONES and states as follows.

## I.
## INTRODUCTION

1.   L. Lin Wood is an attorney licensed to practice in the State of

Georgia and has for almost forty-four years been a member in good standing

of the State Bar of Georgia.  This action seeks declaratory and injunctive relief

pursuant to 42 U.S.C. § 1983, for violation of the Plaintiff's constitutional

rights under the First and Fourteenth Amendments of the United States

Constitution.  Specifically, the Defendants, acting under color of state law,

custom, practice and usage, have compelled the Plaintiff to submit to an

involuntary medical examination by a medical doctor of their choosing

despite the absence of any complaint by any client regarding his conduct or

competency as an attorney, and their lack of citation to any evidence that he

suffers from any mental illness, cognitive impairment, alcohol abuse, or

substance abuse impairing his competency as a lawyer. This coercive government action by the Defendants, acting under color of state law, is retaliatory and is motivated, in whole or in part, based on the Plaintiff's exercise of his free speech rights as a private citizen on matters of inherent and national public concern and therefore protected under the First Amendment of the United States Constitution. This state action also poses an imminent threat of irreparable harm to the Plaintiff and his ability to practice his livelihood should he fail to consent to undergo such a medical evaluation. It also constitutes an unwarranted, governmental invasion of his constitutional right to privacy as protected by the First and Ninth Amendments of the United States Constitution.

## II.
## JURISDICTION AND VENUE

2.     Jurisdiction is vested in this Court pursuant to 28 U.S.C. §§ 1331 and 1343(a). In addition, this Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy is in excess of $75,000 exclusive of interest and costs, and this action is between citizens of different states.

3.     Venue is proper in this federal district pursuant to 28 U.S.C. § 1391(b) because all of the relevant facts giving rise to this lawsuit occurred within this federal district.

### III.
### PARTIES

4.   L. Lin Wood is an adult citizen and resident of the State of South Carolina.  He is an attorney licensed to practice in the State of Georgia.  He was first admitted to practice by the Supreme Court of Georgia on June 10, 1977.

5.   The Defendant Paula J. Frederick is an adult citizen and resident of the State of Georgia, and at all times relevant to this action, was a member of the Disciplinary Board of the State Bar of Georgia.  She is sued in her individual and official capacities. This Defendant may be served with process at the following address: 798 Boulevard SE, Atlanta, Georgia 30312.

6.   The Defendant Connie S. Cooper is an adult citizen and resident of the State of Georgia, and at all times relevant to this action, was a member of the Disciplinary Board of the State Bar of Georgia.  She is sued in her individual and official capacities. This Defendant may be served with process at the following address:  105 Nature's Court, Pooler, Georgia 31322.

7.   The Defendant Jeffrey R. Harris is an adult citizen and resident of the State of Georgia, and at all times relevant to this action, was a member of the Disciplinary Board of the State Bar of Georgia.  He is sued in his individual and official capacities. This Defendant may be served with process at the following address:  410 E. Broughton Street, Savannah, Georgia 31401.

8.  The Defendant Casey Carter Santas is an adult citizen and resident of the State of Georgia, and at all times relevant to this action, was a member of the Disciplinary Board of the State Bar of Georgia.  He is sued in his individual and official capacities. This Defendant may be served with process at the following address:  75 Langley Drive, Lawrenceville, Georgia 30046.

9.  The Defendant Patricia F. Ammari is an adult citizen and resident of the State of Georgia, and at all times relevant to this action, was a member of the Disciplinary Board of the State Bar of Georgia.  She is sued in her individual and official capacities. This Defendant may be served with process at the following address:  3535 Roswell Road, Suite 23, Marietta, Georgia 30062.

10. The Defendant Kayla E. Cooper is an adult citizen and resident of the State of Georgia, and at all times relevant to this action, was a member of the Disciplinary Board of the State Bar of Georgia.  She is sued in her individual and official capacities. This Defendant may be served with process at the following address:  Building 3000, 535 Telfair Street, Augusta, Georgia 30901.

11. The Defendant Elizabeth L. Fite is an adult citizen and resident of the State of Georgia, and at all times relevant to this action, was a member of the Disciplinary Board of the State Bar of Georgia.  She is sued in her individual

5

and official capacities. This Defendant may be served with process at the following address: 4355 Cobb Parkway, Suite J564, Atlanta, Georgia 30339.

12. The Defendant Elissa B. Haynes is an adult citizen and resident of the State of Georgia, and at all times relevant to this action, was a member of the Disciplinary Board of the State Bar of Georgia. She is sued in her individual and official capacities. This Defendant may be served with process at the following address: 303 Peachtree Street NE, Suite 3500, Atlanta, Georgia 30308.

13. The Defendant Margaret W. Sigman Puccini is an adult citizen and resident of the State of Georgia, and at all times relevant to this action, was a member of the Disciplinary Board of the State Bar of Georgia. She is sued in her individual and official capacities. This Defendant may be served with process at the following address: One West Park Avenue, Savannah, Georgia 31401.

14. The Defendant Sherry Boston is an adult citizen and resident of the State of Georgia, and at all times relevant to this action, was a member of the Disciplinary Board of the State Bar of Georgia. She is sued in her individual and official capacities. This Defendant may be served with process at the following address: 556 N. McDonough Street, Suite 700, Decatur, Georgia 30030.

15. The Defendant Elizabeth Pool O'Neal is an adult citizen and resident of the State of Georgia, and at all times relevant to this action, was a member of the Disciplinary Board of the State Bar of Georgia. She is sued in her individual and official capacities. This Defendant may be served with process at the following address: 612 W. Taylor Street, Griffin, Georgia 30223.

16. The Defendant David Forest Richards, III is an adult citizen and resident of the State of Georgia, and at all times relevant to this action, was a member of the Disciplinary Board of the State Bar of Georgia. He is sued in his individual and official capacities. This Defendant may be served with process at the following address: 772 Masters Drive, Stone Mountain, Georgia 30087.

17. The Defendant Jennifer D. Ward is an adult citizen and resident of the State of Georgia, and at all times relevant to this action, was a member of the Disciplinary Board of the State Bar of Georgia. She is sued in her individual and official capacities. This Defendant may be served with process at the following address: 316 Lakeshore Drive, Savannah, Georgia 31419.

18. The Defendant Michael Fuller, Sr. is an adult citizen and resident of the State of Georgia, and at all times relevant to this action, was a member of the Disciplinary Board of the State Bar of Georgia. He is sued in his individual and official capacities. This Defendant may be served with process

at the following address: 1266 S. Jackson Springs Road, Macon, Georgia 31211.

19. The Defendant Jennifer Elizabeth Dunlap is an adult citizen and resident of the State of Georgia, and at all times relevant to this action, was a member of the Disciplinary Board of the State Bar of Georgia. She is sued in her individual and official capacities. This Defendant may be served with process at the following address: 1332 Wynnton Road, Columbus, Georgia 31906.

20. The Defendant Christian J. Steinmetz, III is an adult citizen and resident of the State of Georgia, and at all times relevant to this action, was a member of the Disciplinary Board of the State Bar of Georgia. He is sued in his individual and official capacities. This Defendant may be served with process at the following address: 425 E. President Street, Savannah, Georgia 31401.

21. The Defendant Brandon L. Peak is an adult citizen and resident of the State of Georgia, and at all times relevant to this action, was a member of the Disciplinary Board of the State Bar of Georgia. He is sued in his individual and official capacities. This Defendant may be served with process at the following address: 105 13th Street, Columbus, Georgia 31901.

22. The Defendant Tomieka Daniel is an adult citizen and resident of the State of Georgia, and at all times relevant to this action, was a member of the Disciplinary Board of the State Bar of Georgia. She is sued in her individual and official capacities. This Defendant may be served with process at the following address: 241 Third Street, Macon, Georgia 31201.

23. The Defendant Christopher Sutton Connelly is an adult citizen and resident of the State of Georgia, and at all times relevant to this action, was a member of the Disciplinary Board of the State Bar of Georgia. He is sued in his individual and official capacities. This Defendant may be served with process at the following address: 9899 Commerce Street, Summerville, Georgia 30747.

24. The Defendant Melody A. Glouton is an adult citizen and resident of the State of Georgia, and at all times relevant to this action, was a member of the Disciplinary Board of the State Bar of Georgia. She is sued in her individual and official capacities. This Defendant may be served with process at the following address: One Sugarloaf Center, 1960 Satellite Boulevard, Suite 4000, Duluth, Georgia 30097.

25. The Defendant Dawn M. Jones is an adult citizen and resident of the State of Georgia, and at all times relevant to this action, was a member of the Disciplinary Board of the State Bar of Georgia. She is sued in her individual

and official capacities. This Defendant may be served with process at the following address: 1230 Peachtree Street, NE, Suite 1900, Atlanta, Georgia 30309.

## IV.
## STATEMENT OF FACTS

26. L. Lin Wood, Jr. is a member in good standing of the Georgia Bar, and is the sole partner in the law firm of L. Lin Wood, PC in Atlanta, Georgia. He is at this time a resident of the State of South Carolina.

27. On February 11, 2021, Paula J. Frederick, acting in her capacities as General Counsel for the State Bar of Georgia and a member of the Disciplinary Board of the State Bar of Georgia, sent a letter to Mr. Wood stating: **"Pursuant to Bar Rule 4-104, the Board hereby requests that you consent to a confidential evaluation by a medical professional."** (A true and correct copy of Ms. Frederick's letter is attached hereto as Exhibit A and is incorporated herein by reference.)

28. Ms. Frederick, further advised Mr. Wood:

> The Board has preliminarily identified a medical doctor who has agreed to perform the evaluation at the Bar's expense. Please respond to this letter advising me whether you will undergo the evaluation so that we can finalize arrangements with the doctor and give you contact information. I understand that you are now living in South Carolina, so if you prefer to see a doctor closer to your residence, I will make those arrangements.

Bar Rule 4-104 provides that a lawyer's refusal to participate in an evaluation recommended under the rule may be grounds for further proceedings under Bar Rules. **If you decline to cooperate, I will convey that decision to the State Disciplinary Board so that they may decide how to proceed.**

(Exhibit A, Letter from Paula A. Frederick at p. 1) (emphasis not in original).

29. The Plaintiff submits that the "request" of the State Disciplinary Board that he consent and submit to a mental evaluation is coercive in nature and, as Ms. Frederick forewarns in her letter, an attorney who fails or refuses to consent to such a psychological examination faces a grave and imminent threat of disciplinary sanctions, including the emergency suspension of his law license and ability to earn a livelihood. GA BAR RULE 4-104(2) specifically provides as follows:

A lawyer's refusal to cooperate with the medical or mental health professional or to participate in the evaluation or recommended treatment may be grounds for further proceedings under these Rules, including emergency suspension proceedings pursuant to Rule 4-108.

30. On February 18, 2021, the Plaintiff responded to Ms. Frederick stating: "Likewise, any request for an independent medical examination, physical or mental, raises serious privacy issues, among other significant concerns. . . To date, the Bar has not provided me with the alleged factual justification for the Bar's intrusive demand for a mental health examination and I am aware of no basis for this unprecedented demand on a member of the

11

Bar of Georgia." Mr. Wood requested a reasonable extension of time to formally respond to the Bar's demands, and to locate counsel to represent him. (A true and correct copy of this letter is attached hereto as Exhibit B and is incorporated herein by reference).

31. On February 19, 2021, Ms. Frederick responded to Mr. Wood's request for an extension giving him until March 15, 2021 within which to respond to the Defendants' request for a medical examination. (A true and correct copy of this letter is attached hereto as Exhibit C and is incorporated herein by reference).

32. On March 2, 2021, the Plaintiff sent a second letter to Ms. Frederick's letter, and requested that she provide him information to assist him in the selection of counsel to represent him in this proceeding. Specifically, Mr. Wood requested that the Disciplinary Board provide him with an explanation of the basis of its determination that he undergoes a mental evaluation. In this letter, Mr. Wood specifically stated:

> Finally, you have asked for a psychological examination, but that seems premature if there is no basis for your statements that I "appear[] to be impaired to practice law" So far, nothing in the Complaint has dealt in any way with my conduct in the practice of law. Proposed Counsel have asked if there is any specific case which serves as the basis for the Bar to challenge my competency to practice law or which justifies an allegation that I "appeared" impaired. Have you or the Bar identified any case in which a client or former client complained that my competency was impaired, if so, which case? Existing case law only includes arguments for

12

such an examination only after such a hearing had been held and evidence had been presented regarding the attorney's substance abuse or mental incapacities - in all cases which affected his or her competency as a lawyer.

Rule 4-104 reviews are limited to specific and "appropriate" examinations that are tied to a "determination" by the "State Disciplinary Board". There has been no such determination; or, if there has, I was not invited to participate in any hearing prior to that determination. Proposed Counsel has requested copies of that determination, and the basis on which that determination was made. If it does not exist, we suggest that you postpone or rescind this action until such time as an appropriate hearing as to the basis for such a determination is presented and heard.

(A true and correct copy of the letter from L. Lin Wood, Jr. to Paula A. Frederick dated March 2, 2021 is attached hereto as Exhibit D and is incorporated herein by reference).

33. The State Disciplinary Board's authority to make the extraordinary

request that an attorney submit to a mental health evaluation is set out in GA

BAR Rule 4-104, which provides as follows:

**Rule 4-104. Mental Incapacities and Substance Abuse**

Mental illness, cognitive impairment, alcohol abuse, or substance abuse, to the extent of impairing competency as a lawyer, shall constitute grounds for removing a lawyer from the practice of law.

Upon a determination by the State Disciplinary Board that a lawyer may be impaired or incapacitated to practice law as a result of one of the conditions described in paragraph (a) above, the Board may, in its sole discretion, make a confidential referral of the matter to an appropriate medical or mental health professional for the purposes of evaluation and possible referral to treatment and/or peer support groups. The Board may, in its discretion, defer disciplinary findings and proceedings based upon the impairment or incapacities of a lawyer to afford the lawyer an opportunity to

be evaluated and, if necessary, to begin recovery. In such situations the medical or mental health professional shall report to the State Disciplinary Board and the Office of the General Counsel concerning the lawyer's progress toward recovery. A lawyer's refusal to cooperate with the medical or mental health professional or to participate in the evaluation or recommended treatment may be grounds for further proceedings under these Rules, including emergency suspension proceedings pursuant to Rule 4-108.

34. Despite Mr. Wood's request on March 2, 2021 for an explanation regarding the State Disciplinary Board's determination, the Defendants have not been forthcoming with even a scintilla of evidence, facts or information to suggest that the Plaintiff suffers from any "mental illness, cognitive impairment, alcohol abuse, or substance abuse to the extent of impairing competency" which are the sole grounds under Rule 4-401 for ordering a mental evaluation. Nor has the State Disciplinary Board provided any information or evidence to support its determination.

35. The State Disciplinary Board has not afforded the Plaintiff a reasonable opportunity for a pre-determination hearing, or an opportunity to subpoena or cross-examine witnesses, or present any evidence to challenge its determination that he undergo a mental evaluation prior to making this determination.

36. The Plaintiff states categorically that he does not suffer from any mental illness, cognitive impairment, alcohol abuse, or substance abuse.

37. The fact that the Defendants have, according to Ms. Frederick's letter of February 11, 2021, "determined" that the Plaintiff is in need of a mental evaluation has itself created an ongoing threat of irreparable harm to the Plaintiff. His ability as an attorney to sign on new clients or engage in needed commitments in his legal practice, have now been interrupted due to the fact that he may face imminent suspension of his license unless he consents to undergo an entirely subjective mental health evaluation by a medical doctor, a psychiatrist.

38. The Plaintiff alleges that there is not a single complaint or grievance from any present or former client which has been cited as grounds by the Defendants for their pre-hearing determination that he should undergo a mental examination.

39. Plaintiff submits that in every reported Georgia case in which an attorney has been required to submit to a mental health evaluation, there was first a threshold determination based on complaints *from the attorney's clients* which raised concerns of some significant impairment or disability that interfered with the attorney's ability to competently represent his clients' interests.[1]

_____

[1] See *In re Rand*, 616 S.E.2d 452, 453, 279 Ga. 555, 556 (2005)(special master found that attorney suffered a significant mental disability and because of that disability failed to

40. Plaintiff further alleges that in the instant case not one of his clients or former clients has complained to the Bar that he has exhibited any signs of "mental illness, cognitive impairment, alcohol abuse, or substance abuse" which are the sole predicate factors stated in Rule 4-104 for determining an attorney's need for a referral to an appropriate medical or mental health professional.

41. No factual basis exists for the Defendants to assert that the Plaintiff's professional relationship with any client or case has been, or is now being, adversely impacted by any of his actions as an attorney.

