## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **L. LIN WOOD,**<br>　　　　**Plaintiff,**<br><br>**v.**<br><br>**PAULA J. FREDERICK, CONNIE S. COOPER, JEFFREY R. HARRIS, CASEY CARTER SANTAS, PATRICIA F. AMMARI, KAYLA E. COOPER, ELIZABETH L. FITE, ELISSA B. HAYNES, MARGARET W. SIGMAN PUCCINI, SHERRY BOSTON, ELIZABETH POOL O'NEAL, DAVID F. RICHARDS, JENNIFER D. WARD, MICHAEL FULLER, SR., JENNIFER ELIZABETH DUNLAP, CHRISTIAN J. STEINMETZ, III, BRANDON L. PEAK, TOMIEKA DANIEL, CHRISTOPHER SUTTON CONNELLY, MELODY GLOUTON, and DAWN JONES,**<br><br>　　　　**Defendants.** | **CIVIL ACTION FILE**<br><br>**NO.:  1:21-CV-01169-TCB**<br><br>**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S REQUEST FOR PRELIMINARY INJUNCTION** |

## I.    INTRODUCTION AND FACTUAL BACKGROUND

### A. Current Grievance Against Plaintiff

Plaintiff is a lawyer and a member of the State Bar of Georgia. The instant action arises out of disciplinary proceedings undertaken against Plaintiff by the State Bar. On February 11, 2021, the State Bar of Georgia sent Plaintiff a Notice of Investigation of a grievance. [**Ex. A**, *Notice of Investigation*] Plaintiff was provided a copy of the grievance, which was being referred to the State Disciplinary Board ("SDB"). [**Ex. B**, *Grievance*] The grievance stated that Plaintiff may have engaged in conduct in violation of Georgia Rules of Professional Conduct 1.1, 1.2, 3.1, 3.3, 4.1, 4.4 and Bar Rule 4-104.

While grievances are usually kept confidential at this point in the proceedings, the State Bar is authorized to disclose information necessary to correct false or misleading public statements about otherwise confidential disciplinary matters. *See* Bar Rule 4-221.1. The Rule also allows the Office of the General Counsel or the SDB to reveal information that would otherwise be confidential when there is a charge of wrongful conduct against the SDB or any person connected with disciplinary proceedings. Since Plaintiff has accused the State Bar and the SDB of pursuing an investigation without any grounds to do so, the State Bar invokes the exception at Rule 4-221.1 to provide the Court with information that would otherwise be confidential at this stage of a disciplinary investigation. Further, the

information discussed below, including the lawsuit against Plaintiff by his former colleagues, Plaintiff's post-election lawsuits, and Plaintiff's social medial posts, has been widely covered in the press.  Finally, Plaintiff made details of the investigation public by posting information about it on social media, including a post on February 13, 2021, containing a link to the grievance and attachments.

The grievance is based in part on the following information:

1. _Wade, et al., v. Wood_, Fulton County Superior Court, Civil Action File Number 2020-cv-339937- Plaintiff is involved in a pending case with his former colleagues from L. Lin Wood, P.C. The former colleagues filed a verified complaint, in which they state that:

a. Plaintiff began to display "erratic, abusive, and unprofessional behavior." Plaintiff's former colleagues averred that Wood was becoming "increasingly…hostile…and threatening" and that Wood sent "abusive, incoherent phone calls, voicemails, texts, and emails" to the former law colleagues in the middle of the night. Plaintiff allegedly "begged" his law colleagues to come to his house at 1:00 a.m. and urged them to stay until morning.  [**Ex. C**, _Verified Complaint_, pp. 28- 30.]

b. Plaintiff physically attacked two of his former colleagues. Wood attacked one of them in an elevator. He attacked another at Plaintiff's home when the colleague went there out of concern for Plaintiff's wellbeing.