42. The Plaintiff alleges that the actions of the State Disciplinary Board of requiring him to undergo a mental evaluation are motivated, in whole or in part, on the Plaintiff's exercise of his free speech as a private citizen on

---

account properly for funds held in a fiduciary capacities and that he applied settlement funds improperly); *In re Giallanza*, 695 S.E.2d 254, 254, 287 Ga. 257, 257 (2010)(six separate grievances filed against filed by clients against attorney for mishandling and misappropriation of client funds found to suffer from dementia); *Matter of Levine*, 811 S.E.2d 349, 350–51, 303 Ga. 284, 286 (2018)(attorney sanctioned under Rule 4-104 who admittedly was suffering mental and emotional impairments arising out of his on-going divorce action and preexisting medical issues); *In re Morales*, 651 S.E.2d 84, 86, 282 Ga. 471, 472 (2007)(attorney admitted that he suffered from mental and showed strong feelings of paranoia and persecution); *Matter of Tapley*, 842 S.E.2d 36, 37, 308 Ga. 577, 578 (2020)(attorney who was in his 80s admitted that he was no longer "physically and mentally able to adequately represent his clients" and that he was "just not up to the pressure").

matters of national and inherent public concern and on his legal advocacy calling into question certain practices by election officials in Georgia and elsewhere in the country.

43. The Plaintiff further alleges that the actions of the State Disciplinary Board are based on communications from members with existing conflicts of interest, who have not recused themselves or taken appropriate steps to avoid an appearance of impropriety.

44. In support of this allegation, Plaintiff alleges that prior to Ms. Frederick's letter on February 11, 2021, the State Bar of Georgia received grievances from four individuals outside the State of Georgia who attacked the Plaintiff based on his exercise of his free speech as a private citizen on political issues of inherent public and national concern.

45. These same out-of-state complaints openly criticize and demean the Plaintiff for his legal advocacy in challenging certain deficiencies in the November 2020 election process and his participation in various court challenges calling for judicial review of cited examples of fraudulent balloting in several jurisdictions.

46. The concerns of lack of integrity in the election process in November of 2020, as litigated by the Plaintiff have recently been vindicated by Supreme Court Justice Clarence Thomas:

> That is not a prescription for confidence. Changing the rules in the middle of the game is bad enough. Such rule changes by individual and officials who may lack authority to do so is even worse. When those changes alter election results, they can severely damage the electoral system on which our self-governance so heavily depends. If state individual and officials have the authority they have claimed, we need to make it clear. If not, we need to put an end to this practice now before the consequences become catastrophic.
>
> *Republican Party of Pennsylvania v. Degraffenreid*, 592 U.S. ____ (2021), J. Thomas dissenting from denial of certiorari (joined in a separate dissent by Alito and Gorsuch, JJ)

47. Plaintiff's concerns have also been vindicated in other jurisdictions. In the matter *Robber Genetski, County of Alleghan Clerk, and Michigan Republican Party v. Jocelyn Benson and Jonathan Brater, Director of Elections* (Case No. 20-000216-MM), the State of Michigan Court of Claims ruled on March 9, 2021 that the Director of Elections' "guidance" to absentee voters via its "Absent Voter Ballot Processing: Signature Verification and Voter Notification Standards" violated Michigan's Administrative Procedures Act ("APA"). The Court in Michigan found that the changes that Michigan's Secretary of State Jocelyn Benson made to the absentee ballots' examination process had to have been promulgated by the Legislature pursuant to APA's procedures, and because it was not, the rule was declared invalid. Plaintiff L. Lin Wood, in his Georgia election integrity lawsuits, challenged similar issues, *i.e.,* the illegality of the Compromise Settlement Agreement and

18

Release that Georgia's Secretary of State entered on March 6, 2020, without the Legislature's input, altering Georgia's mail-in voting and absentee ballots' review.

48. The four out-of-state grievances which the Plaintiff alleges served as the basis for the Defendants' request that he undergo a mental evaluation were all received in late December and early January of 2021. The individuals who lodged these grievances were: Ted Kurt who resides in Maumee, Ohio; John Bellocchio, who resides in Hackensack, New Jersey; Paul Fine who resides in Chicago, Illinois; and Stacey Smith-Goldenberg, who resides in Eugene, Oregon;

49. Ted Kurt is a retired attorney in Maumee, Ohio. He admits in his Bar grievance that he has never had any direct contact with the Plaintiff, and that he has never been in an attorney-client relationship with the Plaintiff. In his grievance, which was received by the State Bar of Georgia on December 28, 2020, Mr. Kurt's sole criticism of the Plaintiff involves what he characterizes as "seditious speech" by Mr. Wood on his personal Twitter account on December 14, 2020. The comment published by Mr. Wood, which forms the basis of Mr. Kurt's false and defamatory bar grievance, reads as follows: "Better be safe than sorry. Make sure you have plenty of water, food,

flashlights and batteries, candles, radio, 2nd Amendment supplies, and a plan to meet with leaders in your communities."

50. John Bellocchio, who resides in Hackensack, New Jersey, has never met or spoken with the Plaintiff. He has never been in an attorney-client relationship with Mr. Wood. Yet, in his Bar grievance filed on January 4, 2021, he accuses the Plaintiff of treason by knowingly levying war against the State of Georgia, adhering to her enemies and giving them aid or comfort". This false and defamatory accusation by Mr. Bellocchio is based entirely on a single comment on Mr. Wood's personal Twitter account which was critical of former Vice-President Mike Pence. Plaintiff's comment was purely political and rhetorical hyperbole and protected under the First Amendment.

51. Paul Fine is an attorney in Chicago. He admits in his false and defamatory Bar grievance filed against Mr. Wood that he has never met or spoken with the Plaintiff. He admits that Mr. Wood has never been in an attorney-client relationship with him. Mr. Fine bases his bar grievance entirely on comments allegedly published by Mr. Wood on January 1, 2021, on his personal Twitter account which were critical of former Vice-President Mike Pence. Mr. Fine makes the defamatory and unsupported accusation that because of Mr. Wood's Twitter comment he must be "either mentally unbalanced, or willing to misuse the legal process for improper ends." Mr.

Wood's Twitter comments constitute political, rhetorical hyperbole and are thus protected speech under the First Amendment and cannot constitutionally serve as a basis for requiring him to undergo a mental health evaluation.

52. Stacey Smith-Goldenberg resides in Eugene, Oregon. She admits in her Bar grievance filed against Mr. Wood that she has never met or spoken with the Plaintiff. She admits that Mr. Wood has never been in an attorney-client relationship with her. Ms. Smith-Goldenberg falsely defamed Mr. Wood based on his comments on Twitter of inciting the "riot and insurrection at the U.S. Capitol on January 6, 2021." Because of his political comments, which at most constitute rhetorical hyperbole, Ms. Smith-Goldenberg called on the State Bar of Georgia to "revoke Mr. Wood's license to practice law." The Plaintiff would again reiterate that his comments were of a political nature and rest on the highest rung of protection under the First Amendment.

53. As further evidence of the Defendant's improper motive in ordering him to undergo a mental health evaluation, Defendants have recently "changed the rules" appliable to this action against the Plaintiff. On January 9, 2021, Office of the General Counsel for the State Bar of Georgia forwarded Proposed Rule Changes to the Board of Governors for consideration at its Mid-Year Meeting on January 9,2021. One of the proposed rule changes to Rule 4-202 of the Georgia Bar Rules allowed grievance complaints to be

considered if based on "credible information from any source" as opposed to the prior rule which limited consideration to grievances filed by clients.  It further appears that the Board of Governors changed the rules on January 9, 2021 to allow for consideration of grievance complaints filed by out-of-state non-clients.

54. All four of the out-of-state non-clients who filed complaints against the Plaintiff based their grievances on speech activity by Mr. Wood that occurred *prior* to this new rule change on January 9, 2021.  None of those grievances allege unethical conduct associated with or related to the practice of law, the sole area of the State Bar of Georgia's regulatory jurisdiction. Nonetheless, the State Bar of Georgia is applying this rule change which allows a bar grievance to be initiated on information "from any credible source" retroactively to encompass these earlier out-of-state complaints. The scope of this rule change is breathtaking in its ambiguity, breadth, and would put every attorney at risk of constantly defending against non-client complaints which would threaten their ability to effectively serve as legal advocates.  The rule change is unlawful and unconstitutional as it exceeds any reasonable rule related to the regulation of the practice of law.  The rule change improperly subjects a lawyer to disciplinary action based on disagreement alone, not even limited to the practice of law.

55. According to the January 8, 2021 minutes of the Disciplinary Rules & Procedures Committee of the State Bar of Georgia, the Committee offered a Proposed New Comment to Rule 1.1. "to emphasize the importance of wellness as a component of competence." This proposal was opposed by the Lawyer Assistance Program and the Attorney Wellness Committee.

56. The Plaintiff alleges that the Defendant's actions in subjecting him to an involuntary medical examination as a condition of maintaining his ability to practice his livelihood has had a pronounced chilling effect on his exercise of his free speech rights.

57. The Defendants' actions subject the Plaintiff to the threat of imminent disciplinary action unless he submits to a medical evaluation, without any factual grounds to support their pre-determination that such an evaluation is warranted, and absent any opportunity by the Plaintiff to challenge this decision.  Such action by the Defendants amounts to a denial of the Plaintiff's substantive and procedural due process rights under the Fourteenth Amendment of the United States Constitution.

58. In addition, the Defendants' insistence that the Plaintiff submit to a psychological mental evaluation poses a significant threat of intrusion into the Plaintiff's privacy and infringes upon his constitutional rights as protected under the First Amendment of the United States Constitution.

# V. CAUSES OF ACTION

## FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983

### Violation of First Amendment of the United States Constitution

59. Plaintiff incorporates herein by reference each of the allegations contained in the preceding paragraphs as fully as though set forth verbatim herein.

60. The authority of the Defendants to request that an attorney admitted to practice before the courts of this state submit to a mental health evaluation is governed by GA BAR RULE 4-104, which provides as follows:

### Rule 4-104. Mental Incapacities and Substance Abuse

Mental illness, cognitive impairment, alcohol abuse, or substance abuse, to the extent of impairing competency as a lawyer, shall constitute grounds for removing a lawyer from the practice of law.

Upon a determination by the State Disciplinary Board that a lawyer may be impaired or incapacitated to practice law as a result of one of the conditions described in paragraph (a) above, the Board may, in its sole discretion, make a confidential referral of the matter to an appropriate medical or mental health professional for the purposes of evaluation and possible referral to treatment and/or peer support groups. The Board may, in its discretion, defer disciplinary findings and proceedings based upon the impairment or incapacities of a lawyer to afford the lawyer an opportunity to be evaluated and, if necessary, to begin recovery. In such situations the medical or mental health professional shall report to the State Disciplinary Board and the Office of the General Counsel concerning the lawyer's progress toward recovery. A lawyer's refusal to cooperate with the medical or mental health professional or to participate in the evaluation or recommended treatment may

24

be grounds for further proceedings under these Rules, including emergency suspension proceedings pursuant to Rule 4-108.

61. A "determination" by the Board, as that term is used in the second sentence of Rule 4-104, and as cited in Paula Frederick's letter of February 11, 2021, must, at a minimum, signify that the Defendants have a good faith and evidentiary basis for requesting a practicing attorney to undergo a mental examination. Given the paramount privacy interests at stake in ordering someone to undergo such an intrusive process, such a "determination" cannot be based on a whim, rumor or mere speculation and further cannot be based on private speech not related to legal representation of a client.

62. Before an attorney may render his or her informed consent to undergo a state-ordered mental evaluation, they must, as a practical matter, be provided a factual basis for deciding whether to submit to such a governmental directive. The attorney cannot, as a matter of due process, be expected to simply accept at face value, without being provided any explanation or grounds, a government agency's instruction that he or she submit to such an intrusive medical procedure and invasion of privacy.

63. The Defendants' actions in requesting Plaintiff submit to a mental health evaluation are predicated on four non-clients, out-of-state, post hoc grievances that take issue with Plaintiff's political speech, via social media

(Twitter or Parler), relating to a matter of public concern and made in a public forum.

64. Plaintiff's social media and political speech activity which clearly formed the basis of the four non-client, out-of-state allegations, constitutes speech that is protected under the First Amendment of the United States Constitution. Plaintiff submits that these complaints were based, in whole or in part, on the Plaintiff's participation in political activities and legal challenges against certain balloting and election procedures in the 2020 Presidential election. These issues are – and remain – legitimate concerns as recently recognized by a sitting Justice on the United States Supreme Court.

65. Accordingly, Plaintiff was engaged in conduct protected by the First Amendment.

66. To the extent the Defendants' directive that the Plaintiff consent to a mental evaluation is premised, in whole or in part, on political remonstrances submitted by the four, non-client out-of-state complainants it is an infringement of the Plaintiff's First Amendment right of freedom of expression.

67. The Defendants' mandate that the Plaintiff should undergo a mental evaluation is retaliatory in nature and is based on the political positions advocated by the Plaintiff and his public expressions calling into question the

legitimacy of certain balloting and election procedures used during the 2020 Presidential election, as well as the Plaintiff's outspoken political positions with respect to former President Donald Trump.

68. The Plaintiff faces an imminent threat to his ability to earn a livelihood in the practice of law and an all but certain suspension of his law license if he does not consent to undergo a mental health evaluation by an unidentified physician hired by the State Disciplinary Board's (or General Counsel's) choosing.

69. The actions of the Defendants, acting individually and in their roles as members of the State Disciplinary Board and/or General Counsel for the State Bar of Georgia are being carried out under color of state law, and with reckless disregard for the Plaintiff's clearly established constitutional rights under the First Amendment.

70. The Defendants' individual and collective actions have a continuing chilling effect upon the Plaintiff's free speech rights under the First Amendment.

71. As a consequence of the Defendants' intentional actions to deprive the Plaintiff of his constitutional rights, he has suffered, and continues to suffer humiliation, embarrassment, injury to reputation and other injuries for which he is entitled to nominal and compensatory damages.

72. The Plaintiff is entitled to temporary injunctive relief to enjoin and restrain the Defendants, and all those acting in concert with them, from the continued violation of his constitutional rights under the First Amendment of the United States Constitution.

73. In addition, the Plaintiff requests that this Court enter a declaratory judgment declaring the actions of the Defendants to be in violation of the Plaintiff's rights as guaranteed by the First Amendment of the United States Constitution.

## SECOND CLAIM FOR RELIEF
### 42 U.S.C. § 1983

**Subjection To Mental Evaluation Without Due Process of Law
Violation of Due Process Clause of the Fourteenth Amendment of the
United States Constitution**

74. Plaintiff incorporates herein by reference each of the allegations contained in the preceding paragraphs as fully as though set forth verbatim herein.

75. Since his admission to the Georgia bar in 1977, the Plaintiff has successfully litigated dozens of complex civil cases on a national level and before several of the highest courts across the country. Until this present accusation by the Georgia Bar in January of 2021, the Plaintiff's competence, mental acuity or fitness to practice law has never once been called into

question.  Nor has the Plaintiff ever been accused of, or suffered from, any alcohol or substance abuse.

76. On January 29, 2021, the Plaintiff sent an email to Paula Frederick putting the Defendants on notice of his concerns that any decision to require him to submit to a medical evaluation would constitute a violation of his personal right of free speech.  In this email, Mr. Wood stated as follows:

From: **Lin Wood**
Sent: Friday, January 29, 2021 10:21 PM
To: Paula Frederick <paulaf@gabar.org>
Subject: **My Bar License**

Paula,

Please share the message in the link below with the members of the Executive  Committee.

I hope they make a wise decision and avoid the battle over an medical exam that is unjustified. The Bar does not regulate my personal right of free speech.

https://t.co/lgrko1dcHx

Thank you.

Lin

L. Lin Wood
L. Lin Wood, P.C.
P.O. Box 52584
Atlanta, GA 30355-0584
Telephone: (404) 891-1402
Direct Dial: (404) 891-1406
E-Mail: lwood@linwoodlaw.com

77. On February 5, 2021, just five business days after Mr. Wood's email on January 29, 2021, and despite the Plaintiff's concerns relative to his free speech interests, the Defendants, acting on their own initiative, filed a bar

grievance against the Plaintiff. In this grievance, the Defendants cited, as one of their grounds, Bar Rule 4-104 (Mental Incapacities and Substance Abuse).

78. On February 11, 2021, Ms. Frederick sent a letter to Mr. Wood in which she advised that she had circulated Mr. Wood's email dated January 29, 2021 to the members of the State Disciplinary Board, and further advised: "The Board did not reconsider its finding that you may be impaired or incapacitated to practice law." (See Exhibit A to Complaint at ¶ 1).