Plaintiff acknowledged and apologized for the attacks. [**Id.,** p. 29; **Ex. D**, *Transcript of Recorded Conversation*.[1]] In a subsequent voicemail, Plaintiff threatened to beat one of his former law colleagues with a switch until "he couldn't sit down for 20 fucking years." [**Ex. E**, *Voicemail from Plaintiff*; **Ex. C**, p. 43.]

c. Plaintiff left a voicemail for a former law colleague: "Man oh man, you're glad you're not with me in an elevator with me [*sic*] right now buddy[,]" apparently referencing the previous physical attack. [**Ex. F**, *Voicemail from Plaintiff*; **Ex. C**, pp. 43-44.]

d. Plaintiff also threatened to "destroy" his former law colleagues and said about one of them specifically, "by the time I am through with [him], he's going to wish all I had done was fuck his wife." [**Ex. C**, p. 32.] Plaintiff then called the former law colleague's wife, professing his love for her and her family. [**Ex. G**, Voicemail from Plaintiff.]

e. On a 3.5 hour teleconference, Plaintiff spoke nearly non-stop and offered to fight his former law colleagues to the death. [**Ex. H**, *Call Transcript*, p. 58; **Ex. C**, p. 33.]

f. Plaintiff declared that he was doing God's will; threatened to bring

---

[1] Several of the exhibits are in the form of transcripts prepared by the attorney for Plaintiff's former colleagues. The audio recordings can be made available to the Court if necessary.

down the wrath of God; promised that Plaintiffs would be punished "at the discretion of Almighty God"; said "God Almighty told me to get you back to where you belong. Broke and essentially homeless.... You all better get on your knees and pray to Almighty God that He now asks me to show you mercy"; threatened "Unless I change my mind under the instructions of God, you are in for the roughest ride of your lives. I'm going to teach you all a lesson that you are going to learn...."; and threatened "I will deliver a fiery judgment against you on earth. Who the fuck did you think you were dealing with? You were screwing around with me, but I was someone else in disguise. You in fact have been screwing around with God Almighty...." Plaintiff said that he would "make sure that you never practice law again ever if you do not admit your sins, all of them by 10:30 a.m." [**Ex. I**, *Email from Plaintiff*, pp. 2-6; **Ex. C**, pp. 37-38.]

g. Plaintiff voiced repeated concerns about his misconduct being disclosed, as he feared it would interfere with his supposedly imminent receipt of the Presidential Medal of Freedom and appointment as the Chief Justice of the United States Supreme Court. Plaintiff believed his appointment was forthcoming due to a prophesy he heard in a YouTube video and a conspiracy theory that Chief Justice John Roberts would be revealed to be part of Jeffrey Epstein's sex trafficking ring and was being blackmailed by liberals to rule in

their favor. [**Ex. C**, p. 52.]

2. <u>Revocation of *pro hac vice admission*</u>: On January 11, 2021, Plaintiff's *pro hac vice* admission was revoked in Delaware Superior Court. Judge Craig A. Karsnitz noted that the Georgia election case that Plaintiff was involved in was "textbook frivolous litigation." Judge Karsnitz ruled that Plaintiff's conduct in certain of the post-election cases "exhibited **a toxic stew of mendacity, prevarication, and surprising incompetence**." **Ex. J,** p. 3, 6, and 7 (emphasis added). Plaintiff's post-election suits include a Wisconsin case in which Plaintiff brought suit on behalf of someone who had not consented to be a plaintiff in the case. *Feehan v. Wisc. Elections Comm'n, U.S.* District Court, Eastern District of Wisconsin, 20-cv-1771. In dismissing the case, the Court noted that the plaintiff "seems to have made up the 'quote' in his brief that purports to be from a [7th circuit case]." 20-cv-1771, **Dkt. 83**, p. 4.

3. <u>Plaintiff's Public Statements</u>

Plaintiff's recent public statements include calling for the execution of the sitting Vice President[2], alleging that the Chief Justice of the United States Supreme Court is involved in a pedophilic cult, and alleging that former Secretary of State Hillary Clinton and the FBI were involved in a plan to murder federal judges after

---

[2] https://www.newsweek.com/parler-nixes-firing-squad-post-pro-trump-lawyer-lin-wood-after-his-twitter-suspension-1560259. Plaintiff's post was deleted by Parler for violation of its rules against encouraging violent or lawless action.

the 2016 election.  [**Ex. K**, *Article compiling Plaintiff's tweets from* <u>The Daily Beast;</u> **Ex. L, M, N**, *Plaintiff's Telegram Posts*]

### B. Request For Consensual Mental Health Evaluation

On February 11, 2021, the State Bar, under the auspices of Rule 4-104, wrote Plaintiff to request that he consent to a confidential evaluation by a mental health professional. [**Ex. O**, *Correspondence to Plaintiff from the State Bar*.] Plaintiff asked for and was granted an extension to March 15, 2021 to respond to the request. [**Ex. P**, *Correspondence from the State Bar to Plaintiff*.]