79. Plaintiff alleges that the Defendants' decision to refer him for a mental health evaluation was a foregone conclusion based on the attacks upon the Plaintiff's social media, political speech activity set forth in the four non-client, out-of-state grievances referred to in ¶¶ 40-49.

80. At no time prior to their February 11, 2021 letter directing the Plaintiff to consent to undergo a confidential mental health evaluation did the Defendants present the Plaintiff with any evidence to support a determination that the Plaintiff has exhibited any signs of "mental illness, cognitive impairment, alcohol abuse, or substance abuse" which are the sole predicate factors stated in Rule 4-104 for determining an attorney's need for a referral to an appropriate medical or mental health professional. The Defendants have still presented no such evidence.

81. The Fourteenth Amendment of the United States Constitution affords substantive and procedural due process to protect fundamental liberty interests against certain governmental intrusions and places limitations on state action that deprives individuals of life, liberty, or property without due process of law.  Included within this protection is the right to meaningful notice and an opportunity to be heard.

82. The Disciplinary Board without providing Plaintiff with meaningful notice or an opportunity to be heard, unilaterally and without any basis in fact, made a determination that Plaintiff should undergo a mental health evaluation.

83. On March 19, 2021, the Plaintiff sent a letter to Defendant Christian J. Steinmetz, III, the individual whom the Disciplinary Board has identified as the one in charge of this disciplinary action against Mr. Wood.  In his letter, Mr. Wood again requested that "any further action be predicated upon: a) an opportunity for notice and hearing with respect to any charges that might lead to a determination under Rule 4-104(b); and b) confirmation of an appropriate process to identify conflicts of interest and an inquiry into the motivations of the persons who are acting on behalf of the Bar and the Disciplinary Board, including the right to challenge persons who have a conflict of interest. (A true and correct copy of this letter dated March 19, 2021, is attached hereto as Exhibit E and is incorporated herein by reference).

84. On March 19, 2021, Mr. Wood received the following response email from Mr. Steinmetz:

> **From:** Chris Steinmetz <cjs@ggsattorneys.com>
> **Date:** March 19, 2021 at 4:07:46 PM EDT
> **To:** Lin Wood <lwood@linwoodlaw.com>
> **Subject: CONFIDENTIAL - L. Lin Wood, Proposed Grievance File No. 210010**
>
> Mr. Wood –
>
> Thank you for your letter of today.
>
> As indicated in my correspondence of March 15, 2021, you have until March 31, 2021 to respond to the Board's request for a medical examination and for your challenges to the participation of any Board Members and until March 31, 2021 to respond to the Notice of Investigation in the Board-issued Notice of Investigation No. 210010. You have previously been advised that you are entitled to the advice of counsel in these matters. There are many lawyers who have considerable expertise in representing lawyers in matters such as these. If for any reason you are unclear as to your present obligations, I urge you to seek the advice of learned counsel.
>
> Your responses are governed by Rules 4-104, 4-204.3, and Rule 11 of the Internal Rules of the State Disciplinary Board. Any timely response submitted in conformance with the Rules will be considered, but in any event, the Board is obligated to follow and will follow the Rules. I urge you to read these Rules and comply with them, as will the Board when it administers your matters. Again, if for any reason you are unclear as to your present obligations under these rules, I urge you to seek the advice of counsel.
>
> I will look for your responses detailed above on or before March 31st.
>
> Thank you,
>
> **Christian J. Steinmetz III, Esq.**
> **Member, State Disciplinary Board**
> **State Bar of Georgia**

85. Despite repeated requests, the Defendants have failed to come forward with any factual basis to require the Plaintiff to undergo a mental health evaluation or any factual allegation that a client has been, or is now being, adversely impacted by the Plaintiff's professional conduct or his actions as an attorney or that Plaintiff is "impaired or incapacitated to practice law."

86. To be sure, no client or former client of the Plaintiff has filed a complaint or grievance regarding Plaintiff's competency as a lawyer; nor has any client asserted that Plaintiff is in any way impaired or incapacitated in his representation or practice of law.

87. The failure or refusal of the Plaintiff to accede to the Disciplinary Board's determination and request that he under a mental evaluation is tantamount to the Board imposing an emergency suspension of the Plaintiff's law license, and could result in the long term suspension of the Plaintiff's license and even disbarment.

88. The actions of each of the Defendant members of the Disciplinary Board constitute an arbitrary and capricious abuse of its authority in violation of the Plaintiff's substantive due process rights under the Fourteenth Amendment, which guarantee is intended to prevent state actors from employing their power in an abusive or oppressive manner.

89. Plaintiff alleges each of the Defendants, acting individually, or in their official capacities as members of the State Board of Discipline and/or General Counsel for the State Bar of Georgia, have acted in reckless disregard of his clearly established constitutional rights and have deprived him of a valid substantive liberty or property interest without adhering to the basic procedural obligations required by the Due Process Clause.

90. The requirements of procedural due process must be met before a State can exclude a person from practicing law. *Willner v. Committee on Character and Fitness*, 373 U.S. 96, 102, 83 S.Ct. 1175, 1179–80, 10 L.Ed.2d 224 (1963). The same must, of necessity, be true before a State can demand that one submit to a compelled mental examination.

91. Plaintiff has a property interest in his license or right to practice law.

92. The Plaintiff is entitled to temporary injunctive relief to enjoin and restrain the Defendants, and all those acting in concert with them, from the continued violation of his due process rights under the Fourteenth Amendment of the United States Constitution.

93. In addition, the Plaintiff requests that this Court enter a declaratory judgment declaring the actions of the Defendants to be in violation of the Plaintiff's rights as guaranteed by the Fourteenth Amendment of the United States Constitution.

94. As a further consequence of the Defendants' intentional actions to deprive the Plaintiff of his constitutional rights he has suffered, and continues to suffer humiliation, embarrassment, injury to reputation and other injuries for which he is entitled to nominal and compensatory damages.

### THIRD CLAIM FOR RELIEF
#### 42 U.S.C. § 1983

**Violation of Constitutional Right To Privacy**

**(First, Ninth and Fourteenth Amendments of the United States Constitution)**

95. Plaintiff incorporates herein by reference each of the allegations contained in the preceding paragraphs as fully as though set forth verbatim herein.

96. The Plaintiff has a protected constitutional right under the First, Ninth and Fourteenth Amendments of the United States Constitution to his personal privacy from unwarranted government intrusion.

97. The Due Process Clause of the Fourteenth Amendment places limitations on state action that deprives individuals of life, liberty, or property.

98. Substantive protections of the Due Process Clause include the right to avoid disclosure of sensitive, personal information. Courts have long recognized the right to privacy in one's medical information.

99. Consistent with, and in accordance with Plaintiff's constitutional right to privacy, Georgia Bar Rule 4-221.1 provides that the State Bar of Georgia shall maintain as confidential all disciplinary investigations and proceedings pending at the screening or investigative stage, unless otherwise provided by these Rules.

100. Notwithstanding Plaintiff's constitutional right to privacy and the concomitant rights afforded by Rule 4-221.1, on or before January 26, 2021, Paula J. Frederick, as General Counsel and on behalf of the Disciplinary Board

communicated with attorney Chris Marquardt, Plaintiff's former counsel in a pending civil lawsuit arising out of a fee-splitting dispute, and disclosed information that would otherwise be confidential, that is, that the Defendants had already determined that Plaintiff would be ordered to submit to a psychiatric evaluation.

101. The Defendants' "request" that Plaintiff submit to a mental health evaluation is an intentional and deliberate violation of this constitutionally protected right of privacy.

102. Additionally, on January 29, 2021, Paula J. Frederick disclosed and published confidential information to Atlanta Journal-Constitution reporters, in violation of Rule 4-221.1 and Plaintiff's right to privacy, wherein Ms. Frederick acknowledged that the State Bar's disciplinary board was investigating Plaintiff and would order him to submit to a psychiatric evaluation.

103. Defendants have provided no factual basis to justify the request that Plaintiff submit to a psychiatric evaluation and forego or forfeit his constitutional right to privacy, as applied in this case.

104. Unless the requested injunctive relief is granted, the Plaintiff faces an imminent risk that his license to practice law will be suspended unless he consents to undergo an unwarranted and unconstitutional invasion of his

privacy in the form of a medical examination by a physician of the Defendants' choosing.

105. The Plaintiff is entitled to temporary injunctive relief to enjoin and restrain the Defendants, and all those acting in concert with them, from the continued violation of his protected privacy rights under the First, Ninth and Fourteenth Amendment of the United States Constitution.

106. In addition, the Plaintiff requests that this Court enter a declaratory judgment declaring the actions of the Defendants to be a violation of the Plaintiff's rights as guaranteed by the First, Ninth and Fourteenth Amendment of the United States Constitution.

107. As a further consequence of the Defendants' intentional actions to deprive the Plaintiff of his constitutional rights he has suffered, and continues to suffer humiliation, embarrassment, injury to reputation and other injuries, for which he is entitled to compensatory damages.

WHEREFORE, Plaintiff requests the following relief:

1.  That he be allowed to file this Verified Complaint, and that process issue to each of the named Defendants requiring them to respond within the time required under the Federal Rules of Civil Procedure;

2.  That the Court conduct a hearing for the purpose of determining whether the Plaintiff is entitled to a preliminary injunction under Rule

65(a) enjoining and restraining the Defendants, and all those acting in concert with them, from violating the Plaintiff's constitutional rights under the First, Fourth and Fourteenth Amendments of the United States Constitution to require that he undergo a medical, mental, psychiatric or psychological examination;

3. That at the final hearing in this matter the Court enter an order granting the Plaintiff a permanent injunction enjoining and restraining the Defendants, and all those acting in concert with them, from violating the Plaintiff's constitutional rights under the First, Fourth and Fourteenth Amendments of the United States Constitution to require that he undergo a medical, mental, psychiatric or psychological examination;

4. That this Court issue an order declaring the Defendants' actions in requiring the Plaintiff to consent to a medical, mental, psychiatric or psychological examination to be a violation of his constitutional rights as protected under the First, Ninth and Fourteenth Amendments of the United States Constitution;

5. That the Plaintiff be awarded compensatory damages in an amount to be determined by the jury, but in excess of $75,000.00;

6. That the Plaintiff be awarded nominal damages;

7.  That the Plaintiff be awarded costs, and reasonable attorney's fees as provided in 42 U.S.C. § 1988.

8.  That the Plaintiff have and recover such further relief as the Court determines is proper.

9.  That a jury of six be empaneled to hear and try all issues properly submitted to the trier of fact in this case.

Respectfully submitted,

**CRAIN LAW GROUP, PLLC**

By: */s/ Larry L. Crain*
Larry L. Crain, Esq.
Tenn. Supr. Crt. #9040
5214 Maryland Way, Suite 402
Brentwood, TN. 37027
Tel. 615-376-2600
Fax. 615-345-6009
Email: Larry@crainlaw.legal

*Counsel for the Plaintiff*
*(Pro Hac Vice Pending)*

*/s/ Ibrahim Reyes*
Ibrahim Reyes, Esquire
Florida Bar No. 581798
REYES LAWYERS, P.A.
236 Valencia Avenue
Coral Gables, FL 33134
Tel. 305-445-0011
Fax. 305-445-1181
Email: ireyes@reyeslawyers.com

*Counsel for the Plaintiff*
*(Pro Hac Vice Pending)*

/s/ L. Lin Wood, Jr.
L. Lin Wood, Jr., Esq.
GA Bar No. 774588
L. LIN WOOD, P.C.
P.O. Box 52584
Atlanta, GA 30355-0584
Tel. 404-891-1402
Fax. 404-506-9111
Email: lwood@linwoodlaw.com

*Counsel, Pro Se*

## VERIFICATION

I, L. Lin Wood, Jr., do hereby certify under penalty of perjury, pursuant to 28 U.S.C. §1746, under the laws of the United States of America that the information contained in the foregoing Verified Complaint is true and correct to the best of my information, knowledge and belief. Executed on this 23rd day of March, 2021.

/s/ L. Lin Wood, Jr.
L. Lin Wood, Jr.



# State Bar of Georgia

Office of the General Counsel

Paula J. Frederick
*General Counsel*

February 11, 2021

Mr. L. Lin Wood, Jr.
L. Lin Wood, PC
663 Greenview Avenue, NE
Atlanta, Georgia 30305

and

Mr. L. Lin Wood
L. Lin Wood, P.C.
P.O. Box 52584
Atlanta, GA 30355-0584

Dear Mr. Wood:

As you requested, I forwarded your email of January 29, 2021 with the embedded link to the members of the State Disciplinary Board. The Board did not reconsider its finding that you may be impaired or incapacitated to practice law. Pursuant to Bar Rule 4-104, the Board hereby requests that you consent to a confidential evaluation by a medical professional.

The Board has preliminarily identified a medical doctor who has agreed to perform the evaluation at the Bar's expense. Please respond to this letter advising me whether you will undergo the evaluation so that we can finalize arrangements with the doctor and give you contact information. I understand that you are now living in South Carolina, so if you prefer to see a doctor closer to your residence I will make those arrangements.

Bar Rule 4-104 provides that a lawyer's refusal to participate in an evaluation recommended under the rule may be grounds for further proceedings under Bar Rules. If you decline to cooperate I will convey that decision to the State Disciplinary Board so that they may decide how to proceed.

EXHIBIT A TO COMPLAINT - 1

Please let me have your response in writing within 10 days.

Sincerely,

Paula J. Frederick
General Counsel

PJF/dmg

**Paula J. Frederick**
**General Counsel**

February 19, 2021

Mr. L. Lin Wood
L. Lin Wood, PC
663 Greenview Avenue NE
Atlanta, GA 30305

     RE:  Grievance filed by the State Disciplinary Board, File No. 210010

Dear Mr. Wood:

     I am in receipt of your letter of February 18 and consent to the extensions of time that you requested.  We will expect your response to the Board's request for a medical examination and your challenges to the participation of Board members on or before March 15, 2021.  Your response to the Notice of Investigation in the Board-issued grievance (File No. 210010) is due on or before March 31.

     We have not received your signed Acknowledgement of Service of the Notice of Discipline.  I have attached another copy; please sign and return it so that I can forward it to the Board member who will handle the investigation.

                  Sincerely,

                  *Paula J. Frederick*

                  Paula J. Frederick

pjf

EXHIBIT C TO COMPLAINT - 1

Paula J. Frederick
**General Counsel**

February 19, 2021

Mr. L. Lin Wood
L. Lin Wood, PC
663 Greenview Avenue NE
Atlanta, GA 30305

     RE: Grievance filed by the State Disciplinary Board, File No. 210010

Dear Mr. Wood:

     I am in receipt of your letter of February 18 and consent to the extensions of time that you requested. We will expect your response to the Board's request for a medical examination and your challenges to the participation of Board members on or before March 15, 2021. Your response to the Notice of Investigation in the Board-issued grievance (File No. 210010) is due on or before March 31.

     We have not received your signed Acknowledgement of Service of the Notice of Discipline. I have attached another copy; please sign and return it so that I can forward it to the Board member who will handle the investigation.

     Sincerely,

     *Paula J. Frederick*

     Paula J. Frederick

pjf

EXHIBIT C TO COMPLAINT - 1

# L. LIN WOOD, P.C.
TRIAL LAWYERS

L. LIN WOOD
Direct Dial: 404-891-1406
lwood@linwoodlaw.com

March 2, 2021

## VIA E-MAIL & U.S. MAIL - CERTIFIED

Paula J. Frederick, Esq.
General Counsel
State Bar of Georgia
104 Marietta Street, NW Suite 100
Atlanta, Georgia 30303
paulaf@gabar.org

Re: *L. Lin Wood, Proposed Grievance File No. 210010*
*State Disciplinary Board ("Complaint")*

Dear Paula:

Thank you for your letter of February 24 granting an extension for my initial responses to the Complaint. I have spent the week discussing the Complaint with national counsel, some dealing with the rules of professional responsibility and some dealing with defamation and First Amendment law. I am meeting with various lawyers ("Proposed Counsel") and that selection should be finalized this week.

Without prejudice to the issues mentioned in my previous letter, however, Proposed Counsel are confused by the basis of the claims and have asked for clarification to the questions below.

### *Composition of the Disciplinary Board*

1.    As I noted in my letter of February 18, there are members of the Disciplinary Committee that have conflicts of interest in connection with this matter, having represented parties that have served to represent, for example, the Democrat Party in some of these or related election matters. Those conflicts taint the Complaint and any proceeding that might arise therefrom. We would ask that you clean your own house; as you might expect, we intend to challenge any actions of the Board based on input from or deliberations involving conflicted persons. Can you confirm that all members of your "Disciplinary Committee" have affirmed in writing that they have no interests that would color their judgment in these matters?