Pursuant to Rule 4-104, mental illness, cognitive impairment, alcohol abuse, and drug abuse, to the extent they impair a lawyer's competency, shall be grounds for removing a lawyer from the practice of law. If the Bar determines that a lawyer may be impaired or incapacitated for any of the above reasons, it may refer the lawyer to an appropriate professional for the purpose of evaluation and possible referral to treatment or peer support groups. The Bar may defer disciplinary findings or proceedings "to afford the lawyer an opportunity to be evaluated, and, if necessary, to begin recovery." Also, an attorney's attempt to address his mental health or substance abuse issues may also be a mitigating factor in determining the level of discipline imposed on an attorney. *In re LeDoux*, 288 Ga. 777, 778, 707 S.E.2d 88, 90 (2011), reinstatement granted sub nom. *Matter of LeDoux*, 303 Ga. 804, 816 S.E.2d 1 (2018) and *In re Rand*, 279 Ga. 555, 556, 616 S.E.2d 452, 453

(2005).

The request for consensual evaluation is part of the investigation into the grievance. It is not an adjudicative proceeding itself, so there is no due process opportunity to be heard before the request is made. The Bar cannot compel a lawyer to undergo an evaluation. If the lawyer agrees to participate, he adds information and context that the SDB can use to evaluate the matter. If he refuses, he cannot be suspended or disbarred without further process, an opportunity to be heard, and an Order from the Georgia Supreme Court.

### C.  Grievance Process

The process for disciplining a Georgia attorney contains numerous opportunities for the attorney to challenge the sufficiency of the evidence against him and to assert any protections afforded to him by the U.S. or Georgia Constitutions. No discipline is administered to any attorney before he has a right to respond. Further, only the Supreme Court has the authority to administer public discipline against an attorney.

The Office of the General Counsel ("OGC") analyzes submitted grievances and investigates attorney conduct. If the OGC determines that the attorney may have violated a rule of professional conduct, the matter is referred to the SDB. Bar Rule 4-202. A Notice of Investigation is sent to the lawyer, who is given an opportunity to respond to the allegations. Bar Rule 4-204.4. The SDB is vested with the power

to investigate and recommend discipline for lawyers for violations of the Georgia Rules of Professional Conduct. Bar Rules 4-201, 4-203. The SDB conducts a probable cause investigation, which consists of collecting evidence and information. If the SDB determines that if there is probable cause that an attorney violated a rule of professional conduct it has several options, including dismissal, confidential discipline, or referral to the Georgia Supreme Court for public disciplinary proceeding.

If the matter is docketed in the Georgia Supreme Court with a formal complaint, the attorney has an opportunity to file an answer. Then the parties may engage in discovery, file motions and discuss possible voluntary discipline. Bar Rule 4-212. The special master is authorized to conduct a formal disciplinary hearing, including deciding questions of law or fact. In appropriate cases, the special master may make a recommendation of discipline via a report filed with the Clerk of the SDB. Bar Rule 4-213. The attorney and the State Bar have the right to file exceptions to the report and to request a review by the State Disciplinary Review Board ("SDRB"). Bar Rule 4-214. If a review is requested, the SDRB reviews the report. Conclusions of law are reviewed *de novo*. Conclusions of fact are reviewed under a "clearly erroneous" standard. The SDRB can recommend dismissal of the disciplinary action outright or change the discipline recommended by the special master. Bar Rules 4-215 and 4-216.

Once the special master's report and SDRB report (if any) are filed with the Georgia Supreme Court, the attorney and the State Bar may file written exceptions to the report, including allegations of errors in the hearing. Bar Rule 4-213. After review of the record, including any exceptions, the Georgia Supreme Court enters judgment. Bar Rule 4-218.

In all disciplinary proceedings, the State Bar of Georgia has the burden of proof, other than in cases involving an attorney convicted of certain crimes. The quantum of proof is by "clear and convincing evidence." Bar Rule 4-221.2.

### D. Plaintiff's Motion For Preliminary Injunction

On March 29, 2021, Plaintiff filed a *Motion for Preliminary Injunction.* [**Dkt. 29**] Plaintiff asks the Court to enter an order stating that Defendants are enjoined from "proceeding with any action in furtherance of their requirement that the Plaintiff undergo a mental evaluation or examination" and from "imposing any disciplinary action or otherwise taking any adverse action against the Plaintiff by virtue of his failure to undergo a mental evaluation or examination." [**Dkt. 29-1**, p. 18] For the reasons below, this Motion should be denied.