EXHIBIT D TO COMPLAINT - 1

Paula J. Frederick, Esq.
March 2, 2021
Page 2 of 5

---

Please note that it has come to our attention that comments from third parties to members of the Bar may be the source of some of the information in the Complaint. You have provided me with only 4 formal complaints, not the other information that the Bar and the members of the Disciplinary Board have received from those third parties, including Dean Cathy Cox of the Walter F. George School of Law at Mercer University, who seems to have a financial interest in punishing me, as well as a political stake in the matter. She may also be concerned reputationally about her involvement in past decisions that I have called into question. There may be other information you have received from persons with conflicts of interest, and complete disclosure of those communications is warranted. For example, the Board received pursuant to a subpoena information from Wade, Grunberg & Wilson, LLC, (WGW) that should be promptly provided to me as WGW is undisputedly a party with adverse interests to me in pending civil litigation. I expect the Board to be impartial and I expect that I will have the rights to question or impeach any similar sources of information provided to the Board – orally or in writing. As you know, I am entitled to full due process of law.

### *Jurisdiction*

2.      Your Complaint is confusing to Proposed Counsel as the source of authority for this investigation is not clear; that is making it difficult for my Proposed Counsel to even identify what their responsibilities are or might be. The Bar has jurisdiction to maintain and enforce the Rules of Professional Conduct (the "Rules"). [Bar Rule 4-101] Rule 4-201 limits the Board's authority to "investigate and discipline lawyers for violations of the Georgia Rules of Professional Conduct."

In a review of past disciplinary actions, it appears that the Bar has recognized that its jurisdiction is limited to conduct of a lawyer acting as a lawyer. The complaint form on the Bar's website specifically asks for this information: "If you would like to file a complaint against *your lawyer*, please download the following grievance form and instructions." (Emphasis added) Rule 8.5(b) provides as follows with respect to "***any***" exercise of the disciplinary authority" of the Bar (emphasis added):

In any exercise of the disciplinary authority of this jurisdiction, the rules of professional conduct to be applied shall be as follows:

1.  for conduct in connection with a matter pending before a tribunal, the rules of the jurisdiction in which the tribunal sits, unless the rules of the tribunal provide otherwise; and

2.  for any other conduct, the rules of the jurisdiction in which the lawyer or Domestic or Foreign Lawyer's conduct occurred, or, if the predominant effect

Paula J. Frederick, Esq.
March 2, 2021
Page 3 of 5

of the conduct is in a different jurisdiction, the rules of that jurisdiction shall be applied to the conduct. A lawyer or Domestic or Foreign Lawyer shall not be subject to discipline if the lawyer's or Domestic or Foreign Lawyer's conduct conforms to the rules of a jurisdiction in which the lawyer or Domestic or Foreign Lawyer reasonably believes the predominant effect of the lawyer or Domestic or Foreign Lawyer's conduct will occur.

The Comments to this Rule make it clear that there can be situations where the standards of conduct for lawyers in different jurisdictions may be subject to a conflicts of law analysis. But all such conflicts of law analyses relate to professional conduct in connection with acting as a lawyer.

The Rules of Professional Conduct proscribe certain conduct in dealing with others -- but only "as a lawyer" or "in representation of a client." No complaint cited was filed by a client, former client, opposing counsel in a matter, or a judicial officer. As to the four (4) grievance forms at issue, all four individuals acknowledge that they have had no contact with me – I have not interacted with any of them at all, much less in a professional capacity.

The Complaint does not specify which of the Rules have been violated in a professional setting. The Complaint attaches over 1600 pages of filings made in four cases (plus a local complaint); Proposed Counsel does not believe those pages are germane at all – none of them reflect any violation of the Rules in a professional capacity. Further, each of those cases was filed by other attorneys as counsel of record. Three of the four cases were filed in jurisdictions other than Georgia. As noted above, the conduct of the lawyers in those cases are governed by the laws in those jurisdictions. I have not taken any action that would merit even attaching those pages (over 23 megabytes) to the Complaint.

I was only "of counsel" in each of those cases or added for oral argument. I did not seek *pro hac vice* privileges in any of those cases so I was not counsel of record. I am not aware of any disciplinary complaints against any other lawyer leading me to believe, as the facts will show, that the Bar has singled me out for this Complaint based on public statements which, I have previously demonstrated, were based on affidavits provided to me and, in any event, political speech protected by the First Amendment and the state constitutions at issue.

If your actions are taken in connection with an action pending before a tribunal – including any of the four cases you have attached to the Complaint (all filed by other counsel of record), could you please clarify which case you are referencing, and what specified aspect of the case was a violation of the Rules?

Paula J. Frederick, Esq.
March 2, 2021
Page 4 of 5

_____

***Public and Private Statements***

3.      The second part of the Complaint cites various public statements and private statements, including tweets/social media posts.  I assume that the Bar is not asserting jurisdiction to prevent a lawyer from expressing political opinions, or making statements provided to him in sworn affidavits?

As noted above, I would not make a comment that I did not have a basis for believing was true, particularly if, as a defamation lawyer, I would be opening myself up to a challenge of defamation.  I have provided you with copies of the supporting documents that demonstrate the support for those statements, which I assume you at least have reviewed by now.  Please confirm that you received the flash drive that I sent with that information and the status of the Board's investigation into the information I provided in response to the 4 complaints filed against me by non-clients.

I have not made any statement to "incite" violence under any applicable precedent. If you believe otherwise, or if you believe I have made comments that are not otherwise protected as free speech, please identify which statements are at issue and how they violate the *Brandenburg* test as enunciated in *Brandenburg v. Ohio*, 395 U.S. 444 (1969).  It is not apparent to Proposed Counsel who have read the jumble of comments thrown together in the Complaint.  We reserve the right to challenge the authority of the Bar to limit the free speech rights of any lawyer, as set forth in the U.S. and state constitutions and otherwise.

As you know, while the lawyer may have "responsibilities" that are highlighted in the Preamble to the Rules, the lawyer has a "***duty***" (when necessary) to "challenge the rectitude of official action."  How an individual lawyer wants to carry that out is up to that individual.  Some have gone to extremes and when they violate the law, they have been punished; a few have subsequently been disciplined.  But the issue here is what public and private statements may be subject to "discipline" before a Disciplinary Board as an initial matter.  I reserve my rights to speak on political matters as I like and did not give up that right when I became a member of the Bar.  No lawyer did.

Protected speech may be inflammatory, and even challenge the legitimacy of the government – or an election.  But to hold that political speech cannot be zealously expressed – particularly as part of an important national conversation -- would be to muzzle a lawyer in his or her outrage over injustice or unlawful acts or unconstitutional acts by the government.  Please expect my Proposed Counsel to challenge the jurisdiction of the Committee over the political speech of lawyers -- no matter how aggressive it may appear to lawyers of the other political party or on the other side of the issue.  If you can identify ***any*** precedent to the contrary, please identify it.

Paula J. Frederick, Esq.
March 2, 2021
Page 5 of 5

4.     Another portion of your complaint (the WGW civil lawsuit) cites allegations in pending litigation. I have denied those allegations and they are before a court for decision as to their credibility. A mere statement made by a litigant in a complaint cannot be treated as true – even when contained in a verified complaint. My Proposed Counsel are confused as to how such statements may be relied upon as a basis for a disciplinary complaint, and whether there is any precedent for relying on such statements in a disciplinary proceeding. Any precedent for such treatment would be helpful.

### *Determination of Impairment*

5.     Finally, you have asked for a psychological examination, but that seems premature if there is no basis for your statements that I "appear[] to be impaired to practice law" So far, nothing in the Complaint has dealt in any way with my conduct in the practice of law. Proposed Counsel have asked if there is any specific case which serves as the basis for the Bar to challenge my competency to practice law or which justifies an allegation that I "appeared" impaired. Have you or the Bar identified any case in which a client or former client complained that my competency was impaired, if so, which case? Existing case law only includes arguments for such an examination only after such a hearing had been held and evidence had been presented regarding the attorney's substance abuse or mental incapacity – in all cases which affected his or her competency as a lawyer.

Rule 4-104 reviews are limited to specific and "appropriate" examinations that are tied to a "determination" by the "State Disciplinary Board". There has been no such determination; or, if there has, I was not invited to participate in any hearing prior to that determination. Proposed Counsel has requested copies of that determination, and the basis on which that determination was made. If it does not exist, we suggest that you postpone or rescind this action until such time as an appropriate hearing as to the basis for such a determination is presented and heard.

I will make a final decision on Proposed Counsel as soon as I can help them (and me) understand the basis for this "complaint."

With professional regards,

Very truly yours,

L. Lin Wood

# L. LIN WOOD, P.C.
## — TRIAL LAWYERS —

L. LIN WOOD
Direct Dial: (404) 891-1406
lwood@linwoodlaw.com

March 19, 2021

**VIA E-MAIL & U.S. MAIL - CERTIFIED**

*Without Prejudice - All Rights and Immunities Preserved*

Christian J. Steinmetz, III, Esq.
Gannam, Gnann & Steinmetz
425 E. President Street
Savannah, Georgia 31401
cjs@ggsattorneys.com

Re:   *L. Lin Wood, Jr.: Georgia State Bar Activities*
      *Request for Addressing Conflicts of Interest and*
      *Perceived Conflicts of Interest*

Dear Mr. Steinmetz:

Thank you for your letter of March 15, 2021. I will respond to this initial request:

> "At your earliest opportunity, please have your counsel for this matter provide written confirmation of representation and all contact information for further communication with me on this matter. If you are going to represent yourself in this proceeding, please confirm that to me in writing along with your preferred contact information."

I have no idea what I am going to do or who will represent me in this "matter" because I have no idea what is being alleged by the State Bar of Georgia (the "Bar") or the "State Disciplinary Board" in this matter, and despite my repeated requests to Ms. Frederick for clarification, I have not received any communication from her. I gather that your letter is a result of a lateral pass to you because Ms. Frederick has no idea how to answer my letters in this "shoot-from-the-hip" action by a few politically-motivated lawyers in charge of the Georgia Bar.

I would therefore respectfully ask that you or Ms. Frederick respond to the letters I have sent requesting (a) the factual and legal basis the Disciplinary Board's required "determination" that is a predicate for a request for a mental examination [Rule 4-104(b)], (b) what specific matters constituted the basis for such a determination, and (c) when the Disciplinary Board would open a hearing on the matter so that I could find the necessary counsel to ensure that due process in that proceeding. As noted below, the Rules appear to have been changed in the last few weeks, and it would help to know the timing of the conduct complained of, what Rules were in effect at that

EXHIBIT E TO COMPLAINT - 1

Christian J. Steinmetz, III, Esq.
March 19, 2021
Page 2

time, and whether those Rules apply or whether the Bar intends to apply new Rules retroactively. Does that seem reasonable?

When I receive that clarification, I will be in a better position to discuss the matter with the appropriate counsel or decide how to proceed. When I receive the requested clarification, I will be in a better position to know whether to hire a constitutional lawyer, a Bar ethics lawyer, or a torts lawyer.

I reiterate my reasonable request for an extension of time to respond to all matters before the Disciplinary Board on the date 15 business days after I receive the requested information set forth above and outlined in my previous correspondence with Ms. Frederick.

I have not yet decided on counsel for this Inquisition, awaiting a response from the State Bar of Georgia on this important, unanswered inquiry, and an opportunity to be heard before an impartial arbiter on the proposed "determination."

These matters were raised with Ms. Frederick on March 2 and again on March 13, when I received no response. As I referenced in my letters dated February 18 and again on March 2, despite my request for the basis for any determination under Rule 4-104(b), the Bar (or the Disciplinary Board, I am not sure which) [1], has not provided it – not even the "scintilla" of evidence I challenged Ms. Frederick to provide in my March 2 letter. I was not given any notice of a hearing on such determination, nor was I provided with any evidence that would have led to a hearing for such a determination. As things presently stand, the Bar has randomly demanded a mental examination without any determination that it is warranted, without any notice, without any hearing, and without any evidence. The members of the Bar – including you – work for the government and are obligated uphold the Constitution and especially the due process rights of those subjected to the Bar's disciplinary processes, not subject them to the Kafkaesque ordeal Ms. Frederick is presently orchestrating.

I have pointed out that the remaining charges in the Bar's 1677 page missive have nothing to do with the regulation of the practice of law by me, the sole area of the Bar's jurisdiction – at least as heretofore understood. If the Bar is exercising jurisdiction over conduct unrelated to the profession it seeks to regulate, it is exceeding its statutory authority -- those regulations should be left to the political or legislative process, rather than turning the Bar into an instrument for settling political grudges.

This inquiry is unprecedent in the history of the Georgia Bar, or, to my knowledge, any other Bar and must stop immediately. As I have pointed out, neither the Bar nor the "State Disciplinary Board" have the authority or jurisdiction to proceed. If you can identify the determination that has been made, when it was made, and how my due process rights were preserved, I will consult with appropriate advisors and determine how to respond.

---

[1] For ease of reference, is will collectively refer to the Disciplinary Board and the Bar and the Board of Governors as the "Bar", since they seem to be acting in collusion.

EXHIBIT E TO COMPLAINT - 2

Christian J. Steinmetz, III, Esq.
March 19, 2021
Page 3

But before the Bar proceeds any further with respect to any such determination, it is mandatory that any actor in this matter who has a conflict of interest that would limit his or her ability to act impartiality should immediately withdraw from any deliberations involving this matter. Any actions taken involving persons with a conflict of interest are irreparably tainted.

It seems clear that the Rules require us to act as lawyers without conflicts of interest that would prevent us from being impartial. That requires recusal in the event of conflicts of interest or an appearance of impropriety. Certainly any attorney acting in a judicial capacity should recuse himself or herself from making a determination of any sort that could further a personal interest. That is certainly the case here, where the Bar seems to be willing to act on its own as the prosecutor, judge, and jury. I reserve my rights to object to that embedded conflict at a future point.

Conflicts of interest are to be avoided in the legal system, and lawyers and judges who act without appropriate waivers for conflicts of interest undermine the profession of law. As lawyers, we are even to avoid the "appearance of impropriety" in carrying out our duties to our clients. In every other aspect of the legal, financial, and business activities in the United State and Georgia, there are strict rules in place to avoid conflicts of interest. Georgia law, for example, requires that directors of a Georgia corporation who have a conflict of interest with respect to a matter must "*play[] no part, directly or indirectly* in their deliberations or vote" in a board meeting or a meeting of a board committee. (See O.C.G.A. § 14-2-862. Emphasis supplied. Similar laws exist in the laws of every state corporate law in the nation.) In those situations, it is clear that the director must disclose the conflict of interest and not participate in the deliberations or the vote with respect to a matter in which the director has a conflict of interest. Of course, there are still many cases where directors have failed to disclose a conflict of interest or acted without regard to the conflict of interest and in those cases, the offending directors have been held financially liable for the harm they caused. We should expect lawyers and judges to act to standards that are at least as high as we demand from corporate directors.

In fact, attorneys should be held to higher standards in the conduct of their affairs, particularly when their affairs are part of an adjudicatory process. Judges are certainly held to a higher standard, and members of the board commissioned by the Bar to conduct any form of disciplinary proceeding should also conform to a standard of impartiality that is above reproach and recuse themselves accordingly when necessary to avoid the appearance of partiality or impropriety.

In this case, the Bar is so clearly lacking in jurisdiction and the charges are so clearly lacking in merit that the inference of political retaliation is overwhelming. This strong inference will make it difficult to determine which members of this disciplinary body are acting solely from professional duty and which are acting because they believe only their political side represents truth, justice, and the American way. We should not bring political discussions or debates into the judgement of an attorney's conduct.

Given the extreme measures that are being taken, I can only conclude that these actions are more akin to the Salem Witch Trials than an appropriate legal proceeding – no matter how it is couched. This is draining valuable resources of time and money for an unauthorized proceeding.

Christian J. Steinmetz, III, Esq.
March 19, 2021
Page 4

In the interest of due process and basic fairness, I request that any further action be predicated upon:

    A. An opportunity for notice and hearing with respect to any charges that might lead to a determination under Rule 4-104(b); and

    B. Confirmation of an appropriate process to identify conflicts of interest and an inquiry into the motivations of the persons who are acting on behalf of the Bar and the Disciplinary Board, including the right to challenge persons who have a conflict of interest.

In regard to the conflicts of interest, we are aware of the following potentials for a conflict of interest:

    (1) ***Political Activity***. The accusations against me – to the extent I understand them – primarily seem to arise from some penumbra of professionalism responsibilities around public statements I made on Twitter. Those statements were based on testimony of third parties (which have subsequently been confirmed in sworn affidavits) or statements of law. The sources of all those statements have agreed to testify to those statements under oath and in person.