### III. ARGUMENT

**A. Plaintiff Misstates Key Facts Regarding the Request for Voluntary Mental Health Examination and the Disciplinary Process.**

Contrary to Plaintiff's allegations, the SDB does not have the authority to "require" a lawyer to undergo a mental health evaluation. Rather, the SDB can only request that a lawyer consent to an evaluation. If the lawyer agrees to participate, he adds information and context that the SDB can use to evaluate the matter. In this case, Plaintiff refused to consent to the evaluation before the expiration of the extended deadline.

Plaintiff states that "[a]n attorney who fails or refuses to undergo a mental evaluation when requested to do so by the Georgia State Disciplinary Board faces a grave and imminent threat of serious disciplinary sanctions, including the emergency suspension of his law license and ability to earn a livelihood." [**Dkt. 29-1**, p. 1] This is also incorrect. Plaintiff's law license will not be suspended or revoked until and unless:

- The full disciplinary process described above is complete; or
- The State Bar pursues an emergency suspension of a lawyer's license, which can only occur after the process laid out in Rule 4-108, which requires:

  o An initial finding that there is "sufficient evidence

> demonstrating that a lawyer's conduct poses a substantial threat of harm to his client or the public[.]"; and
>
> o A hearing conducted by a special master; at which the lawyer can contest the evidentiary and legal basis of the claims against him; and
>
> o A recommendation by the special master that the lawyer's license be suspended; and
>
> o The Georgia Supreme Court accepting the recommendation and temporarily suspending the lawyer's license.

Note that the emergency suspension procedure is <u>not</u> limited to instances where a lawyer refuses a request for a consensual mental health evaluation; it is available regardless of whether such request is made, refused, or accepted. There is simply no immediate threat to Plaintiff that would support his claim for a preliminary injunction.

Plaintiff states that the SDB based its request to Plaintiff for a consensual mental health evaluation on "grievances by four, out-of-state, non-client individuals who admit they have had no interaction with the Plaintiff and whose complaints against the Plaintiff are based solely and exclusively on his public and private speech on matters of national public interest." [**Dkt. 29-1**, p. 2] As Plaintiff is aware, this too is incorrect. Plaintiff admits that the Office of General Counsel sent him a Notice

of Investigation with the SDB grievance, including information that was available to the SDB when it asked Plaintiff to consent to a mental health evaluation. [**Dkt. 28-1**; p. 14; **Dkt. 29-1**; p. 6] Some of this information is recounted above; it includes physical violence, threats of physical violence, erratic communications, and a *pro hac vice* revocation due to allegations of litigation misconduct.

Moreover, there is nothing improper with evidence forming the basis of the grievance coming from non-clients. [**Dkt.** 29-1, p. 8] Rule 4-202 states that the "Office of the General Counsel may investigate conduct upon receipt of credible information from any source[.]" Any person can file a grievance against a Georgia lawyer; the fact that no client has complained against the Plaintiff is irrelevant. Obviously, the statement by a sitting judge alleging frivolous, incompetent, and dishonest litigation is proper evidence for the State Bar to consider, as is a verified Complaint from Plaintiff's former colleagues containing detailed and exhaustive allegations of erratic and abusive behavior, supported by text messages, emails, and audio records from the Plaintiff himself.

Plaintiff also argues that the allegations made by his former colleagues in their verified complaint should be discounted because that suit "involves sharply contested issues of fact and law which have yet to be argued or decided." [**Dkt. 29-1**, p. 5] Of course, it is not unusual for the subject of the disciplinary action to deny factual allegations against him. Plaintiff will have the opportunity, within the

grievance process, to challenge the quality and sources of the evidence against him. The fact that Plaintiff disputes factual allegations against him is insufficient to support a preliminary injunction.

Finally, Plaintiff claims that the disciplinary action is improper because none of the allegations against him relate to the practice of law. [**Dkt. 29-1**, pp. 7-8] Again, this is incorrect. The revocation of Plaintiff's *pro hac vice* admission in a Delaware court referenced Plaintiff's conduct as a litigator. The allegation that he filed frivolous lawsuits, at least once without a client's permission, relate to conduct as a lawyer.

**B. The Court Should Decline To Intervene Based on the *Younger* Abstention Doctrine.**

Plaintiff's request for injunctive relief is a request for this Court to intervene in the ongoing disciplinary proceedings currently pending in the Georgia Supreme Court against Plaintiff. As the United States Supreme Court has held, "since the beginning of this country's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts." *Younger v. Harris*, 401 U.S. 37, 43, 91 S. Ct. 746, 750, 27 L. Ed. 2d 669 (1971).