    Those statements are highly political in nature. I have claimed my right under the First Amendment to report those statements. In this regard, I suggest you and your client study more carefully the U.S. Supreme Court's decision in *Garrison* v. *Louisiana*, 279 U.S. 64 (1964).

    In reviewing the profiles of the members of the Disciplinary Board, many have very active political profiles and some, in fact, have been opposing counsel in litigation that has been filed by my co-counsel or on my behalf by other attorneys (who are not being disciplined, I note, which I also find suspicious). These people cannot be impartial and must be recused.

    As a recent positive example, I note that Ms. Neera Tanden, who recently withdrew her nomination to lead the Office of Management and Budget, had written more tweets than President Trump in the last four years, including tweets that accused (a) the Majority Leader of the U.S. Senate of being a traitor and a spy for Russian interests ("Moscow Mitch"), (b) Senator Tom Cotton of being a "fraud," (c) the Republican Party of supporting an alleged child molester, and (d) Senator Ted Cruz of having less heart than a vampire. She deleted more than 1,000 of her tweets after last fall's election, so other unfounded and hurtful accusations made by her are not cataloged, but she has been characterized by both Republicans and Democrats as "vicious."

    Ms. Tanden was right to withdraw her nomination to serve as an impartial overseer of the nation's budget, but Ms. Tanden, but to my knowledge, she is

Christian J. Steinmetz, III, Esq.
March 19, 2021
Page 5

not being threatened with disciplinary action by any Bar. If this proceeding
breaks new ground for disciplining attorney conduct, perhaps we can further
examine her statements and the public statements of other lawyers to see
whether they have, for example, called for flouting the Rule of Law or public
order. I have not called for illegal activity, but other public figures, including
Vice President Harris, have recently called for rioting and destruction of private
property to continue.

Before proceeding further, I demand that the appropriate members of any Bar
committee or the Disciplinary Board recuse themselves if their political
statements or activities could call into question their impartiality in any matter
involving my actions or my public criticism of the constitutionality of actions
taken in the last election.

(2) *Conflicts Involving Mercer University*. I am obviously in a very public
conflicted position with respect to Mercer University ("Mercer") and Dean
Cathy Cox. As you may know, I entered into a naming rights agreement with
Mercer (at the request of Mercer) to name a moot court courtroom in my name
as an (at least previously, and I hope in the future) esteemed graduate of that
law school; in exchange, I agreed to donate $1,000,000 over a 10-year period.

Mercer has notified me that it intends to breach that agreement, which places
me in an adverse position to it and to other Mercer law school graduates. Dean
Cox has made public statements that I regard as defamatory and unfounded, and
I intend to ask her to withdraw those statements.

I demand the recusal of any members of any Bar committee or the Disciplinary
Board who are affiliated with, or graduates of, Mercer or its law school.

(3) *Conflicts with the New Rules from the Board of Governors.* On January 9,
2021, the Board of Governors of the State Bar amended the Rules to provide
for the receipt of complaints against any attorney in the State of Georgia based
solely on "ethical conduct," unmoored, it would seem, from any association
with the attorney's practice of law. That seems a frightening expansion of the
Bar's jurisdiction, and one without precedent in any other State, as far as we
can tell.

As noted above, I cannot tell whether we are acting in this "proceeding" under
the new rules, the rules that existed prior to the last Board of Governors
meeting, or some other iteration of the Georgia Rules.

I will argue in any event that this expansion of the Rules is an inappropriate use
of the Bar's jurisdiction as a State actor, as well as unlawful as *ex post facto*
punitive regulation (all of the conduct alleged occurred before the Board of
Governors proposed these changes on January 9, 2021). I now demand the

Christian J. Steinmetz, III, Esq.
March 19, 2021
Page 6

recusal of any members of any Bar committee or the Disciplinary Board who are on the Board of Governors of the Bar or who are affiliated with these Rule changes.

(4) **Lawyers Club of Atlanta**. Many members of the Bar committees involved and the Disciplinary Committee are members of the "Lawyers Club of Atlanta" which is, to my knowledge, mostly a social or networking club. Nonetheless, I have been told that I am being ejected from my membership in that Club. This action seems arbitrary and capricious, and I intend to fight the action before the members and in court if necessary.

I demand the recusal of any members of any Bar committee or the Disciplinary Board who are affiliated with the Lawyers Club of Atlanta.

(5) **Alpha Kappa Alpha**. It appears several members of the Disciplinary Committee are members of the Alpha Kappa Alpha Sorority, which appears to be more akin to an activist organization than a typical Greek fraternity. They have pledged support to this organization. Vice President Kamala Harris proudly claims her association with this sorority, and the organization issued a press release in which it called former President Trump a "racist." This organization seems to be an exclusionary organization itself and focused on members who are members of one race only.

I demand the recusal of any members of any Bar committee or the Disciplinary Board who are affiliated with the Alpha Kappa Alpha Sorority.

(6) **Associational and Financial Conflicts of Interest**. Finally, the Georgia Bar is made of a finite group of individuals, and many members of its Board of Governors and Bar committees solicit the support of attorneys throughout the state to campaign for their seats. Often, those business associations and friendships involve a significant portion of the professional income coming from the same political agencies and actors I have accused of illegal conduct, such as the Governor, the Lieutenant Governor, the Secretary of State, and the Deputy Secretary of State.

I demand the recusal of any members of any Bar committee or the Disciplinary Board who has significant associations with or receives significant financial income from political agencies and government officials in Georgia.

I recognize that we all have an obligation to defend the protections of the Rule of Law as part of our profession. Our Constitution and our laws are designed to protect the meek as well as the mighty. The law must be applied equally to all, even if we are required to advance causes that may be unpopular to the elites. Being a member of the Bar is not a popularity contest – we don't maintain our positions as lawyers by being popular. In fact, as you know, we have a duty to represent our clients without regard as to whether a position is "popular" or accepted.

Christian J. Steinmetz, III, Esq.
March 19, 2021
Page 7

I have been honest and transparent and have conducted myself in accordance with the Rules. If the Disciplinary Board wishes to also conduct itself in a professional and honest manner and afford me my right to due process of law, I will certainly have no objection to any questions that may be posed. As of the timing of your letter, Ms. Frederick had not answered any of my requests for clarification, and instead has ramped up the attacks on me with the retention of you as counsel. As any reasonable lawyer would understand from the foregoing, the Bar's actions and its basis for acting are a muddled mess, costing me to expend valuable resources, consult with numerous advisors, and damaging my reputation. Please see if you can arrange a better understanding of the Bar's actions hereto limit your requests in the future to matters that are appropriately within the jurisdiction of the Bar and are requested by persons without conflicts of interests or, as we say, a political agenda or an "ax to grind." I originally thought the Bar's conduct was unseemly; now I understand it is a threat to the practice of law and to the rights of any person who takes a politically unpopular position.

I will continue to await an answer to this letter and other letters I have sent to Ms. Frederick, which should be in your file. I expressly reserve all rights to assert further constitutional or legal defenses or challenges to the validity of these actions by the Board. I intend to vigorously defend myself, my license to practice law, and my reputation against these mischaracterizations and false accusations.

I look forward to your response.

Very truly yours,

L. Lin Wood

cc:     Paula J. Frederick, Esq.

EXHIBIT B

# L. LIN WOOD, P.C.
## ——— TRIAL LAWYERS ———

L. LIN WOOD
Direct Dial: 404-891-1406
lwood@linwoodlaw.com

March 2, 2021

## **VIA E-MAIL & U.S. MAIL - CERTIFIED**

Paula J. Frederick, Esq.
General Counsel
State Bar of Georgia
104 Marietta Street, NW Suite 100
Atlanta, Georgia 30303
paulaf@gabar.org

Re:     *L. Lin Wood, Proposed Grievance File No. 210010*
        *State Disciplinary Board ("Complaint")*

Dear Paula:

Thank you for your letter of February 24 granting an extension for my initial responses to the Complaint. I have spent the week discussing the Complaint with national counsel, some dealing with the rules of professional responsibility and some dealing with defamation and First Amendment law. I am meeting with various lawyers ("Proposed Counsel") and that selection should be finalized this week.

Without prejudice to the issues mentioned in my previous letter, however, Proposed Counsel are confused by the basis of the claims and have asked for clarification to the questions below.

### *Composition of the Disciplinary Board*

1.     As I noted in my letter of February 18, there are members of the Disciplinary Committee that have conflicts of interest in connection with this matter, having represented parties that have served to represent, for example, the Democrat Party in some of these or related election matters. Those conflicts taint the Complaint and any proceeding that might arise therefrom. We would ask that you clean your own house; as you might expect, we intend to challenge any actions of the Board based on input from or deliberations involving conflicted persons. Can you confirm that all members of your "Disciplinary Committee" have affirmed in writing that they have no interests that would color their judgment in these matters?

Paula J. Frederick, Esq.
March 2, 2021
Page 2 of 5

Please note that it has come to our attention that comments from third parties to members of the Bar may be the source of some of the information in the Complaint. You have provided me with only 4 formal complaints, not the other information that the Bar and the members of the Disciplinary Board have received from those third parties, including Dean Cathy Cox of the Walter F. George School of Law at Mercer University, who seems to have a financial interest in punishing me, as well as a political stake in the matter. She may also be concerned reputationally about her involvement in past decisions that I have called into question. There may be other information you have received from persons with conflicts of interest, and complete disclosure of those communications is warranted. For example, the Board received pursuant to a subpoena information from Wade, Grunberg & Wilson, LLC, (WGW) that should be promptly provided to me as WGW is undisputedly a party with adverse interests to me in pending civil litigation. I expect the Board to be impartial and I expect that I will have the rights to question or impeach any similar sources of information provided to the Board – orally or in writing. As you know, I am entitled to full due process of law.

***Jurisdiction***

2.      Your Complaint is confusing to Proposed Counsel as the source of authority for this investigation is not clear; that is making it difficult for my Proposed Counsel to even identify what their responsibilities are or might be. The Bar has jurisdiction to maintain and enforce the Rules of Professional Conduct (the "Rules"). [Bar Rule 4-101] Rule 4-201 limits the Board's authority to "investigate and discipline lawyers for violations of the Georgia Rules of Professional Conduct."

In a review of past disciplinary actions, it appears that the Bar has recognized that its jurisdiction is limited to conduct of a lawyer acting as a lawyer. The complaint form on the Bar's website specifically asks for this information: "If you would like to file a complaint against ***your lawyer***, please download the following grievance form and instructions." (Emphasis added) Rule 8.5(b) provides as follows with respect to "***any***" exercise of the disciplinary authority" of the Bar (emphasis added):

In any exercise of the disciplinary authority of this jurisdiction, the rules of professional conduct to be applied shall be as follows:

1.   for conduct in connection with a matter pending before a tribunal, the rules of the jurisdiction in which the tribunal sits, unless the rules of the tribunal provide otherwise; and

2.   for any other conduct, the rules of the jurisdiction in which the lawyer or Domestic or Foreign Lawyer's conduct occurred, or, if the predominant effect

Paula J. Frederick, Esq.
March 2, 2021
Page 3 of 5

_____

of the conduct is in a different jurisdiction, the rules of that jurisdiction shall
be applied to the conduct. A lawyer or Domestic or Foreign Lawyer shall not
be subject to discipline if the lawyer's or Domestic or Foreign Lawyer's
conduct conforms to the rules of a jurisdiction in which the lawyer or Domestic
or Foreign Lawyer reasonably believes the predominant effect of the lawyer or
Domestic or Foreign Lawyer's conduct will occur.

The Comments to this Rule make it clear that there can be situations where the
standards of conduct for lawyers in different jurisdictions may be subject to a conflicts of
law analysis. But all such conflicts of law analyses relate to professional conduct in
connection with acting as a lawyer.

The Rules of Professional Conduct proscribe certain conduct in dealing with others
-- but only "as a lawyer" or "in representation of a client." No complaint cited was filed by
a client, former client, opposing counsel in a matter, or a judicial officer. As to the four (4)
grievance forms at issue, all four individuals acknowledge that they have had no contact
with me – I have not interacted with any of them at all, much less in a professional capacity.

The Complaint does not specify which of the Rules have been violated in a
professional setting. The Complaint attaches over 1600 pages of filings made in four cases
(plus a local complaint); Proposed Counsel does not believe those pages are germane at all
– none of them reflect any violation of the Rules in a professional capacity. Further, each
of those cases was filed by other attorneys as counsel of record. Three of the four cases
were filed in jurisdictions other than Georgia. As noted above, the conduct of the lawyers
in those cases are governed by the laws in those jurisdictions. I have not taken any action
that would merit even attaching those pages (over 23 megabytes) to the Complaint.

I was only "of counsel" in each of those cases or added for oral argument. I did not
seek *pro hac vice* privileges in any of those cases so I was not counsel of record. I am not
aware of any disciplinary complaints against any other lawyer leading me to believe, as the
facts will show, that the Bar has singled me out for this Complaint based on public
statements which, I have previously demonstrated, were based on affidavits provided to
me and, in any event, political speech protected by the First Amendment and the state
constitutions at issue.

If your actions are taken in connection with an action pending before a tribunal –
including any of the four cases you have attached to the Complaint (all filed by other
counsel of record), could you please clarify which case you are referencing, and what
specified aspect of the case was a violation of the Rules?

Paula J. Frederick, Esq.
March 2, 2021
Page 4 of 5

*__Public and Private Statements__*

3.      The second part of the Complaint cites various public statements and private statements, including tweets/social media posts.  I assume that the Bar is not asserting jurisdiction to prevent a lawyer from expressing political opinions, or making statements provided to him in sworn affidavits?

As noted above, I would not make a comment that I did not have a basis for believing was true, particularly if, as a defamation lawyer, I would be opening myself up to a challenge of defamation.  I have provided you with copies of the supporting documents that demonstrate the support for those statements, which I assume you at least have reviewed by now.  Please confirm that you received the flash drive that I sent with that information and the status of the Board's investigation into the information I provided in response to the 4 complaints filed against me by non-clients.

I have not made any statement to "incite" violence under any applicable precedent.  If you believe otherwise, or if you believe I have made comments that are not otherwise protected as free speech, please identify which statements are at issue and how they violate the *Brandenburg* test as enunciated in *Brandenburg v. Ohio*, 395 U.S. 444 (1969).  It is not apparent to Proposed Counsel who have read the jumble of comments thrown together in the Complaint.  We reserve the right to challenge the authority of the Bar to limit the free speech rights of any lawyer, as set forth in the U.S. and state constitutions and otherwise.

As you know, while the lawyer may have "responsibilities" that are highlighted in the Preamble to the Rules, the lawyer has a "*__duty__*" (when necessary) to "challenge the rectitude of official action."  How an individual lawyer wants to carry that out is up to that individual.  Some have gone to extremes and when they violate the law, they have been punished; a few have subsequently been disciplined.  But the issue here is what public and private statements may be subject to "discipline" before a Disciplinary Board as an initial matter.  I reserve my rights to speak on political matters as I like and did not give up that right when I became a member of the Bar.  No lawyer did.

Protected speech may be inflammatory, and even challenge the legitimacy of the government – or an election.  But to hold that political speech cannot be zealously expressed – particularly as part of an important national conversation -- would be to muzzle a lawyer in his or her outrage over injustice or unlawful acts or unconstitutional acts by the government.  Please expect my Proposed Counsel to challenge the jurisdiction of the Committee over the political speech of lawyers -- no matter how aggressive it may appear to lawyers of the other political party or on the other side of the issue.  If you can identify *__any__* precedent to the contrary, please identify it.

Paula J. Frederick, Esq.
March 2, 2021
Page 5 of 5

———————

    4.      Another portion of your complaint (the WGW civil lawsuit) cites allegations in pending litigation. I have denied those allegations and they are before a court for decision as to their credibility. A mere statement made by a litigant in a complaint cannot be treated as true – even when contained in a verified complaint. My Proposed Counsel are confused as to how such statements may be relied upon as a basis for a disciplinary complaint, and whether there is any precedent for relying on such statements in a disciplinary proceeding. Any precedent for such treatment would be helpful.

### *Determination of Impairment*

    5.      Finally, you have asked for a psychological examination, but that seems premature if there is no basis for your statements that I "appear[] to be impaired to practice law" So far, nothing in the Complaint has dealt in any way with my conduct in the practice of law. Proposed Counsel have asked if there is any specific case which serves as the basis for the Bar to challenge my competency to practice law or which justifies an allegation that I "appeared" impaired. Have you or the Bar identified any case in which a client or former client complained that my competency was impaired, if so, which case? Existing case law only includes arguments for such an examination only after such a hearing had been held and evidence had been presented regarding the attorney's substance abuse or mental incapacity – in all cases which affected his or her competency as a lawyer.