The Northern District of Georgia was faced with a nearly identical fact pattern in 1992 in the matter of *Cohran v. State Bar of Georgia*. In that case, as in the instant

case, Cohran filed an action in the Federal District Court for the Northern District of Georgia seeking an injunction to enjoin the State Bar and its employees from continuing disciplinary proceedings against him. The District Court refused to grant injunctive relief, holding that Federal Courts should abstain from interfering with a state bar's ongoing disciplinary actions against its attorneys. The District Court held that Georgia had a great interest in regulating the practice of law in its state "since lawyers are essential to the primary governmental function of administering justice, and have historically been 'officers of the courts.'" *Cohran v. State Bar of Georgia*, 790 F. Supp. 1568, 1571 (N.D. Ga. 1992).

The reasoning behind the *Cohran* decision is equally applicable to the instant case. It is important to note that Cohran, like Plaintiff in the instant case, raised constitutional claims in an attempt to invoke the District Court's jurisdiction. The District Court held that, since Cohran had a chance to raise his constitutional claims before the Georgia Supreme Court, the District Court had no need to intervene. The Court held that the fact that Cohran "failed to prevail on federal constitutional grounds [in proceedings in front of the Georgia Supreme Court] does not mean he was denied the opportunity to raise those claims." *Cohran,* at 1571 (N.D. Ga. 1992).

The United State Supreme Court has held that "it is perfectly natural for our cases to repeat time and time again that the normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such

injunctions." *Younger*, at 45 (1971).   This case presents no reason to make an exception to this general rule. This Court should decline Plaintiff's request to intercede and interfere in the pending disciplinary action in the Georgia Supreme Court.

## C. Plaintiff Fails to Satisfy any of the Criteria for Preliminary Injunctive Relief.

A preliminary injunction is an "extraordinary and drastic remedy which should not be granted unless the movant has clearly carried the burden of persuasion concerning…the four prerequisites to such relief."  *State of Tex. v. Seatrain Int'l, S. A.*, 518 F.2d 175, 179 (5th Cir. 1975). The four prerequisites are: "(1) a substantial likelihood that the movant will eventually prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the party or parties opposed; and (4) a showing that the injunction, if issued, would not be adverse to the public interest." *Id.* Granting "a preliminary injunction is the exception rather than the rule." *Id.* A party's failure to satisfy even one of the four elements is fatal to his request and "obviates the need for the Court to address the remaining elements." *Computer Currents Pub. Corp. v. Jaye Commc'ns, Inc.*, 968 F. Supp. 684, 687 (N.D. Ga. 1997).

1. <u>Plaintiff is Unlikely to Succeed on the Merits of his Claims.</u>

As shown in Defendants' *Motion to Dismiss*, Plaintiff is unlikely to succeed on the merits of his claims. Plaintiff's claims should be dismissed for lack of subject matter jurisdiction, *Younger* abstention, and judicial immunity. If this court never reaches the merits of Plaintiff's claims because it dismisses the case for the reasons stated above, Plaintiff is not likely to "succeed on the merits."

Even if this matter proceeds to the merits, Plaintiff remains unlikely to succeed. Plaintiff's constitutional claims are deficient. Given the broad amount of information from credible sources available to the SDB at the time the request was made for the voluntary mental health evaluation, including physical violence, threats of further physical violence, and instances of courts finding Plaintiff was involved in frivolous litigation, it is extremely unlikely that Plaintiff will succeed in proving that the request was made to "chill" his free speech rights. Plaintiff will also be unlikely to prove that the request posed "specific present objective harm or a threat of specific future harm[,]" in order to demonstrate a First Amendment violation. *See Laird v. Tatum*, 408 U.S. 1, 13–14, 92 S. Ct. 2318, 2325–26, 33 L. Ed. 2d 154 (1972).

Further, contrary to Plaintiff's assertion, the due process clause is not implicated, since the request that Plaintiff consent to a mental health evaluation does not deprive Plaintiff of any right or property interest. *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 902, 47 L. Ed. 2d 18 (1976). Before Plaintiff is deprived of

any right or property interest, he will have the benefit of the disciplinary procedures discussed above. Likewise, Plaintiff's constitutional privacy rights are not violated by a request for a voluntary examination. Defendants cannot and have not compelled Plaintiff to undergo a medical examination nor can they require him to provide medical information against his will.