    Rule 4-104 reviews are limited to specific and "appropriate" examinations that are tied to a "determination" by the "State Disciplinary Board". There has been no such determination; or, if there has, I was not invited to participate in any hearing prior to that determination. Proposed Counsel has requested copies of that determination, and the basis on which that determination was made. If it does not exist, we suggest that you postpone or rescind this action until such time as an appropriate hearing as to the basis for such a determination is presented and heard.

    I will make a final decision on Proposed Counsel as soon as I can help them (and me) understand the basis for this "complaint."

    With professional regards,

Very truly yours,

L. Lin Wood

EXHIBIT C

# L. LIN WOOD, P.C.
— TRIAL LAWYERS —

L. LIN WOOD
Direct Dial: (404) 891-1406
lwood@linwoodlaw.com

March 11, 2021

**VIA ELECTRONIC MAIL**

Paula J. Frederick, Esq.
General Counsel
State Bar of Georgia
104 Marietta Street, NW Suite 100
Atlanta, GA 30303
paulaf@gabar.org

　　　　RE:　　*L. Lin Wood, Proposed Grievance File No. 210010*
　　　　　　　　*State Disciplinary Board ("Complaint")*

Dear Paula:

　　By letter of March 2, I requested certain information from you and the State Disciplinary Board ("the Board") which I advised you was essential in order for me to finalize selection of counsel to appropriately represent my interests in connection with the above-described Proposed Grievance. To date, I have received no response from you or the Board.

　　I am entitled to full due process of law in this matter and as a fundamental right, I am entitled to the information requested in order to select competent counsel.

　　Would you please provide me with a fulsome response to my letter at your earliest convenience?

　　Since I have not as of this date heard from you, an additional extension of time of the existing dates is necessary so that I can finalize my decision on counsel and to afford my counsel a reasonable opportunity to understand the claims and respond accordingly. In that regard, I request an extension of the existing March 15 deadline to file objections and respond to the request for a mental health examination to, at a minimum, the date 15 business days after I receive the requested information. With respect to the response date to the Grievance Complaint, I request that the time be extended to, at a minimum, the date 30 business days after I receive the requested information (the present response date is March 31).

　　There is another issue which requires a longer extension of time beyond the time periods sought above. As you know, the Grievance filed against me is based in part on pending, unresolved, disputed, and unproven allegations in civil litigation filed by Wade, Grunberg & Wilson, LLC (WGW) against me and my professional corporation. Today, the Superior Court of Fulton County issued a 30-day stay of that case and further granted an extension of time for the filing of defensive pleadings through the date that is 30 days after the close of discovery (copy of

Ms. Paula J. Frederick
State Bar of Georgia
March 11, 2021
Page 2 of 4

Order attached). Discovery is only in its initial stages in that case and a full factual record must be developed to rule on the pending motion for partial summary judgment. There is also a pending motion to dismiss in that case that is ripe for ruling as well as a pending appeal in the Georgia Court of Appeals on issues relating to a non-disparagement agreement as well as a gag order imposed on me which I contend violates my Constitutional right of free speech. As I am sure you know, it is very rare for a court to impose a prior restraint on speech and on that basis, I am contending that the order at issue on appeal violates the First Amendment.

Furthermore, you and the Board issued a subpoena to the law firm representing WGW seeking all information upon which WGW based its allegations. In my letter of March 2, I requested that you and the Board provide me with the information you received pursuant to your subpoena. To date, I have not received the requested information.

The Board is attempting to force me to undergo a mental health exam and possibly discipline me (including a threat to revoke my law license) in part based on civil litigation that is still pending. The Board cannot force me to defend against such a claim when I am deprived of the right to fully litigate the WGW to a final judgment. The attempt to do so is a shocking deprivation of due process and offends all notions of fundamental fairness.

If the Board insists on going forward with the grievance based in part on the WGW litigation, I am entitled to a stay of the disciplinary proceedings until that litigation is finally resolved. I request that a stay be granted or, in the alternative, that the Board promptly withdraw all claims against me directly or indirectly related to the WGW litigation.

The grievance filed against me also references two (2) complaints I filed in Georgia. In the first case, I was the plaintiff and Georgia Attorney Ray S. Smith, III of the firm of Smith & Liss, LLC, represented me and prepared the pleadings. Please inform me as to whether the Board is pursuing disciplinary action against Mr. Smith as a failure to do so would raise potential equal protection violations. This issue can be avoided if the Board correctly drops all claims against me based on the filing of those 2 lawsuits as the Dissenting Opinion of Justice Clarence Thomas in Republican Party of Pennsylvania v. Degraffenreid, (592 U.S. ___ (2021) (Docket Nos. 20-542 and 20-574) requires. A copy of the dissenting opinion is enclosed and a simple comparative review of my Georgia complaints and Justice Thomas's opinion undisputedly establishes that the claims I filed had a valid basis in law and, in my opinion and the learned opinion of Justice Thomas, should have been resolved by the courts.

I would also ask that you provide me with copies of ALL correspondence, including emails, which have been received by you, the Board, and all members of the Board objecting to your actions in instituting this grievance action against me. My prospective counsel is entitled to review all such documents in order to be fully appraised of the background of the Board's actions and the evidence which you claim supports the Grievance, and the body of the evidence which does not support it.

Ms. Paula J. Frederick
State Bar of Georgia
March 11, 2021
Page 3 of 4

———————————

    I also refer you and the Board to the recent decision in <u>Crowe v. Oregon State Bar</u>, No. 19-35463 (9th Cir, 2021). Similar cases are pending in North Dakota, Louisiana, and Oklahoma. These cases raise very serious questions about the actions of the State Bar of Georgia in its efforts to discipline me related to political agendas. In fact, the cases raise serious concerns about the legitimacy of the State Bar. I assume you and the Board are familiar with these legal challenges to your authority. The State Bar may soon face a similar challenge.

    On January 9, 2021, Office of the General Counsel forwarded Proposed Rules Changes to the Board of Governors for consideration at its Midyear Meeting on January 9, 2021. This proposed rule change allowed grievance complaints to be considered if based on "credible information from any source" as opposed to the prior rule which limited consideration to grievances filed by clients. It appears that the Board of Governors changed the rules on January 9 to allow for consideration of grievance complaints filed by out of state non-clients. The 4 grievances upon which the Board is basing its grievance against me were filed on December 17 (Kurt), January 1 (Bellocchio), January 7 (Fine), and January 10 (Goldenberg). Please advise me if the Board is relying on this ex post facto change of the rule to rely on grievances filed prior to the date of the rule change. I also note that members of the Board of Governors also are members of the Disciplinary Committee who you propose will hear and decide this grievance.

    It also appears from the January 8, 2021 minutes of the Disciplinary Rules & Procedures Committee that the Proposed New Comment to Rule 1.1 "to emphasize the importance of wellness as a component of competence" was opposed by the Lawyer Assistance Program and the Attorney Wellness Committee. The minutes further reflect that Bar Counsel would be subsequently providing a report to the Committee. Please advise me of the status of that report.

    After I received your March 10 letter today, I checked with my administrative assistant about the Acknowledgement of Service. I did execute it and thought it had been returned to you, but Ms. Bennett could not locate the transmittal email. She will be forwarding the executed Acknowledgment to you by electronic mail today. I apologize for the mistake.

    I want to correct another mistake which has been recently brought to my attention. I previously told you that I had not been granted *pro hac vice* status in the Arizona election lawsuit filed by Sidney Powell. I was wrong, I was granted PHV privileges on December 4, a few days before the case was dismissed. However, I reiterate to you and the Board that I was not involved in the drafting or filing of that complaint. I agreed to be on the pleadings at the request of Ms. Powell in the event a trial lawyer was needed in the case as it progressed. I was generally familiar with the substantial evidence of election fraud that was developed by Ms. Powell and her investigative team prior to the filing of the Arizona complaint. The evidence I reviewed clearly justified the filing of that complaint.

    By this letter, I am placing the Board on notice that its actions against me constitute a tortuous interference with my business relationships. I have existing clients and co-counsel prepared to present evidence to that effect along with prospective clients. The Board's actions against me also violate my Constitutional rights of free speech and due process of law and seek

Ms. Paula J. Frederick
State Bar of Georgia
March 11, 2021
Page 4 of 4

_____

to deprive my clients and prospective clients of their Constitutional right to counsel of their choice.

Finally, please advise me of the status of the Board's review of the voluminous evidence of election fraud which I provided to you and the status of the investigation of the whistleblower's entire interview and claims which I also provided to you and which formed the factual basis for the personal opinions I published on social media with respect to Chief Justice John Roberts, former Vice President Mike Pence, and other former high ranking government officials.

I will look forward to promptly hearing from you on my requests for the extensions of time or stay of this proceeding.

With professional regards,

Sincerely,

L. Lin Wood

Enclosures

1

THOMAS, J., dissenting

# SUPREME COURT OF THE UNITED STATES

REPUBLICAN PARTY OF PENNSYLVANIA
20–542            *v.*
VERONICA DEGRAFFENREID, ACTING SECRETARY
OF PENNSYLVANIA, ET AL.

JAKE CORMAN, ET AL.
20–574            *v.*
PENNSYLVANIA DEMOCRATIC PARTY, ET AL.

ON PETITIONS FOR WRITS OF CERTIORARI TO THE SUPREME
COURT OF PENNSYLVANIA, MIDDLE DISTRICT

Nos. 20–542 and 20–574.   Decided February 22, 2021

The motions of Donald J. Trump for President, Inc. for
leave to intervene as petitioner are dismissed as moot. The
motions of Thomas J. Randolph, et al. for leave to intervene
as respondents are dismissed as moot. The motion of Hon-
est Elections Project for leave to file a brief as *amicus curiae*
in No. 20–542 is granted. The motion of White House
Watch Fund, et al. for leave to file a brief as *amici curiae* in
No. 20–574 is granted. The petitions for writs of certiorari
are denied.

JUSTICE THOMAS, dissenting from the denial of certiorari.

The Constitution gives to each state legislature authority
to determine the "Manner" of federal elections. Art. I, §4,
cl. 1; Art. II, §1, cl. 2. Yet both before and after the 2020
election, nonlegislative officials in various States took it
upon themselves to set the rules instead. As a result, we
received an unusually high number of petitions and emer-
gency applications contesting those changes. The petitions
here present a clear example. The Pennsylvania Legisla-
ture established an unambiguous deadline for receiving
mail-in ballots: 8 p.m. on election day. Dissatisfied, the
Pennsylvania Supreme Court extended that deadline by

three days.  The court also ordered officials to count ballots
received by the new deadline even if there was no evi-
dence—such as a postmark—that the ballots were mailed
by election day.  That decision to rewrite the rules seems to
have affected too few ballots to change the outcome of any
federal election.  But that may not be the case in the future.
These cases provide us with an ideal opportunity to address
just what authority nonlegislative officials have to set elec-
tion rules, and to do so well before the next election cycle.
The refusal to do so is inexplicable.

## I

Like most States, Pennsylvania has a long history of lim-
iting the use of mail-in ballots.  But in October 2019, the
Pennsylvania Legislature overhauled its election laws.  Rel-
evant here, it gave all voters the option of voting by mail,
and it extended the deadline for officials to receive mail bal-
lots by several days to 8 p.m. on election day.  2019 Pa. Leg.
Serv. Act 2019–77.  Then, in response to COVID–19, the
legislature again amended the law but decided not to ex-
tend the receipt deadline further.  See 2020 Pa. Leg. Serv.
Act 2020–12.

Displeased with that decision, the Pennsylvania Demo-
cratic Party sued in state court.  It argued that the court
could extend the deadline through a vague clause in the
State Constitution providing, in relevant part, that "[e]lec-
tions shall be free and equal."  Art. I, §5.  The Pennsylvania
Supreme Court agreed.  On September 17, it held that this
"free and equal" provision enabled the court to extend the
deadline three days to accommodate concerns about postal
delays.

Petitioners promptly moved for emergency relief, filing
an application for a stay on September 28.  That application
easily met our criteria for granting relief.  See *Hol-
lingsworth* v. *Perry*, 558 U. S. 183, 190 (2010) (*per curiam*).

THOMAS, J., dissenting

Not only did parties on both sides agree that the issue warranted certiorari, but there also was no question that petitioners faced irreparable harm. See *Maryland* v. *King*, 567 U. S. 1301, 1303 (2012) (ROBERTS, C. J., in chambers) ("'[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury'"). Petitioners further established a fair prospect of certiorari and reversal. For more than a century, this Court has recognized that the Constitution "operat[es] as a limitation upon the State in respect of any attempt to circumscribe the legislative power" to regulate federal elections. *McPherson* v. *Blacker*, 146 U. S. 1, 25 (1892). Because the Federal Constitution, not state constitutions, gives state legislatures authority to regulate federal elections, petitioners presented a strong argument that the Pennsylvania Supreme Court's decision violated the Constitution by overriding "the clearly expressed intent of the legislature." *Bush* v. *Gore*, 531 U. S. 98, 120 (2000) (Rehnquist, C. J., concurring). Despite petitioners' strong showing that they were entitled to relief, we divided 4–4 and thus failed to act. *Scarnati* v. *Boockvar, ante,* p. ___.

Four days later, petitioners filed the first of these petitions and moved to expedite consideration so the Court could decide the merits before election day. But by that time, election day was just over a week away. So we denied the motion to expedite even though the question was of "national importance" and there was a "strong likelihood that the State Supreme Court decision violates the Federal Constitution." *Republican Party of Pa.* v. *Boockvar, ante,* at 3 (statement of ALITO, J.).

## II

Now that the petitions are before us under the normal briefing schedule, I see no reason to avoid them. Indeed, the day after we denied petitioner's motion to expedite in No. 20–542, the case became even more worthy of review.

The Eighth Circuit split from the Pennsylvania Supreme
Court, granting a preliminary injunction against an at-
tempt by the Minnesota Secretary of State to extend the
legislature's deadline to receive ballots by seven days. *Car-
son* v. *Simon*, 978 F. 3d 1051, 1059–1060, 1062 (2020). This
divide on an issue of undisputed importance would justify
certiorari in almost any case. That these cases concern fed-
eral elections only further heightens the need for review.

### A

Elections are "of the most fundamental significance un-
der our constitutional structure." See *Illinois Bd. of Elec-
tions* v. *Socialist Workers Party*, 440 U. S. 173, 184 (1979).
Through them, we exercise self-government. But elections
enable self-governance only when they include processes
that "giv[e] citizens (including the losing candidates and
their supporters) confidence in the fairness of the election."
See *Democratic National Committee* v. *Wisconsin State Leg-
islature*, *ante*, at 3 (KAVANAUGH, J., concurring in denial of
application to vacate stay); accord, *Purcell* v. *Gonzalez*, 549
U. S. 1, 4 (2006) (*per curiam*) ("Confidence in the integrity
of our electoral processes is essential to the functioning of
our participatory democracy").

Unclear rules threaten to undermine this system. They
sow confusion and ultimately dampen confidence in the in-
tegrity and fairness of elections. To prevent confusion, we
have thus repeatedly—although not as consistently as we
should—blocked rule changes made by courts close to an
election. See *Purcell*, *supra*.[1]

---

[1] See also *Merrill* v. *People First of Ala.*, *ante*, p. ___ (*Merrill II*); *Andino*
v. *Middleton*, *ante*, p. ___; *Merrill* v. *People First of Ala.*, 591 U. S. ___
(2020) (*Merrill I*); *Republican National Committee* v. *Democratic Na-
tional Committee*, 589 U. S. ___ (2020) (*per curiam*); *Veasey* v. *Perry*, 574
U. S. 951 (2014); *North Carolina* v. *League of Women Voters*, 574 U. S.
927 (2014) (allowing enjoined provisions to remain in effect for the up-
coming election).

Thomas, J., dissenting

An election system lacks clear rules when, as here, different officials dispute who has authority to set or change those rules. This kind of dispute brews confusion because voters may not know which rules to follow. Even worse, with more than one system of rules in place, competing candidates might each declare victory under different sets of rules.

We are fortunate that the Pennsylvania Supreme Court's decision to change the receipt deadline for mail-in ballots does not appear to have changed the outcome in any federal election. This Court ordered the county boards to segregate ballots received later than the deadline set by the legislature. Order in *Republican Party of Pa.* v. *Boockvar*, No. 20A84. And none of the parties contend that those ballots made an outcome-determinative difference in any relevant federal election.

But we may not be so lucky in the future. Indeed, a separate decision by the Pennsylvania Supreme Court may have already altered an election result. A different petition argues that after election day the Pennsylvania Supreme Court nullified the legislative requirement that voters write the date on mail-in ballots. See Pet. for Cert., O. T. 2020, No. 20–845. According to public reports, one candidate for a state senate seat claimed victory under what she contended was the legislative rule that dates must be included on the ballots. A federal court noted that this candidate would win by 93 votes under that rule. *Ziccarelli* v. *Allegheny Cty. Bd. of Elections*, 2021 WL 101683, *1 (WD Pa., Jan. 12, 2021). A second candidate claimed victory under the contrary rule announced by the Pennsylvania Supreme Court. He was seated.