It also bears mentioning that, although the State Bar has not made any ultimate factual findings regarding Plaintiff's speech or conduct and it may not ever do so, there is no First Amendment protection for statements made when the speaker knows that the statement is false or makes the statement with reckless disregard of whether it is false or not. *New York Times Co. v. Sullivan*, 376 U.S. 254, 280, 84 S. Ct. 710, 726, 11 L. Ed. 2d 686 (1964). The 9th Circuit has held that the inquiry as to whether an attorney can be disciplined for speech "focuses on whether the attorney had a reasonable factual basis for making the statements, considering their nature and the context in which they were made," since "*false* statements impugning the integrity of a judge erode public confidence without serving to publicize problems that justifiably deserve attention." *Standing Comm. on Discipline of U.S. Dist. Ct. for Cent. Dist. of California v. Yagman*, 55 F.3d 1430, 1437 (9th Cir. 1995)(emphasis in the original).

2. Plaintiff Will Not Suffer Harm in the Absence of an Injunction.

To be granted a preliminary injunction, Plaintiff must show "irreparable harm and inadequacy of legal remedies[.]" *Sampson v. Murray*, 415 U.S. 61, 88, 94 S. Ct. 937, 952, 39 L. Ed. 2d 166 (1974). The lack of viable legal remedies is a crucial component; simply alleging damages is not sufficient: "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Id.*, internal cites omitted.

As discussed above, the grievance proceedings provide a robust and meaningful opportunity for Plaintiff to contest all allegations against him. Plaintiff's refusal to consent to a mental health evaluation is not dispositive of anything; it is simply a data point the SDB may consider along with many other pieces of evidence. Importantly, Plaintiff's law license cannot be suspended or revoked until Plaintiff is afforded the due process outlined above. While Plaintiff raises the specter of an emergency suspension of his law license, such notion is illusory.  Such a suspension cannot occur until the lawyer is afforded a hearing to contest this action. Then, the Georgia Supreme Court must approve of the emergency suspension. Since Plaintiff has a legal remedy to challenge all allegations against him and to raise any constitutional challenges he wishes, he cannot prove irreparable harm in the absence of a preliminary injunction.

3. Granting Injunctive Relief Will Harm Defendants and Disserve the Public Interest.

The State Bar of Georgia, as an administrative arm of the Georgia Supreme Court, is tasked with the regulation of lawyers within this state. The U.S. Supreme Court has held that "the interest of the States in regulating lawyers is especially great since lawyers are essential to the primary governmental function of administering justice, and have historically been 'officers of the courts.'" *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792, 95 S. Ct. 2004, 2016, 44 L. Ed. 2d 572 (1975). Allowing an attorney to halt the grievance proceedings based on his misstatement or misunderstanding of the facts and law interferes with this important state interest and causes serious harm.

### III.   CONCLUSION

For the reasons stated above, Plaintiff's *Motion for Injunction* should be denied. Plaintiff's *Complaint* should be dismissed in its entirety.

Respectfully submitted this 3rd day of May, 2021.

**NALL & MILLER, LLP**
By: /s/ *Patrick N. Arndt*                      Atlanta, Georgia  30303-1418
**ROBERT L. GOLDSTUCKER**          Phone:      (404) 522-2200
Georgia State Bar No. 300475              Facsimile:  (404) 522-2208
**PATRICK N. ARNDT**
Georgia State Bar No.  139033
bgoldstucker@nallmiller.com
parndt@nallmiller.com                          **Attorneys for Defendants**
235 Peachtree Street, N.E.
Suite 1500 – North Tower

## <u>CERTIFICATE OF SERVICE AND OF COMPLIANCE WITH LOCAL RULE 5.1</u>

I hereby certify that on May 3rd, 2021, a true and correct copy of this document was filed with the Court via the CM/ECF system. All attorneys identified with the Court for electronic service on record in this case were served by electronic transmission in accordance with the CM/ECF system, including the following counsel of record:

Larry L. Crain, Esq.
Crain Law Group, PLLC
5214 Maryland Way
Suite 402
Brentwood, TN 37027

Ibrahim Reyes, Esq.
Reyes Lawyers, P.A.
236 Valencia Avenue
Coral Gables, FL 33134

L. Lin Wood, Jr., Esq.
L. Lin Wood, P.C.
P.O. Box 52584
Atlanta, GA 30355-0584

I further certify that I have prepared this document in 14 point Times New Roman font.

*/s/ Patrick N. Arndt*

893816v.1