That is not a prescription for confidence. Changing the rules in the middle of the game is bad enough. Such rule changes by officials who may lack authority to do so is even worse. When those changes alter election results, they can severely damage the electoral system on which our self-

governance so heavily depends. If state officials have the authority they have claimed, we need to make it clear. If not, we need to put an end to this practice now before the consequences become catastrophic.

### B

At first blush, it may seem reasonable to address this question when it next arises. After all, the 2020 election is now over, and the Pennsylvania Supreme Court's decision was not outcome determinative for any federal election.

But whatever force that argument has in other contexts, it fails in the context of elections. For at least three reasons, the Judiciary is ill equipped to address problems—including those caused by improper rule changes—through post-election litigation.

First, postelection litigation is truncated by firm timelines. That is especially true for Presidential elections, which are governed by the Electoral Count Act, passed in 1887. That Act sets federal elections for the day after the first Monday in November—last year, November 3. See 3 U. S. C. §1. Under a statutory safe-harbor provision, a State has about five weeks to address all disputes and make a "final determination" of electors if it wants that decision to "be conclusive." §5. Last year's deadline fell on December 8, and the Electoral College voted just six days later. §7. Five to six weeks for judicial testing is difficult enough for straightforward cases. For factually complex cases, compressing discovery, testimony, and appeals into this timeline is virtually impossible.

Second, this timeframe imposes especially daunting constraints when combined with the expanded use of mail-in ballots. Voting by mail was traditionally limited to voters who had defined, well-documented reasons to be absent. See, *e.g.,* Moreton, Note, Voting by Mail, 58 S. Cal. L. Rev. 1261, 1261–1264 (1985). In recent years, however, many States have become more permissive, a trend greatly accelerated by COVID–19. In Pennsylvania, for example, mail-

in ballots composed just 4% of ballots cast in 2018. But the
legislature dramatically expanded the process in 2019,
thereby increasing the mail-in ballots cast in 2020 to 38%.

This expansion impedes postelection judicial review be-
cause litigation about mail-in ballots is substantially more
complicated. For one thing, as election administrators have
long agreed, the risk of fraud is "vastly more prevalent" for
mail-in ballots. Liptak, Error and Fraud at Issue as Absen-
tee Voting Rises, N. Y. Times, Oct. 6, 2012. The reason is
simple: "[A]bsentee voting replaces the oversight that exists
at polling places with something akin to an honor system."
*Ibid.* Heather Gerken, now dean of Yale Law School, ex-
plained in the same New York Times article that absentee
voting allows for "simpler and more effective alternatives to
commit fraud" on a larger scale, such as stealing absentee
ballots or stuffing a ballot box, which explains "'why all the
evidence of stolen elections involves absentee ballots and
the like.'" *Ibid.* The same article states that "[v]oting by
mail is now common enough and problematic enough that
election experts say there have been multiple elections in
which no one can say with confidence which candidate was
the deserved winner." *Ibid.*

Pennsylvania knows this well. Even before widespread
absentee voting, a federal court had reversed the result of a
state senate election in Philadelphia after finding that the
supposedly prevailing candidate "conducted an illegal ab-
sentee ballot conspiracy and that the [election officials] cov-
ertly facilitated the scheme with the specific purpose of en-
suring a victory for" that candidate. *Marks* v. *Stinson*, 1994
WL 146113, *29, *36 (ED Pa., Apr. 26, 1994). This problem
is not unique to Pennsylvania, and it has not gone away.
Two years ago, a congressional election in North Carolina
was thrown out in the face of evidence of tampering with
absentee ballots. Because fraud is more prevalent with
mail-in ballots, increased use of those ballots raises the
likelihood that courts will be asked to adjudicate questions

that go to the heart of election confidence.[2]

Fraud is not the only aspect of mail-in ballots that complicates postelection judicial review. Also relevant are the corresponding safeguards that States put in place to ameliorate that heightened risk of fraud. To balance the "strong interest" of ballot access with the "'compelling interest in preserving the integrity of [the] election process,'" *Purcell*, 549 U. S., at 4, many States have expanded mail-in ballots but sought to deter fraud—and create mechanisms to detect it—by requiring voters to return ballots in signed, dated secrecy envelopes. Some States also require witness or notary signatures. Tallying these ballots tends to be more labor intensive, involves a high degree of subjective judgment (*e.g.*, verifying signatures), and typically leads to a far higher rate of ballot challenges and rejections. Litigation over these ballots can require substantial discovery and labor-intensive fact review. In some cases, it might require sifting through hundreds of thousands or millions of ballots. It also may require subjective judgment calls about the validity of thousands of ballots. Judicial review in this situation is difficult enough even when the rules are clear and the number of challenged ballots small. Adding a dispute about who can set or change the rules greatly exacerbates the problem.

Third, and perhaps most significant, postelection litigation sometimes forces courts to make policy decisions that they have no business making. For example, when an official has improperly changed the rules, but voters have already relied on that change, courts must choose between

_____

[2] We are fortunate that many of the cases we have seen alleged only improper rule changes, not fraud. But that observation provides only small comfort. An election free from strong evidence of systemic fraud is not alone sufficient for election confidence. Also important is the assurance that fraud will not go undetected. Cf. *McCutcheon* v. *Federal Election Comm'n*, 572 U. S. 185, 191, 206–207 (2014) (plurality opinion).

potentially disenfranchising a subset of voters and enforcing the election provisions—such as receipt deadlines—that the legislature believes are necessary for election integrity. That occurred last year. After a court wrongly altered South Carolina's witness requirement for absentee ballots, this Court largely reinstated the original rule, but declined to apply it to ballots already cast. *Andino* v. *Middleton*, *ante*, p. ___. Settling rules well in advance of an election rather than relying on postelection litigation ensures that courts are not put in that untenable position.

In short, the postelection system of judicial review is at most suitable for garden-variety disputes. It generally cannot restore the state of affairs before an election. And it is often incapable of testing allegations of systemic maladministration, voter suppression, or fraud that go to the heart of public confidence in election results. That is obviously problematic for allegations backed by substantial evidence. But the same is true where allegations are incorrect. After all, "[c]onfidence in the integrity of our electoral process is essential to the functioning of our participatory democracy." *Purcell*, *supra*, at 4; cf. *McCutcheon* v. *Federal Election Comm'n*, 572 U. S. 185, 191, 206–207 (2014) (plurality opinion) (identifying a compelling interest in rooting out the mere "appearance of corruption" in the political process). An incorrect allegation, left to fester without a robust mechanism to test and disprove it, "drives honest citizens out of the democratic process and breeds distrust of our government." *Purcell*, *supra*, at 4.

## III

Because the judicial system is not well suited to address these kinds of questions in the short time period available immediately after an election, we ought to use available cases outside that truncated context to address these admittedly important questions. Here, we have the oppor-

tunity to do so almost two years before the next federal election cycle. Our refusal to do so by hearing these cases is befuddling. There is a clear split on an issue of such great importance that both sides previously asked us to grant certiorari. And there is no dispute that the claim is sufficiently meritorious to warrant review. By voting to grant emergency relief in October, four Justices made clear that they think petitioners are likely to prevail. Despite pressing for review in October, respondents now ask us not to grant certiorari because they think the cases are moot. That argument fails.

The issue presented is capable of repetition, yet evades review. This exception to mootness, which the Court routinely invokes in election cases, "applies where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Davis* v. *Federal Election Comm'n*, 554 U. S. 724, 735 (2008) (internal quotation marks omitted) (resolving a dispute from the 2006 election); see also *Anderson* v. *Celebrezze*, 460 U. S. 780, 784, and n. 3 (1983) (resolving a dispute from the 1980 election). Here, the Pennsylvania Supreme Court issued its decision about six weeks before the election, leaving little time for review in this Court. And there is a reasonable expectation that these petitioners—the State Republican Party and legislators—will again confront nonlegislative officials altering election rules. In fact, various petitions claim that no fewer than four other decisions of the Pennsylvania Supreme Court implicate the same issue.[3] Future cases will arise as lower state courts apply those precedents to justify intervening in elections and changing the rules.

--------

[3] Pet. for Cert., O. T. 2020, No. 20–845 (challenging three decisions); Pet. for Cert., O. T. 2020, No. 20–810 (challenging one decision).

Cite as:  592 U. S. ____ (2021)                    11

THOMAS, J., dissenting

\*      \*      \*

One wonders what this Court waits for.  We failed to settle this dispute before the election, and thus provide clear rules.  Now we again fail to provide clear rules for future elections.  The decision to leave election law hidden beneath a shroud of doubt is baffling.  By doing nothing, we invite further confusion and erosion of voter confidence.  Our fellow citizens deserve better and expect more of us.  I respectfully dissent.

Cite as: 592 U. S. ____ (2021)          1

ALITO, J., dissenting

# SUPREME COURT OF THE UNITED STATES

REPUBLICAN PARTY OF PENNSYLVANIA
20–542                              *v.*
VERONICA DEGRAFFENREID, ACTING SECRETARY
OF PENNSYLVANIA, ET AL.


JAKE CORMAN, ET AL.
20–574                              *v.*
PENNSYLVANIA DEMOCRATIC PARTY, ET AL.

ON PETITIONS FOR WRITS OF CERTIORARI TO THE SUPREME
COURT OF PENNSYLVANIA, MIDDLE DISTRICT

Nos. 20–542 and 20–574.   Decided February 22, 2021

JUSTICE ALITO, with whom JUSTICE GORSUCH joins, dissenting from the denial of certiorari.

I agree with JUSTICE THOMAS that we should grant review in these cases. They present an important and recurring constitutional question: whether the Elections or Electors Clauses of the United States Constitution, Art. I, §4, cl. 1; Art. II, §1, cl. 2, are violated when a state court holds that a state constitutional provision overrides a state statute governing the manner in which a federal election is to be conducted. That question has divided the lower courts,* and our review at this time would be greatly beneficial.

In the cases now before us, a statute enacted by the Pennsylvania Legislature unequivocally requires that mailed ballots be received by 8 p.m. on election day. Pa. Stat. Ann., Tit. 25, §§3146.6(c), 3150.16(c) (Purdon 2020). Nevertheless, the Pennsylvania Supreme Court, citing a provision of the State Constitution mandating that elections "be free and equal," Art. I, §5, altered that deadline and ordered

————————
*See *Pennsylvania Democratic Party* v. *Boockvar*, ___ Pa. ___, ___–___, 238 A. 3d 345, 369–372 (2020); *Carson* v. *Simon*, 978 F. 3d 1051, 1059–1060 (CA8 2020).

that mailed ballots be counted if received up to three days
*after* the election, *Pennsylvania Democratic Party* v. *Boock-
var*, ___ Pa. ___, ___–___, 238 A. 3d 345, 362, 371–372
(2020). *Both the state Republican and Democratic parties
urged us to grant review and decide this question before the
2020 election.* See Application for Stay in *Republican Party
of Pennsylvania* v. *Boockvar*, No. 20A54, pp. 2–3; Demo-
cratic Party of Pennsylvania Response to Application for
Stay in No. 20A54, pp. 8–9. But the Court, by an evenly
divided vote, refused to do so. Nos. 20A53 and 20A54, *ante*,
p. ___ (THOMAS, ALITO, GORSUCH, and KAVANAUGH, JJ.,
noting dissents). That unfortunate decision virtually en-
sured that this important question could not be decided be-
fore the election. See No. 20–542, *ante*, p. ___ (statement of
ALITO, J., joined by THOMAS and GORSUCH, JJ.).

Now, the election is over, and there is no reason for refus-
ing to decide the important question that these cases pose.
"The provisions of the Federal Constitution conferring on
state legislatures, not state courts, the authority to make
rules governing federal elections would be meaningless if a
state court could override the rules adopted by the legisla-
ture simply by claiming that a state constitutional provi-
sion gave the courts the authority to make whatever rules
it thought appropriate for the conduct of a fair election."
*Ante*, at 3; see also *Bush* v. *Palm Beach County Canvassing
Bd.*, 531 U. S. 70, 76 (2000) (*per curiam*). A decision in
these cases would not have any implications regarding the
2020 election. (Because Pennsylvania election officials
were ordered to separate mailed ballots received after the
statutory deadline, see *Republican Party of Pa.* v. *Boockvar*,
No. 20A84, *ante*, p. ___, we know that the State Supreme
Court's decision had no effect on the outcome of any election
for federal office in Pennsylvania.) But a decision would
provide invaluable guidance for future elections.

Some respondents contend that the completion of the
2020 election rendered these cases moot and that they do

ALITO, J., dissenting

not fall within the mootness exception for cases that present questions that are "capable of repetition" but would otherwise evade review. See, *e.g.*, *Davis* v. *Federal Election Comm'n*, 554 U. S. 724, 735–736 (2008). They argue that the Pennsylvania Supreme Court's decision "arose from an extraordinary and unprecedented confluence of circumstances"—specifically, the COVID–19 pandemic, an increase in mail-in voting, and Postal Service delays—and that such a perfect storm is not likely to recur. Brief in Opposition for Boockvar in No. 20–542, pp. 1, 9; see also Brief in Opposition for Pennsylvania Democratic Party in Nos. 20–542 and 20–574, p. 12.

That argument fails for three reasons. First, it does not acknowledge the breadth of the Pennsylvania Supreme Court's decision. That decision claims that a state constitutional provision guaranteeing "free and equal" elections gives the Pennsylvania courts the authority to override even very specific and unambiguous rules adopted by the legislature for the conduct of federal elections. See App. to Pet. for Cert. 47a (relying on the court's "broad authority to craft meaningful remedies when required" (internal quotation marks omitted)). That issue is surely capable of repetition in future elections. Indeed, it would be surprising if parties who are unhappy with the legislature's rules do not invoke this decision and ask the state courts to substitute rules that they find more advantageous.

Second, the suggestion that we are unlikely to see a recurrence of the exact circumstances we saw this fall misunderstands the applicable legal standard. In order for a question to be capable of repetition, it is not necessary to predict that history will repeat itself at a very high level of specificity. See *Federal Election Comm'n* v. *Wisconsin Right to Life, Inc.*, 551 U. S. 449, 463 (2007).

Third, it is highly speculative to forecast that the Pennsylvania Supreme Court will not find that conditions at the time of a future federal election are materially similar to

those last fall. The primary election for Pennsylvania congressional candidates is scheduled to occur in 15 months, and the rules for the conduct of elections should be established well in advance of the day of an election. We may hope that by next spring the pandemic will no longer affect daily life, but that is uncertain. In addition, the state court's decision was not based solely on the pandemic but was also grounded in part on broader concerns about the operation of the Postal Service, App. to Pet. for Cert. 34a–35a, 47a, and concerns of this nature may persist or resurface. As voting by mail becomes more common and more popular, the volume of mailed ballots may continue to increase and thus pose delivery problems similar to those anticipated in 2020.

For these reasons, the cases now before us are not moot. There is a "reasonable expectation" that the parties will face the same question in the future, see *Wisconsin Right to Life*, *Inc.*, 551 U. S., at 463, and that the question will evade future pre-election review, just as it did in these cases.

These cases call out for review, and I respectfully dissent from the Court's decision to deny certiorari.

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| NICOLE WADE; JONATHAN GRUNBERG; TAYLOR WILSON; WADE, GRUNBERG & WILSON, LLC; | ) ) ) ) |
| Plaintiffs, | ) ) Civil Action No. |
| v. | ) 2020-CV-339937 ) |
| L. LIN WOOD and L. LIN WOOD, P.C., | ) ) |
| Defendants. | ) ) ) |

## ORDER GRANTING DEFENDANTS' EMERGENCY MOTION TO STAY

This matter is before the Court on the Emergency Motion for Stay (the "Stay Motion") filed by Defendants L. Lin Wood and L. Lin Wood, P.C. Having reviewed the Stay Motion, and being otherwise fully advised on this matter, and finding good cause shown, the Court GRANTS the Stay Motion.

Accordingly, it is hereby ORDERED AND ADJUDGED that all proceedings, deadlines, and hearings in this action are STAYED for a period of 30 days. It is further ORDERED AND ADJUDGED that the deadline for Defendants to file their opposition papers to Plaintiffs' Motion for Partial Summary Judgement shall be extended through the date that is 30 days after the close of discovery.

SO ORDERED this 11th day of March, 2021.

Belinda E Edwards

Hon. Belinda E. Edwards, Judge
Fulton Superior Court

EXHIBIT D

# L. LIN WOOD, P.C.
## TRIAL LAWYERS

L. LIN WOOD
Direct Dial: (404) 891-1406
lwood@linwoodlaw.com

March 19, 2021

**VIA E-MAIL & U.S. MAIL - CERTIFIED**

*Without Prejudice - All Rights and Immunities Preserved*

Christian J. Steinmetz, III, Esq.
Gannam, Gnann & Steinmetz
425 E. President Street
Savannah, Georgia 31401
cjs@ggsattorneys.com

Re:     *L. Lin Wood, Jr.: Georgia State Bar Activities
        Request for Addressing Conflicts of Interest and
        Perceived Conflicts of Interest*

Dear Mr. Steinmetz:

Thank you for your letter of March 15, 2021. I will respond to this initial request:

> "At your earliest opportunity, please have your counsel for this matter
> provide written confirmation of representation and all contact information
> for further communication with me on this matter. If you are going to
> represent yourself in this proceeding, please confirm that to me in writing
> along with your preferred contact information."

I have no idea what I am going to do or who will represent me in this "matter" because I have no idea what is being alleged by the State Bar of Georgia (the "Bar") or the "State Disciplinary Board" in this matter, and despite my repeated requests to Ms. Frederick for clarification, I have not received any communication from her. I gather that your letter is a result of a lateral pass to you because Ms. Frederick has no idea how to answer my letters in this "shoot-from-the-hip" action by a few politically-motivated lawyers in charge of the Georgia Bar.

I would therefore respectfully ask that you or Ms. Frederick respond to the letters I have sent requesting (a) the factual and legal basis the Disciplinary Board's required "determination" that is a predicate for a request for a mental examination [Rule 4-104(b)], (b) what specific matters constituted the basis for such a determination, and (c) when the Disciplinary Board would open a hearing on the matter so that I could find the necessary counsel to ensure that due process in that proceeding. As noted below, the Rules appear to have been changed in the last few weeks, and it would help to know the timing of the conduct complained of, what Rules were in effect at that

Christian J. Steinmetz, III, Esq.
March 19, 2021
Page 2

time, and whether those Rules apply or whether the Bar intends to apply new Rules retroactively. Does that seem reasonable?

When I receive that clarification, I will be in a better position to discuss the matter with the appropriate counsel or decide how to proceed. When I receive the requested clarification, I will be in a better position to know whether to hire a constitutional lawyer, a Bar ethics lawyer, or a torts lawyer.

I reiterate my reasonable request for an extension of time to respond to all matters before the Disciplinary Board on the date 15 business days after I receive the requested information set forth above and outlined in my previous correspondence with Ms. Frederick.

I have not yet decided on counsel for this Inquisition, awaiting a response from the State Bar of Georgia on this important, unanswered inquiry, and an opportunity to be heard before an impartial arbiter on the proposed "determination."

These matters were raised with Ms. Frederick on March 2 and again on March 13, when I received no response. As I referenced in my letters dated February 18 and again on March 2, despite my request for the basis for any determination under Rule 4-104(b), the Bar (or the Disciplinary Board, I am not sure which)[1], has not provided it – not even the "scintilla" of evidence I challenged Ms. Frederick to provide in my March 2 letter. I was not given any notice of a hearing on such determination, nor was I provided with any evidence that would have led to a hearing for such a determination. As things presently stand, the Bar has randomly demanded a mental examination without any determination that it is warranted, without any notice, without any hearing, and without any evidence. The members of the Bar – including you – work for the government and are obligated uphold the Constitution and especially the due process rights of those subjected to the Bar's disciplinary processes, not subject them to the Kafkaesque ordeal Ms. Frederick is presently orchestrating.

I have pointed out that the remaining charges in the Bar's 1677 page missive have nothing to do with the regulation of the practice of law by me, the sole area of the Bar's jurisdiction – at least as heretofore understood. If the Bar is exercising jurisdiction over conduct unrelated to the profession it seeks to regulate, it is exceeding its statutory authority -- those regulations should be left to the political or legislative process, rather than turning the Bar into an instrument for settling political grudges.

This inquiry is unprecedent in the history of the Georgia Bar, or, to my knowledge, any other Bar and must stop immediately. As I have pointed out, neither the Bar nor the "State Disciplinary Board" have the authority or jurisdiction to proceed. If you can identify the determination that has been made, when it was made, and how my due process rights were preserved, I will consult with appropriate advisors and determine how to respond.

---

[1] For ease of reference, is will collectively refer to the Disciplinary Board and the Bar and the Board of Governors as the "Bar", since they seem to be acting in collusion.

Christian J. Steinmetz, III, Esq.
March 19, 2021
Page 3

But before the Bar proceeds any further with respect to any such determination, it is mandatory that any actor in this matter who has a conflict of interest that would limit his or her ability to act impartiality should immediately withdraw from any deliberations involving this matter. Any actions taken involving persons with a conflict of interest are irreparably tainted.

It seems clear that the Rules require us to act as lawyers without conflicts of interest that would prevent us from being impartial. That requires recusal in the event of conflicts of interest or an appearance of impropriety. Certainly any attorney acting in a judicial capacity should recuse himself or herself from making a determination of any sort that could further a personal interest. That is certainly the case here, where the Bar seems to be willing to act on its own as the prosecutor, judge, and jury. I reserve my rights to object to that embedded conflict at a future point.

Conflicts of interest are to be avoided in the legal system, and lawyers and judges who act without appropriate waivers for conflicts of interest undermine the profession of law. As lawyers, we are even to avoid the "appearance of impropriety" in carrying out our duties to our clients. In every other aspect of the legal, financial, and business activities in the United State and Georgia, there are strict rules in place to avoid conflicts of interest. Georgia law, for example, requires that directors of a Georgia corporation who have a conflict of interest with respect to a matter must "*play[] no part, directly or indirectly* in their deliberations or vote" in a board meeting or a meeting of a board committee. (See O.C.G.A. § 14-2-862. Emphasis supplied. Similar laws exist in the laws of every state corporate law in the nation.) In those situations, it is clear that the director must disclose the conflict of interest and not participate in the deliberations or the vote with respect to a matter in which the director has a conflict of interest. Of course, there are still many cases where directors have failed to disclose a conflict of interest or acted without regard to the conflict of interest and in those cases, the offending directors have been held financially liable for the harm they caused. We should expect lawyers and judges to act to standards that are at least as high as we demand from corporate directors.

In fact, attorneys should be held to higher standards in the conduct of their affairs, particularly when their affairs are part of an adjudicatory process. Judges are certainly held to a higher standard, and members of the board commissioned by the Bar to conduct any form of disciplinary proceeding should also conform to a standard of impartiality that is above reproach and recuse themselves accordingly when necessary to avoid the appearance of partiality or impropriety.

In this case, the Bar is so clearly lacking in jurisdiction and the charges are so clearly lacking in merit that the inference of political retaliation is overwhelming. This strong inference will make it difficult to determine which members of this disciplinary body are acting solely from professional duty and which are acting because they believe only their political side represents truth, justice, and the American way. We should not bring political discussions or debates into the judgement of an attorney's conduct.

Given the extreme measures that are being taken, I can only conclude that these actions are more akin to the Salem Witch Trials than an appropriate legal proceeding – no matter how it is couched. This is draining valuable resources of time and money for an unauthorized proceeding.

Christian J. Steinmetz, III, Esq.
March 19, 2021
Page 4

In the interest of due process and basic fairness, I request that any further action be predicated upon:

A. An opportunity for notice and hearing with respect to any charges that might lead to a determination under Rule 4-104(b); and

B. Confirmation of an appropriate process to identify conflicts of interest and an inquiry into the motivations of the persons who are acting on behalf of the Bar and the Disciplinary Board, including the right to challenge persons who have a conflict of interest.

In regard to the conflicts of interest, we are aware of the following potentials for a conflict of interest:

(1) *Political Activity*. The accusations against me – to the extent I understand them – primarily seem to arise from some penumbra of professionalism responsibilities around public statements I made on Twitter. Those statements were based on testimony of third parties (which have subsequently been confirmed in sworn affidavits) or statements of law. The sources of all those statements have agreed to testify to those statements under oath and in person.

Those statements are highly political in nature. I have claimed my right under the First Amendment to report those statements. In this regard, I suggest you and your client study more carefully the U.S. Supreme Court's decision in *Garrison* v. *Louisiana*, 279 U.S. 64 (1964).

In reviewing the profiles of the members of the Disciplinary Board, many have very active political profiles and some, in fact, have been opposing counsel in litigation that has been filed by my co-counsel or on my behalf by other attorneys (who are not being disciplined, I note, which I also find suspicious). These people cannot be impartial and must be recused.

As a recent positive example, I note that Ms. Neera Tanden, who recently withdrew her nomination to lead the Office of Management and Budget, had written more tweets than President Trump in the last four years, including tweets that accused (a) the Majority Leader of the U.S. Senate of being a traitor and a spy for Russian interests ("Moscow Mitch"), (b) Senator Tom Cotton of being a "fraud," (c) the Republican Party of supporting an alleged child molester, and (d) Senator Ted Cruz of having less heart than a vampire. She deleted more than 1,000 of her tweets after last fall's election, so other unfounded and hurtful accusations made by her are not cataloged, but she has been characterized by both Republicans and Democrats as "vicious."

Ms. Tanden was right to withdraw her nomination to serve as an impartial overseer of the nation's budget, but Ms. Tanden, but to my knowledge, she is

Christian J. Steinmetz, III, Esq.
March 19, 2021
Page 5

not being threatened with disciplinary action by any Bar. If this proceeding breaks new ground for disciplining attorney conduct, perhaps we can further examine her statements and the public statements of other lawyers to see whether they have, for example, called for flouting the Rule of Law or public order. I have not called for illegal activity, but other public figures, including Vice President Harris, have recently called for rioting and destruction of private property to continue.

Before proceeding further, I demand that the appropriate members of any Bar committee or the Disciplinary Board recuse themselves if their political statements or activities could call into question their impartiality in any matter involving my actions or my public criticism of the constitutionality of actions taken in the last election.

(2) *Conflicts Involving Mercer University*. I am obviously in a very public conflicted position with respect to Mercer University ("Mercer") and Dean Cathy Cox. As you may know, I entered into a naming rights agreement with Mercer (at the request of Mercer) to name a moot court courtroom in my name as an (at least previously, and I hope in the future) esteemed graduate of that law school; in exchange, I agreed to donate $1,000,000 over a 10-year period.

Mercer has notified me that it intends to breach that agreement, which places me in an adverse position to it and to other Mercer law school graduates. Dean Cox has made public statements that I regard as defamatory and unfounded, and I intend to ask her to withdraw those statements.

I demand the recusal of any members of any Bar committee or the Disciplinary Board who are affiliated with, or graduates of, Mercer or its law school.

(3) *Conflicts with the New Rules from the Board of Governors.* On January 9, 2021, the Board of Governors of the State Bar amended the Rules to provide for the receipt of complaints against any attorney in the State of Georgia based solely on "ethical conduct," unmoored, it would seem, from any association with the attorney's practice of law. That seems a frightening expansion of the Bar's jurisdiction, and one without precedent in any other State, as far as we can tell.

As noted above, I cannot tell whether we are acting in this "proceeding" under the new rules, the rules that existed prior to the last Board of Governors meeting, or some other iteration of the Georgia Rules.

I will argue in any event that this expansion of the Rules is an inappropriate use of the Bar's jurisdiction as a State actor, as well as unlawful as *ex post facto* punitive regulation (all of the conduct alleged occurred before the Board of Governors proposed these changes on January 9, 2021). I now demand the

Christian J. Steinmetz, III, Esq.
March 19, 2021
Page 6

> recusal of any members of any Bar committee or the Disciplinary Board who are on the Board of Governors of the Bar or who are affiliated with these Rule changes.

> (4) **_Lawyers Club of Atlanta_**. Many members of the Bar committees involved and the Disciplinary Committee are members of the "Lawyers Club of Atlanta" which is, to my knowledge, mostly a social or networking club. Nonetheless, I have been told that I am being ejected from my membership in that Club. This action seems arbitrary and capricious, and I intend to fight the action before the members and in court if necessary.

> I demand the recusal of any members of any Bar committee or the Disciplinary Board who are affiliated with the Lawyers Club of Atlanta.

> (5) **_Alpha Kappa Alpha_**. It appears several members of the Disciplinary Committee are members of the Alpha Kappa Alpha Sorority, which appears to be more akin to an activist organization than a typical Greek fraternity. They have pledged support to this organization. Vice President Kamala Harris proudly claims her association with this sorority, and the organization issued a press release in which it called former President Trump a "racist." This organization seems to be an exclusionary organization itself and focused on members who are members of one race only.

> I demand the recusal of any members of any Bar committee or the Disciplinary Board who are affiliated with the Alpha Kappa Alpha Sorority.

> (6) **_Associational and Financial Conflicts of Interest_**. Finally, the Georgia Bar is made of a finite group of individuals, and many members of its Board of Governors and Bar committees solicit the support of attorneys throughout the state to campaign for their seats. Often, those business associations and friendships involve a significant portion of the professional income coming from the same political agencies and actors I have accused of illegal conduct, such as the Governor, the Lieutenant Governor, the Secretary of State, and the Deputy Secretary of State.

> I demand the recusal of any members of any Bar committee or the Disciplinary Board who has significant associations with or receives significant financial income from political agencies and government officials in Georgia.

I recognize that we all have an obligation to defend the protections of the Rule of Law as part of our profession. Our Constitution and our laws are designed to protect the meek as well as the mighty. The law must be applied equally to all, even if we are required to advance causes that may be unpopular to the elites. Being a member of the Bar is not a popularity contest – we don't maintain our positions as lawyers by being popular. In fact, as you know, we have a duty to represent our clients without regard as to whether a position is "popular" or accepted.

Christian J. Steinmetz, III, Esq.
March 19, 2021
Page 7

  I have been honest and transparent and have conducted myself in accordance with the Rules. If the Disciplinary Board wishes to also conduct itself in a professional and honest manner and afford me my right to due process of law, I will certainly have no objection to any questions that may be posed. As of the timing of your letter, Ms. Frederick had not answered any of my requests for clarification, and instead has ramped up the attacks on me with the retention of you as counsel. As any reasonable lawyer would understand from the foregoing, the Bar's actions and its basis for acting are a muddled mess, costing me to expend valuable resources, consult with numerous advisors, and damaging my reputation. Please see if you can arrange a better understanding of the Bar's actions hereto limit your requests in the future to matters that are appropriately within the jurisdiction of the Bar and are requested by persons without conflicts of interests or, as we say, a political agenda or an "ax to grind." I originally thought the Bar's conduct was unseemly; now I understand it is a threat to the practice of law and to the rights of any person who takes a politically unpopular position.

  I will continue to await an answer to this letter and other letters I have sent to Ms. Frederick, which should be in your file. I expressly reserve all rights to assert further constitutional or legal defenses or challenges to the validity of these actions by the Board. I intend to vigorously defend myself, my license to practice law, and my reputation against these mischaracterizations and false accusations.

  I look forward to your response.

          Very truly yours,

          L. Lin Wood

cc:  Paula J. Frederick, Esq.

EXHIBIT E

# L. LIN WOOD, P.C.
### ———— TRIAL LAWYERS ————

L. LIN WOOD
Direct Dial: (404) 891-1406
lwood@linwoodlaw.com

February 3, 2021

## VIA UPS – OVERNIGHT & ELECTRONIC MAIL

Paula J. Frederick, General Counsel
104 Marietta Street, NW Suite 100
Atlanta, GA 30303
paulaf@gabar.org

State Bar of Georgia, Grievance Counsel
104 Marietta Street, NW Suite 100
Atlanta, GA 30303
response@gabar.org

RE:   *L. Lin Wood, 774588, Grievance filed by John Bellocchio, Hackensack, NJ and Grievance filed by Ted Kurt, Maumee, OH*

Dear Paula:

Per our recent telephone conversation, I am enclosing a thumb drive containing a compilation of some of the compelling evidence of election fraud.

The thumb drive also contains the interview of a very credible whistleblower whose statements provide substantial support for my public comments about former Vice President Mike Pence, John Roberts, the Chief Justice of the United States Supreme Court, and Rod Rosenstein, the former Deputy Attorney General.

This evidence must be considered in connection with the complaints filed against me by the out of state, non-client citizens and in connection with reported claims that the State Bar intends to request that I submit to a mental healthcare examination.

I expect that the State Bar of Georgia will thoroughly investigate this evidence and provide it to any and all law enforcement agencies responsible for investigating and prosecuting these types of crimes.

Between now and February 12, I will be providing you and the State Bar with additional evidence which must be considered in resolving the above referenced complaints filed against me by the out of state, non-client citizens.

As always, please feel free to contact me if you have any questions.

Sincerely,

L. Lin Wood

Enclosure