## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

NICOLE WADE; JONATHAN GRUNBERG;
TAYLOR WILSON;
WADE, GRUNBERG & WILSON, LLC;

Plaintiffs,

v.

L. LIN WOOD and L. LIN WOOD, P.C.,

Defendants.

Civil Action File No:___**2020CV339937**

JURY TRIAL DEMANDED

### VERIFIED COMPLAINT

COME NOW Nicole Wade, Jonathan Grunberg, Taylor Wilson, and Wade, Grunberg & Wilson, LLC (collectively, "Plaintiffs"), and file this their Verified Complaint against Defendants L. Lin Wood and L. Lin Wood, P.C. (collectively, "Defendants"), showing the Court as follows:

### INTRODUCTION

1.

This lawsuit arises out of the breach of a Settlement Agreement and General Release executed by the Parties on March 17, 2020 (the "Settlement Agreement"). A true and correct copy of the Settlement Agreement is attached hereto as *Exhibit A.*[1]

---

[1] Certain portions of the Settlement Agreement have been redacted for client confidentiality purposes, including the liquidated sum owed to Plaintiffs under the Settlement Agreement. Contemporaneous with serving this Complaint, Plaintiffs are serving discovery upon Defendants and third parties to allow for the disclosure of the liquidated sum. Plaintiffs will promptly amend the Complaint to provide the liquidated sum as soon as permitted.

EXHIBIT "C"

Exhibit N

2.

The parties to the Settlement Agreement are all attorneys who practiced law successfully together in the firm of L. Lin Wood P.C. (hereinafter "LLW PC") for a number of years, working on many cases together, including each of the cases identified in the Settlement Agreement.

3.

In early 2020, due to the erratic, abusive, and unprofessional behavior of Defendant L. Lin Wood (hereinafter "Wood") as described herein, Plaintiffs sought to leave Defendant LLW PC and entered into the Settlement Agreement rather than litigate – and despite – the issues described herein. Indeed, Plaintiffs Wade, Grunberg, and Wilson made significant financial concessions in the Settlement Agreement, despite having no legal obligation to do so, specifically to avoid filing this lawsuit in favor of protecting the privacy of Defendant Wood and various third parties.

4.

Pursuant to the Settlement Agreement, Defendants owe Plaintiffs a liquidated sum arising from the fees for certain cases and eventual resolution of other business disputes as set forth in the Settlement Agreement.

5.

The amount owed to Plaintiffs is owed by Defendants out of fees they have already collected from clients for work performed by Plaintiffs when they were lawyers at LLW PC; thus, enforcement of Defendants' payment obligations under the Settlement Agreement does not require clients to pay fees beyond those paid to Defendants. And, indeed, it does not involve clients at all.

Exhibit N

Case 5:21-cv-01169-TCB Document 64 Filed 05/03/21 Page 3 PageID #: 1113

6.

Defendants have failed to honor the terms of the Settlement Agreement and further advised Plaintiffs that they will not make the payment required by the Settlement Agreement.

7.

Defendants' stated position for breaching the Settlement Agreement is that the individual Plaintiffs "were not in Lin's firm [LLW PC] at any time relevant" to the cases addressed in the Settlement Agreement but only "*shared office space and worked on cases with LLW PC*" and, thus, client consent is required to split fees with said Plaintiffs, pursuant to Georgia Rule of Professional Conduct 1.5.

8.

Defendants' position that Plaintiffs Wade, Grunberg, and Wilson were never associated with Defendant LLW PC is apparently based solely on the fact that each Plaintiff received his or her compensation from Defendant LLW PC via separate LLCs, each owned only by the individual Plaintiffs, for which Defendants issued 1099s rather than W-2s, which is not only irrelevant to the issue, but also was an act taken by Defendants solely in their own discretion for the apparent purpose of not having to account for taxes on compensation paid to Plaintiffs Wade, Grunberg, and Wilson, who were required to account for their own income taxes via separate LLCs.

9.

Defendants have taken this position to avoid payment of the largest fee identified in the Settlement Agreement – the one case which, because of the size of its fee, was the primary motivation for the parties to enter into the Settlement Agreement (the "Disputed Case"). Defendants were at the time of the Settlement Agreement and remain to this day lead counsel on

Exhibit N

this case.  Defendants now contend that this client has refused consent for Plaintiffs Wade, Grunberg, and Wilson to be paid the fee split Defendants agreed to in the Settlement Agreement – even though the entire fee has already been paid to Defendant LLW PC, and the division of compensation between the former lawyers of LLW PC should not involve clients in any way.

10.

The bad faith of Defendants' position is plain from every fact attendant to the parties' relationship and practice of law.  For instance, Defendants acknowledged Wade's, Grunberg's, and Wilson's status as lawyers and partners of Defendant LLW PC by:

(a) Creating, or causing to be created, Defendant LLW PC's website, which identified Wade, Grunberg, and Wilson as partners of LLW PC;

(b) Making public announcements via the Fulton County Daily Report, the State Bar Journal, and other publications regarding each individual Plaintiff's hiring and/or promotion to partners of Defendant LLW PC;

(c) Allowing and directing countless representations to be made to many courts, both federal and state, that each individual Plaintiff was a member of Defendant LLW PC by virtue of every filing by any of the individual Plaintiffs and every hearing, trial, deposition, mediation, and/or arbitration attended by any individual Plaintiff;

(d) Drafting, or causing to be drafted, countless engagement agreements entered into by Defendant LLW PC wherein one or more of the individual Plaintiffs were identified as lawyers of LLW PC who would be working on that client's matter;

(e) Providing to the individual Plaintiffs business cards identifying each individual Plaintiff as an attorney of LLW PC;

4

(f) Providing each of the individual Plaintiffs with email addresses at LLW PC's domain "linwoodlaw.com";

(g) Making countless introductions in court, in depositions, to clients, and to third parties of each of the individual Plaintiffs as "Partners" of LLW PC;

(h) Drafting countless emails, texts, tweets, and conversations over a period of years acknowledging and holding out the individual Plaintiffs as "Partners" of Wood and LLW PC; and

(i) Expressly acknowledging in the Settlement Agreement that Plaintiffs Wade, Grunberg, and Wilson "never held any ownership interest in L. Lin Wood, P.C. (hereinafter "LLW PC") but have worked as lawyers of L. Lin Wood, P.C. on cases since 2018."

## 11.

Thus, despite the avalanche of evidence to the contrary and their agreement in the Settlement Agreement, Defendants now apparently contend that Plaintiffs Wade, Grunberg, and Wilson were not "associated in a law firm" with Defendant Wood.

## 12.

It is now clear that Defendants committed fraud because they never intended to pay the majority of the money they owe to Plaintiffs under the Settlement Agreement. Defendants' fraudulent intent is evidenced in their first draft of the Settlement Agreement which contained a false recital that was a poison pill, as it mirrors Defendants' now-stated reason for breaching the contract: "Nicole Wade, Jonathan Grunberg, and Taylor Wilson and L. Lin Wood, P.C. are lawyers who practiced law, *co-counseled cases, and shared office space together*."

Exhibit N

13.

The Parties heavily negotiated Defendants' false recital about Plaintiffs Wade, Grunberg, and Wilson working as partners of Defendant LLW PC, ultimately resulting in the statement that Plaintiffs "*have worked as lawyers of L. Lin Wood, P.C.* on cases since 2018." (Ex. A emphasis added). The attention Defendants cast on this detail reveals their fraudulent intent.

14.

Defendants' breach of contract was premeditated; Defendant Wood never intended to make the payment required by the Settlement Agreement as he has repeatedly sworn since February 10, 2020 and as quoted herein.

15.

Defendants' bad faith in entering into a contract under which they never intended to perform, as shown herein, demonstrates that they fraudulently induced Plaintiffs to enter into the Settlement Agreement so that they could exact financial concessions from Plaintiffs for which Plaintiffs had no legal liability in exchange for finally obtaining Defendants' false promise to pay to Plaintiffs a larger sum, to which they were entitled, which Defendants never ultimately intended to pay.

**PARTIES, JURISDICTION AND VENUE**

16.

Plaintiff Nicole Wade ("Wade") is a citizen and resident of the State of Georgia.

17.

Plaintiff Jonathan Grunberg ("Grunberg") is a citizen and resident of the State of Georgia.

Exhibit N

18.

Plaintiff Taylor Wilson ("Wilson") is a citizen and resident of the State of Georgia.

19.

Plaintiff Wade, Grunberg & Wilson, LLC ("WGW LLC") is a limited liability company registered to transact business in the State of Georgia. Its principal place of business is located in Fulton County, Georgia 30309. Its only members are Plaintiffs' individual LLCs: Wade Law, LLC, J.D. Grunberg, LLC, and G. Taylor Wilson, LLC, each a single member Georgia limited liability company, owned solely by the individual Plaintiff identified in the LLC name.

20.

Defendant L. Lin Wood ("Wood") is a citizen of the State of Georgia and a resident of Fulton County, Georgia and may be served at his residence at ███████████████████████ ██████████████

21.

Defendant L. Lin Wood P.C. ("LLW PC") is a professional corporation registered to transact business in Georgia. L. Lin Wood, P.C. may be served through its Registered Agent, L. Lin Wood, 1180 West Peachtree Street, Suite 2040, Atlanta, Fulton County, Georgia 30309. Its only shareholder is individual Defendant Lin Wood.

22.

Pursuant to O.C.G.A. § 15-6-8 and GA. CONST. art. VI, § 4, ¶ I, this Court has jurisdiction over this action and over Defendant Wood, a resident in Fulton County, Georgia, and Defendant LLW PC, a corporation operating in Fulton County and whose registered agent is located in Fulton County, Georgia. All actions giving rise to the basis of this Complaint

Exhibit N

occurred in Fulton County, Georgia, and pursuant to O.C.G.A. §14-2-510(b)(4), venue is proper in this Court.

## STATEMENT OF FACTS

### Detailed Facts Pertinent to Breach of Contract

### Background of Plaintiffs' Association with Defendant LLW PC

23.

Plaintiffs Wade, Grunberg, Wilson, and Defendant Wood are lawyers who are licensed to practice law in the State of Georgia.

24.

In or around September 2014, Plaintiff Grunberg was hired as an associate – a W-2 employee – by Defendant LLW PC when Wood's former firm, Wood, Hernacki & Evans, LLC disbanded.

25.

In May 2015, Plaintiff Wade joined LLW PC as a Partner.

26.

Effective May 2015, Plaintiff Wade and Defendant LLW PC entered into an agreement titled "Agreement for Nicole Jennings Wade to Join L. Lin Wood, P.C." with a term sheet providing, in material part, that "Nicole will join L. Lin Wood, P.C. between May 11, 2015 and June 15, 2015," that "Nicole will agree to work full-time and exclusively for L. Lin Wood, P.C.," that she will join "L. Lin Wood, P.C. as a 'Partner,'" and that "[t]he structure, and Nicole's partnership, will be re-evaluated, and potentially re-negotiated, after one year."

Exhibit N

27.

Defendants' hiring of Wade as a partner was announced in the Fulton County Daily Report (the "Daily Report"), stating as follows: "Trial law firm L. Lin Wood, P.C. has added Nicole Jennings Wade as a partner from Bryan Cave—the fourth lawyer for the firm. Wade handles fiduciary, trust and estate, and general business litigation. Until now, she had practiced at Bryan Cave and predecessor firm Powell Goldstein for her 20-year legal career."

28.

Defendants also arranged for an email blast from the Daily Report as follows:



29.

Plaintiff Wilson was hired as an associate – a W-2 employee – by Defendant LLW PC in November of 2015.

Exhibit N

30.

Following Wilson's arrival in November 2015, LLW PC operated as a law firm with 4 lawyers – Defendant Wood and Plaintiffs Wade, Grunberg, and Wilson – until January/February 2020.

31.

In early 2018, Defendant Wood indicated his intent to begin practicing law alone as the sole lawyer of Defendant LLW PC.

32.

At that time, Defendant Wood began looking for office space for himself and one non-attorney employee.

33.

In light of Defendant Wood's stated intention, Plaintiffs Wade, Grunberg, and Wilson formed WGW LLC.

34.

WGW LLC agreed to hire the other non-attorney employee of LLW PC who Defendant Wood did not plan to keep at LLW PC.

35.

Plaintiffs Wade, Grunberg, and Wilson also began searching for office space, and with Defendant Wood's knowledge and approval, they employed Defendants' own real estate brokers to canvas for space.

Exhibit N

36.

During this time, Plaintiffs Wade, Grunberg, and Wilson had numerous discussions with Defendant Wood in which they sought his advice about the formation and structure of WGW LLC.

37.

For example, Plaintiff Wade specifically discussed with Defendant Wood the anticipated compensation structure of WGW LLC, and he provided his opinion on that issue.

38.

Defendant Wood indicated that he planned to continue to work with Plaintiffs' new firm as he anticipated that the individual Plaintiffs would continue doing the same work for Defendants' clients that they had been doing.

39.

Indeed, the individual Plaintiffs had lengthy written and oral discussions about Defendant Wood potentially serving as "of counsel" at Plaintiff WGW LLC, and Plaintiff Wilson undertook research regarding whether Defendant Wood could ethically practice with two different law firms, and determined that he could by express authority of the Georgia Bar via advisory opinion.

40.

In or around April 2018, Defendant Wood changed his mind and elected to keep Defendant LLW PC together with Plaintiffs Wade, Grunberg, and Wilson continuing as attorneys of Defendant LLW PC.

Exhibit N

41.

Effective May 1, 2018, Defendants promoted Plaintiffs Grunberg and Wilson to non-equity partners of Defendant LLW PC and announced their promotions to partner via the Daily Report and the Georgia Bar Journal as follows:





L. Lin Wood, P.C., announced that Jonathan D. Grunberg and G. Taylor Wilson were promoted to partners. Grunberg focuses his practice on complex civil litigation in federal court. Wilson focuses on complex civil litigation in both federal and state court. His principal areas of representation include business and commercial litigation in both contract and tort, false claims act cases and actions for defamation and related first amendment issues. The firm is located at 1180 W. Peachtree St., Suite 2400, Atlanta, GA 30309; 404-891-1402; Fax 404-506-9111; www.linwoodlaw.com.

42.

Plaintiffs Wade, Grunberg, and Wilson then abandoned Plaintiff WGW LLC, which never operated prior to their departure from Defendant LLW PC in February 2020.

43.

Defendant Wood changed his office space search to find space sufficient for Defendant LLW PC to continue operating with four lawyers and two assistants, and in July 2018, Defendant LLW PC ultimately signed a lease at 1180 W. Peachtree St. NE, Suite 2040, Atlanta, GA 30309 (the "Lease").

12

Exhibit N

44.

At Defendant Wood's instruction, Plaintiffs Wade, Grunberg, and Wilson executed the Lease on July 17, 2018, only as "Partners" of Defendant LLW PC. The Lease makes no mention of any of the Plaintiffs' LLCs, and Plaintiffs did not execute personal guarantees.

45.

Defendant LLW PC moved into the new office space at Suite 2040 in September of 2018—along with its attorneys Defendant Wood and Plaintiffs Wade, Grunberg, and Wilson.

46.

By the middle of 2019, Defendant Wood indicated that he planned to enter into semi-retirement at the beginning of 2020.

47.

As part of his anticipated transition out of the practice of law, in late January 2020, Wood decided to re-brand Defendant LLW PC as a partnership named Wood, Wilson, Grunberg & Wade ("WWG&W").

48.

Defendants publicly announced the formation of WWG&W on or about January 24, 2020 in the Daily Report as follows:

Exhibit N



49.

Pursuant to Defendant Wood's instruction, the receptionist began answering the office phone with "Wood, Wilson, Grunberg & Wade" on the morning of Monday, January 27, 2020.

50.

No written documentation was ever prepared or executed setting forth the relationships between the partners of WWG&W, and no paperwork regarding the entity was ever filed with the Georgia Secretary of State.

51.

Neither Defendants nor Plaintiffs ever filed any document in any court under the name and or firm WWG&W; and thus for *every* case that Plaintiffs Wade, Grunberg, and Wilson were actively litigating as of February 14, 2020, they were listed on the docket as attorneys of Defendant LLW PC.

52.

For reasons more fully described below, Plaintiffs Wade, Grunberg, and Wilson determined that they could no longer practice law with Defendant Wood and terminated their association with Defendants on Friday, February 14, 2020.

14

Exhibit N

**Individual Plaintiffs Were Non-Equity "Partners" of LLW PC After May 1, 2018**

53.

Upon information and belief, Defendant Wood always has been the sole member of LLW PC.

54.

At all times from May 1, 2018, until their departure on February 14, 2020 (hereinafter, the "relevant time period"), Plaintiffs Wade, Grunberg, and Wilson were held out as "Partners" of Defendant Wood, whether in the entity LLW PC or the rebranded WWG&W.

55.

Throughout the relevant time period, the individual Plaintiffs received compensation for their work as lawyers and partners of LLW PC through their individual LLCs.

56.

Irrespective of their titles, at all times during the relevant time period, Plaintiffs Wade, Grunberg, and Wilson were lawyers of LLW PC, including the rebranded firm WWG&W.

57.

Throughout the relevant time period, Plaintiffs Wade, Grunberg, and Wilson were "associated with" Defendant LLW PC and Defendant Wood, including for the few weeks when the firm was rebranded as WWG&W..

58.

Throughout the relevant time period, Defendant Wood referred to Plaintiffs Wade, Grunberg, and Wilson as his partners and as partners of LLW PC in court appearances, in depositions, to clients, to third parties, and in countless emails, texts, and tweets.

Exhibit N

59.

During the relevant time period, Plaintiffs Wade, Grunberg, and Wilson were identified on the website of LLW PC, at linwoodlaw.com, as "Partners."

60.

Screenshots of pages on linwoodlaw.com as of January 2020, show each of the individual Plaintiffs represented as Partners of LLW PC:





16

Exhibit N





» Taylor Wilson https://web.archive.org/web/20200117184200/http://www.linwo...

http://www.linwoodlaw.com/attorney/taylor-wilson/ Go DEC JAN FEB 17 2019 2020 2021

68 captures

26 Jan 2016 – 17 Jan 2020

L. LIN WOOD, P.C.

TRIAL LAWYERS

(https://web.archive.org/web/20200117184200/http://www.linwoodlaw.com/)

Partner

Direct: 678-365-4107

Fax: 404-506-9111

twilson@linwoodlaw.com (https://web.archive.org/web/20200117184200/mailto:twilson@linwoodlaw.com?Subject=Web Site Inquiry)

**Taylor Wilson** practices complex civil litigation in both federal and state court. His principal areas of representation include business and commercial litigation in both contract and tort, False Claims Act cases, and actions for defamation and related First Amendment issues. He also has experience handling trademark infringement cases and a wide variety of fiduciary litigation in the business and estate/trust arenas.

Taylor joined L. Lin Wood, P.C. as an Associate in 2015 after practicing general civil litigation in a local boutique firm. He is a native of Marietta

Exhibit N

61.

During the relevant time period, Defendants provided to the individual Plaintiffs e-mail addresses at Defendants' domain www.linwoodlaw.com.

62.

During the relevant time period, Plaintiffs Wade's, Grunberg's, and Wilson's @linwoodlaw.com e-mail addresses were their only professional e-mail addresses for corresponding with clients or any other purpose.

63.

During the relevant time period, Plaintiffs Wade, Grunberg, and Wilson each sent hundreds of emails to Defendant Wood with a signature block identifying themselves as "Partner" of "L. Lin Wood, P.C."

64.

During the relevant time period, Defendant Wood never told Plaintiffs Wade, Grunberg, or Wilson that identifying themselves as "Partner" of "L. Lin Wood, P.C." was incorrect.

65.

During the relevant time period, Defendants provided to the individual Plaintiffs business cards evidencing their association in the law firm of LLW PC, for example:



Exhibit N





66.

During the relevant time period, Defendants filed countless court documents identifying the individual Plaintiffs as attorneys of LLW PC in the block identifying counsel.  For example, in a pleading signed by Defendant Wood in December of 2019, the block stated:

> Case 2:18-cv-08048-SVW-JC   Document 143   Filed 12/02/19   Page 1 of 6   Page ID #:5639
>
> L. LIN WOOD, P.C.
> L. Lin Wood (*pro hac vice*)
> lwood@linwoodlaw.com
> Nicole J. Wade (*pro hac vice*)
> nwade@linwoodlaw.com
> Jonathan D. Grunberg (*pro hac vice*)
> jgrunberg@linwoodlaw.com
> G. Taylor Wilson (*pro hac vice*)
> twilson@linwoodlaw.com
> 1180 West Peachtree Street, Ste. 2040
> Atlanta, Georgia 30309
> 404-891-1402
> 404-506-9111 (fax)

67.

During the relevant time period, Plaintiffs Wade, Grunberg, and Wilson and Defendant Wood maintained equal access to all current client files of Defendant LLW PC.

19

Exhibit N

68.

During the relevant time period, Plaintiffs Wade, Grunberg, and Wilson and Defendant Wood shared operating expenses, 25% each, including for, *inter alia,* office space lease, salary of a non-lawyer employee, file maintenance, website hosting, telephones, internet, cable, Westlaw, malpractice insurance for Defendant LLW PC, office supplies, copier/scanner, technical support, file storage and archiving, and other miscellaneous overhead expenses.

**Plaintiffs Wade, Grunberg, and Wilson Practiced Law Only for LLW PC**

69.

During the relevant time period, Plaintiffs Wade, Grunberg, and Wilson practiced law as attorneys acting solely on behalf of Defendant LLW PC.

70.

During the relevant time period, Defendant Wood originated the majority of the clients and business at Defendant LLW PC.

71.

Any client originated by Plaintiffs Wade, Grunberg, or Wilson during the relevant time period executed an engagement agreement with Defendant LLW PC, was billed by LLW PC, and made payments to LLW PC.

72.

At no time did WGW LLC, Wade LLC, Grunberg LLC, Wilson LLC, or Grunberg & Wilson LLC ever enter into an engagement agreement with a client, bill a client, collect fees from a client, or take any actions to represent a client during the relevant time period.

Exhibit N

73.

For example, while paragraph 1.A of the Settlement Agreement says of each of the clients in subparagraphs iv, v, and vi that he, she, or it "was and is the client of WGW," (Ex. A.), this simply referred to who originated the client and/or would manage the client's on-going matter. During the relevant time period: (1) each of those clients had an engagement agreement with Defendant LLW PC; (2) none of those clients had an engagement agreement with WGW LLC, Wade LLC, Grunberg LLC, Wilson LLC, or Grunberg & Wilson LLC; (3) Defendants were counsel of record for each of those clients; and (4) at least one of Wade, Grunberg, or Wilson were also counsel of record for those clients as attorneys of Defendant LLW PC.

74.

During the relevant time period, every correspondence or court filing made by Plaintiffs Wade, Grunberg, and/or Wilson on behalf of a client was made in their capacities as attorneys of LLW PC—with the exception of several letters that may have been sent after January 24, 2020, bearing the letter head of the rebranded firm, WWG&W.

75.

At all times during the relevant time period, Plaintiffs Wade, Grunberg, and Wilson never represented a client through any law firm other than Defendant LLW PC (or possibly its rebranded name WWG&W after January 24, 2020).

76.

During the relevant time period, Plaintiffs Wade, Grunberg, and Wilson never entered into an attorney engagement agreement to represent a client under a firm other than Defendant LLW PC (or possibly its rebranded name WWG&W after January 24, 2020).

Exhibit N

77.

During the relevant time period, Plaintiffs Wade, Grunberg, and Wilson never made an appearance in any case on behalf of any client under any firm name other than Defendant LLW PC.

**Individual Plaintiffs Performed Significant Work for All LLW PC Clients**

78.

During the relevant time period, Plaintiffs Wade, Grunberg, and Wilson generated nearly all of the work product for the clients of Defendant LLW PC.

79.

During the relevant time period, one or more of the individual Plaintiffs made an appearance on behalf of LLW PC in every proceeding in which Defendant LLW PC was counsel of record, in at least eight different states.

80.

Indeed, as of February 14, 2020, Plaintiffs Wade, Grunberg, and/or Wilson originally authored every pleading, substantive motion, and brief prepared by LLW PC and filed with the court for the cases subject of the Settlement Agreement for which a lawsuit had been filed, all pursuant to Defendant Wood's instruction and supervision, some of which were edited by Defendant Wood.

81.

During the relevant time period, every hourly fee engagement entered into by and between Defendant LLW PC and any client specifically listed one or more of Plaintiffs Wade, Grunberg, or Wilson as attorneys of Defendant LLW PC who were expected to perform work on behalf of the client.

Exhibit N

82.

During the relevant time period, Plaintiffs Wade, Grunberg, and Wilson communicated extensively with clients of LLW PC on whose cases they were working.

83.

Specifically, the individual Plaintiffs communicated and worked with the clients for every case addressed in the Settlement Agreement, in some of those cases acting as the primary client contact.

**The Settlement Agreement**

84.

Within 48 hours of Plaintiffs' departure from LLW PC, and before the individual Plaintiffs had even discussed re-activating WGW LLC, the Parties began negotiating a resolution of the issues arising from Plaintiffs' separation from LLW PC.

85.

On February 17, 2020, the Parties reached an agreement with respect to compensation to be paid on past and pending cases, which Defendant Wood subsequently reneged on – only to agree to the same fee split one month later when represented by counsel.

86.

On March 17, 2020, Plaintiffs and Defendants entered into the global Settlement Agreement, which provided that Plaintiffs and Defendants would separate and practice law separately, which resolved issues regarding compensation to the individual Plaintiffs for their work on certain of Defendant LLW PC's pending cases, and which allocated expenses related to the Lease.

Exhibit N

87.

In the Settlement Agreement, the Parties resolved fee disputes: (1) regarding compensation already earned by Defendant LLW PC on cases for which Plaintiffs Wade, Grunberg, and Wilson had performed substantial work; (2) regarding compensation to be earned by Defendant LLW PC for cases on which Plaintiffs Wade, Grunberg, and Wilson had performed substantial work; (3) regarding compensation to be earned by Plaintiff WGW LLC on cases originating with Defendant LLW PC; and (4) regarding Defendants' claim that Plaintiffs owed to Defendant LLW PC rent due under the Lease for LLW PC's office space after they departed, even though Plaintiffs Wade, Grunberg and Wilson signed the Lease only as partners of Defendant LLW PC, the Lease does not contain any personal guaranty, and Defendants evicted Plaintiffs from the space on February 14, 2020.

88.

Specifically, the Settlement Agreement provided that Plaintiffs would pay to Defendant LLW PC a percentage of fees eventually recovered in three cases that they would take and continue to work on, and that Defendant LLW PC would pay Plaintiffs a specific dollar amount of its fees collected on three separate cases that had either officially or functionally been resolved but for which Defendant LLW PC had not yet been paid its attorneys' fees, as well as fees to be collected in connection with several other cases that had not yet resolved.

89.

Plaintiffs Wade, Grunberg, and Wilson performed substantial work—if not the majority of the work—during the relevant time period on behalf of LLW PC on each of the cases for which Defendants agreed to compensate Plaintiffs in the Settlement Agreement.

24

Exhibit N

Case 5:21-cv-01069-TCB   Document 1   Filed 05/03/21   Page 25 of 71 PageID #: 1135

90.

Plaintiffs were not compensated for any of their substantial work on the cases included in the Settlement Agreement, but Plaintiffs reasonably expected compensation from Defendant LLW PC based on the firm's practice and procedure and assurances by Defendant Wood.

91.

During the relevant time period, Plaintiffs Wade, Grunberg, and/or Wilson had communicated and worked with each client whose cases were included in the Settlement Agreement, such that each client was familiar with the fact that one of more of the individual Plaintiffs was working on his, her, or their case.

92.

In regard to the three cases that were already settled or functionally settled, Defendant LLW PC agreed to pay Plaintiffs a specific dollar amount, with payment to be made within seventy-two hours of LLW PC's receipt of its portion of the fees in the Disputed Case, less payment for a portion of the Lease.

93.

Thus, as drafted by Defendants, the Settlement Agreement provided that all payments from Defendant LLW PC would become due and owing only upon receipt of the proceeds for its attorneys' fees from the Disputed Case.

94.

At all times during the relevant time period, including at the time the Settlement Agreement was executed, Defendants were counsel for the clients in the Disputed Case.

Exhibit N

95.

Following execution of the Settlement Agreement, Defendants reported to Plaintiffs on multiple occasions regarding the status of the trigger for payment under the Settlement Agreement.

96.

Subsequently, however, Defendants advised Plaintiffs (through counsel) of their purported belief that client consent was required for the payments to Plaintiffs agreed to in the Settlement Agreement pursuant to Georgia Rule of Professional Conduct 1.5(e), that the client in the Disputed Case refused consent, and that after off-setting the fees to be paid to Plaintiffs from the other cases that had already been resolved, Plaintiffs owed Defendant LLW PC a significant sum pursuant to Paragraph 2 of the Settlement Agreement concerning the Lease.

97.

With respect to the Lease, the Settlement Agreement provides as follows: "WGW shall pay to LLW PC the amount of [redacted] in full satisfaction of any obligations WGW may have, or be alleged to have, under the lease agreement …" which "amount shall be deducted from the payment by LLW PC to WGW referenced in Section 1(B) above."

98.

Thus, there is no provision in the Settlement Agreement requiring Plaintiffs to affirmatively pay to Defendants any amount of money, nor any time frame by which Plaintiffs would have to do so.  Instead, the Settlement Agreement explicitly provides for a net lump sum payment to Plaintiffs.

Exhibit N

99.

Despite Defendants' counsel expressly intertwining the payments to Plaintiffs with the Lease payment, and despite Defendants' receipt and retention of all fees in the resolved cases subject of the Settlement Agreement, Defendant LLW PC stated its intent to hold Plaintiffs liable for the Lease payment.

100.

Thereafter, Plaintiffs notified Defendants that Georgia Rule of Professional Conduct 1.5(e) does not apply to this situation because the rule governs only "lawyers who are not in the same firm" and that it does not "regulate division of fees to be received in the future for work done when lawyers were previously associated in a law firm." *See* Rule 1.5, cmt. 8.

101.

Prior to the execution of the Settlement Agreement, Defendants did not seek client consent for the purpose of paying compensation to Plaintiffs Wade, Grunberg, and Wilson as a matter of practice, both for hourly and contingency arrangements, and only Defendant LLW PC was listed as receiving fees in the settlement statement sent to clients following settlement of a contingency fee case.

102.

Upon information and belief, over seventy-hours (72) have passed since Defendant LLW PC received funds identified in the Settlement Agreement as the trigger for Defendants' payment to Plaintiffs.

103.

Thus, Defendants are obliged to pay to Plaintiffs the liquidated sum due under the Settlement Agreement, as well as additional funds due to Plaintiffs.

Exhibit N

104.

Plaintiffs have repeatedly demanded that Defendants honor their obligation to pay Plaintiffs the liquidated sum for fees required by the Settlement Agreement, as well as additional funds due to Plaintiffs, and have reminded Defendants' counsel of the facts and allegations contained herein.

105.

Defendants have continued in bad faith to refuse to pay the amount they agreed to pay Plaintiffs under the Settlement Agreement.

**Detailed Facts Pertinent to Fraud Claims**

**Deterioration of the Law Firm**

106.

Beginning in the fall of 2019 and continuing through 2020, Defendant Wood's behavior became increasingly erratic, hostile, abusive, and threatening toward Plaintiffs Wade, Grunberg, and Wilson, as well as many other individuals.

107.

While in the years before the Fall of 2019, Defendant Wood could at times be abusive, his bad behavior became far more serious and persistent than in years past.

108.

Plaintiffs Wade, Grunberg, and Wilson nevertheless remained in Defendant LLW PC because they were committed to serving as attorneys for a trial scheduled for early-December 2020, and Defendant Wood repeatedly assured them he would be stepping away from the practice of law after the trial ended.

Exhibit N

109.

Although relevant, Plaintiffs will avoid pleading the specifics of Defendant Wood's erratic behavior prior to February 14, 2020—except as to facts specifically and demonstrably related to Defendants' fraudulent and malicious intent to induce Plaintiffs to enter into the Settlement Agreement that Defendants would ultimately refuse to honor.

110.

The vast majority of the alleged communications below were made by Defendant Wood, and there is a noticeable void of responses by Plaintiffs Wade, Grunberg, and Wilson—who refused to respond in kind to Defendant Wood's behavior.

111.

Throughout late 2019 and January and February 2020, abusive, incoherent phone calls, voicemails, texts, and emails by Defendant Wood to Plaintiffs Wade, Grunberg, and Wilson sent in the middle of the night were the norm. All of these erratic communications have a few things in common:   most of these emails profess that God or the Almighty was commanding his actions; many were stating his refusal to pay the Plaintiffs "one thin dime;" and virtually all were abusive.

112.

Defendant Wood's behavior continued to deteriorate, including assault and battery on Wilson in Defendant Wood's home after he had traveled there to check on Wood. In the Fall of 2019, Defendant Wood also committed assault and battery on Grunberg in an elevator of a hotel during an out of town deposition.  In both assaults, there was essentially no reason whatsoever for the attack, and Defendant Wood later acknowledged and apologized for this violence.

29

Exhibit N

113.

Defendant Wood, himself, acknowledged during late 2019 that his behavior was abusive on October 2, 2019, when he e-mailed Plaintiffs Wade, Grunberg, and Wilson, stating, in relevant part, "The Boss, Pops, Lin, Asshole – whatever you wish to call me – knows that I have allowed a combination of pressures over the past many weeks, if not months, to become justifications for treatment of each of you, to varying degrees and at various times, that can only be described as rude, overly demanding, and at times abusive."

114.

Unfortunately, that acknowledgement changed nothing and his behavior toward Plaintiffs Wade, Grunberg, and Wilson continued to worsen.

115.

On February 10, 2020, Defendant Wood contacted Plaintiffs and begged for them to come to his house around 1:00 am, which Plaintiff Grunberg and Wade did.  Once there, Defendant Wood urged them to stay with him until morning, with Plaintiff Grunberg leaving at approximately 4:30 am and Plaintiff Wade leaving after sunrise.  This experience unnerved the Plaintiffs.

116.

That day, Plaintiffs Grunberg and Wilson confronted Defendant Wood about his behavior.

117.

Even at that early juncture, Defendant Wood immediately threatened Plaintiff Wilson that leaving his firm was "professional suicide" and threatened not to pay Wilson the money he was owed for his work in the Disputed Case, stating as follows:  "let me tell you what's gonna

Exhibit N

happen to you … watch what happens with the [Disputed Case] fee. I'll show you what I think of what you've done to me."

<center>118.</center>

That evening, Defendant Wood called Plaintiff Wade and, during a call that lasted approximately two hours, Wood advised Wade that he was going to destroy Plaintiffs Grunberg and Wilson. During this conversation, Defendant Wood could not help but revisit his obsession with Plaintiff Wilson's wife, stating: "by the time I am through with Taylor Wilson, he's going to wish all I had done was fuck his wife."

<center>119.</center>

On February 11, 2020, at 1:03 a.m., Defendant Wood e-mailed Plaintiffs Wade, Grunberg, and Wilson, firing the Plaintiffs and changing the firm, while insisting that Plaintiffs had the "fiduciary duties" of partners, stating, in material part, as follows[2]:

Taylor, Jonathan, and Nicole,

**Effectively immediately**, the law firm of **L. Lin Wood, P.C.** hereby withdraws from any and all law partnerships with your law firms and you, including, but not limited to the partnership of Wood, Wilson, Grunberg & Wade….

I want Taylor and Jonathan physically out of my office space as soon as possible. I am willing to be more lenient with Nicole but I want the physical separate of the lawyers from 1180 West Peachtree St., Suite 2040 executed with <u>no</u> delay....

I request that each of you provide me with a list of outstanding cases of LLW PC on which you are presently working…. I would like from each of you the number of hours (with description) you each have expended on the [Disputed Case]. Hours on the pending [redacted] can be submitted separately by end of week. If you have any other [redacted] hours … please include them with some reasonable detail by the end of the week….

---

[2] To protect the privacy of many third-parties, Plaintiffs will not be tendering copies of Defendant Wood's e-mail correspondence and other communications with this Complaint but provide as much context as is appropriate in each quote.

<center>31</center>

<div align="right">Exhibit N</div>

In meantime, I remind you of **the fiduciary duty of non-disparagement** which shall be strictly enforced. You are hereby prohibited from contacting any of my clients, referring attorneys or co-counsel without my specific written authorization….

(Emphasis in original).

120.

Plaintiffs Wade, Grunberg, and Wilson began moving out of Defendant LLW PC's office space on February 11, 2020.

121.

By the afternoon of that same day, February 11, 2020, Defendant Wood had completely changed his mind and left voicemails for each of Plaintiffs Wade, Grunberg, and Wilson, rescinding his withdrawal from their partnership and their eviction from his office space. For example, Defendant Wood stated in part in a voicemail to Plaintiff Wade:

. . . This law firm is going to go forward as Wood, Wilson, Grunberg & Wade. Business as usual is back now being business as usual. Keep doing what you're doing on the cases you're doing. I don't need your hours in the [Disputed] case – I never have. No reason to do it now except in billable cases. . . . We are going to continue as a partnership. A partnership under that name that is going to be one of the great partnerships in the history of the law. . . . I'm going to ask you to do the big word "T." Trust me. . . . I'm going to let God's will be done for our law firm. . . Everything I said in that letter last night is rescinded.

122.

Plaintiffs Wade, Grunberg, and Wilson decided to give it one more shot in the hopes of helping Defendant Wood and in the hopes that the work environment would return to status quo.

123.

On February 13, 2020, the day before all 5 people who worked for Defendant Wood at Defendant LLW PC terminated their employment, Defendant Wood hosted an approximately 3.5 hour teleconference with Plaintiffs Grunberg and Wilson in which he spoke almost non-stop.

Exhibit N

124.

During the 3.5-hour teleconference, Defendant Wood referred to himself as Almighty; offered to fight the individual Plaintiffs to the death; demanded the Plaintiffs' undying loyalty; threatened to "hurt" the Plaintiffs; offered to have the Plaintiffs stay in the firm; and called Plaintiff Grunberg a "Chilean Jew" and demanded that he admit he does not look like the other lawyers in the firm.   Unfortunately, the list goes on, as reflected by the following pertinent portion of the transcript of the call (except as indicated by brackets and double quotation marks, the words are Defendant Wood's):

… I own that office.  Y'all know that now.  I showed you who had power, didn't I?  But I didn't exercise it.  Cause I right now would never do anything in the exercise of my power do anything to hurt any of y'all or your families.  Do you believe me?  Cause if you don't believe that, this conversation is over. It will not be a problem solved. If you tell me you believe that, and I just showed you that, by not hurting you, by **showing you who had the power to hurt ya, to hurt your families, to hurt your law careers**, and didn't exercise it, yes or no, let's get a vote. Taylor, does everyone in that room believe, believe, choose to believe, that Lin Wood would never exercise his power in a fashion that he knew would hurt any one of you, personally or professionally, including your families, and your legacy as a lawyer. Yes or no, guys, gal?   [Said by Wilson] "Lin, I certainly."  I just wanted a yes or no, I didn't ask for a discussion, and I own that office and if you don't do what I say this time, you're gonna pack your bags, that's how much power I have, I don't wanna exercise that power, it would hurt you, don't force me, that's the point.

I'm telling you I have the power to hurt you and would never do so, and if you don't believe I have the power to hurt you, you are wrong. I can hurt you the minute I take you off that name [Wood, Wilson, Grunberg & Wade].  That will be a bad stain on your life, and if you try to hurt me back, you will be laughed at.  Anybody in this law office that attacks Lin Wood may be right, but everybody's gonna disrespect you for doing it. There's a time to speak.  There's a time to be silent.  You people don't know the difference….

Now, would you accept this kind and loving admonishment.  I could have thrown by my own free will every damn one of you out of my law office, off of the damn

Exhibit N

letterhead with my name on it, and Nicole is included, by doing one of two things, I could have pulled my name off that door in a heartbeat if I wanted to … I could have pulled all three of your names off of that damn thing and it would just be me, if I wanted to I'd have the power to do it, right? …

. . . If you keep showing me disrespect, Jonathan, there's gonna be a man come up there in your office … but if you ever don't give me respect in that office, knowingly … but if I ever discern that I think you are disrespecting me in that law office, that little man or woman is gonna come up in ten minutes and they're gonna throw your ass out. Do you understand, whether you agree with it or not, you concede that I have the power to do it. Do you understand what's gonna happen to ya if you ever, if I ever discern that you show me an act of disrespect again? … if you [interrupt me] in a disrespectful way, in my judgment alone, any one of the three of you is gonna be escorted out of my law office within ten minutes … they're gonna take you out and throw you on the street if they want to … do you understand what I'm telling you? Cause if you don't we got a problem. You hear me? Does everybody hear me? Now I'm gonna tell you something very surprising, y'all just heard from the Almighty Lin and it sounds powerful and you believe it don't ya? … Almighty Lin just told you what would happen if he thinks you ever, in his opinion, discerns that you're being disrespectful to me by anything other than an accident or mistake, he's gonna throw you out. Ya hear me? … Now Almighty Lin's gonna tell you this … the power that I just had can change your life if I ever decide … even if it's good or bad, I can change your life with the exercise of that power, right? …

I'll commit sins. I'll [physically] push you when you piss me off. Maybe you deserve it and I'm the only one that will inflict it upon you because I'm the only one that has the courage to tell you the lesson you fucked up don't do it again. Swear I'll never do it again to either one of you, although interestingly I've done it to both of you at once. I'll never do it to you again. Don't ever do anything that would even make me think about doing it again. Cause I might make the same mistake then that I made then, I might push you and I wouldn't mean to hurt you. I wouldn't mean to push you around, especially cause either one of you would whip my ass *or maybe you wouldn't cause you don't have the courage I have. Maybe I would fight you till you damn die. Or both of us died*. Cause I got courage inside of every bone in my body that you'll never know. I wish you had it. I wish everybody had it. Everybody doesn't have it guys. You're practicing law with a man that has courage, to take on the big ones….

The best man you'll ever see in life won't be your daddy, Taylor. It won't be your daddy, Jonathan. It won't be your daddy, [redacted]. The best damn man

Exhibit N

you've ever met in life is Lin Wood. Don't you forget it…. ***Or just plain member of one damn law firm, like we all are….***

One nation, one law firm, one law firm, under law, all members are created equal. ***All members of this one law firm are the same….***

125.

By the date of the 3.5-hour teleconference on February 13, 2020, Defendant Wood had effectively not been in the office for weeks since a December 2019 trial—with the exception of several brief appearances at the office. And from the time that Defendant Wood and Plaintiffs Wade, Grunberg, and Wilson traveled to and attended a hearing out-of-state in mid-January, the only time any of the Plaintiffs had seen Wood was when he assaulted Plaintiff Wilson on January 27th and when Plaintiffs Grunberg and Wade were called to his home in the early morning hours of February 10th when Defendant Wood called them over saying it was a matter of life or death. Defendant Wood spent most of this period outside of Atlanta.

126.

All of LLW PC's cases were being handled primarily by one or more of the individual Plaintiffs, who coordinated with third party co-counsel. And LLW PC had active co-counsel outside the firm in every active case as of February 14, 2020, all of whom were on notice when Wade, Grunberg, and Wilson left the firm.

127.

Defendant Wood called for an in-person meeting on the morning of February 14, 2020.

128.

In the hours preceding this February 14 meeting, Defendant Wood repeatedly called Plaintiffs Wade, Grunberg, and Wilson, berating them, and also threatening them with alleged

Exhibit N

civil claims arising from their purported fiduciary duty *as his law partners* not to disparage him, although he failed to specify what words or actions he felt were disrespectful.

129.

Plaintiffs Wade, Grunberg, and Wilson – together with the only other two employees of Defendant LLW PC – all walked out of the LLW PC offices prior to Defendant Wood arriving out of fear for their physical safety.

130.

All five were forced to terminate their employment and association with Defendants on February 14, 2020.

131.

Immediately thereafter, Defendant Wood asked building security to escort all five out of the office, and he then changed the locks to the Leased space.

132.

At this point, Defendant Wood began a series of irrational and incomprehensible email, text, and voicemail threats. All of these emails, most of which are sent in the middle of the night, have a few common themes: False and manufactured accusations that Plaintiffs did some heinous federal crimes that he has chosen not to identify, Defendant is doing God's will, and Defendant will never pay the Plaintiffs anything, while reiterating nonetheless that the individual Plaintiffs were his law partners.

133.

On February 15, 2020, at 1:42 am, Defendant Wood e-mailed Plaintiff Wilson and 13 others, stating again that he felt he had somehow been victimized by some unspecified action

36

Exhibit N

which required him bringing down the "wrath of God" and referencing punishment "at the discretion of Almighty God."

<p style="text-align:center">134.</p>

Two hours later, at 3:45 a.m., Defendant Wood e-mailed Plaintiffs Wade, Grunberg, and Wilson, as well as 9 others, to continue his incoherent allegations and his belief that God was somehow commanding him or directing him to accuse the Plaintiffs and repeating his threat never to pay the Plaintiffs anything for their services. He began the email by stating "God has given me permission to be profane in this email, which is my last email of the night," and additionally stating, in material part, as follows:

> You damn dumb motherfuckers.
>
> You have now subjected yourselves and your families to the fact that you are all guilty of federal crimes. And you are going to be ruined financially, if necessary, in civil and criminal lawsuit. You committed computer fraud today and possibly bank fraud. Your lies and fraud upon law firms and your employers are going to come back quickly to haunt you for the rest of your lives.
>
> You fucked with the wrong guy. You fucked with Lin Wood. Bad fucking choice.
>
> Here are the findings of your final judgment day on earth for today, the day after my Valentine's Day massacre:
>
> Taylor, *you're not going to get one thin d[i]me from me on any case*. That includes [cases subject of the Settlement Agreement, including the Disputed Case]. Sue me. You will lose. You can tell your co-conspirators, Nicole, Jon[a]tha[n], [redacted] and [redacted]. All the damn criminal conspirator wars who deleted emails and Word documents related to the [redacted] and [redacted] cases are in fucking serious criminal and civil exposure…. You are all dumb as hell. I am not. I will be setting up a meeting next week with the US Attorney for the Northern District of Georgia. He will meet with me. He knows who I am. You apparently never did…. Nobody fucks with me and [redacted]. You have been all been playing your Bullshit games of lies for too long. Too long is too

<p style="text-align:center">37</p>

<p style="text-align:right">Exhibit N</p>

long. Always has been. Always shall be. *God Almighty told me to get you back to where you belong. Broke and essentially homeless….*

The fact that you, Taylor, involved innocent people like [redacted] and maybe even [redacted], *is going to haunt you and your wife and your children for the rest of your lives on earth.* Shame on you. You are disgusting….

You all better get on your knees and pray to Almighty God that He now asks me to show you mercy. If he does, I will show it, if he does not, *I will deliver a fiery judgment against you on earth.* Who the fuck did you think you were dealing with? You were screwing around me with, but I was someone else in disguise. You in fact have been screwing around with God Almighty. I am not God. You lied when you told others that I thought I was…. I am L. Lin Wood – the sole member of L. Lin Wood, P.C. The architect of the most masterful and powerful Valentine's Day massacre known in American history. *The last one **killed** seven. Mine will **ruin** many more before it is over.* Deservedly so.

You are the ones who are crazy, not me. You are all the fools, not me. You are all driven by fame and fortune, not me…. You are going to have to spend every day for the rest of your lives on earth by your every act and deed proving to God that you are genuinely sorry for the sins you have committed against HIM. I'm not going to waste anymore time listing your sins. You know them. God knows them….

Buckle up your damn seatbelts. Unless I change my mind under the instructions of God, you are in for the roughest ride of your lives. *I'm going to teach you all a lesson that you are going to learn….*

I shall sleep well tonight even though I'm writing a bunch of crazy people at a crazy person's hour. I live on God's time clock. This sane man had a lot of business to conduct tonight. Business that God Almighty exposed to him and told him to expose to others.

I bet it's going to be a long, long time before any of you ever sleep well again. Taylor, you are a damn pussy. You didn't even have the balls to show up for your little meeting that I already knew you were going to try to have before you had it….

Good night. I know you will not sleep well.

38

Exhibit N

PS:  Taylor, tell all of you damn co-conspirators that their asses are in criminal and civil liability trouble.  Be sure to tell Jonathan and Nicole.  I listened to that damn blowhard Jonathan run his mouth.  At midday, silently.  Because I knew that I was getting ready to slam his ass deep into the ground with [when] my time came.  My time came.  His ass in trouble and this time, *he will not land on his 2 feet* [a reference to Plaintiff Grunberg's handicap after he had a rock climbing incident falling from more than 40 feet in the air resulting in several surgeries and permanent disabilities].  He will be on his damn two knees begging me and Almighty God for mercy.  ***They will never get a dime from me. I dare you to sue me for it***.  You don't have the balls to do it and if you do it, you shall lose and in the process, lose more of your damn asses if there's anything left of your assess after I finish with your assess tomorrow if you don't call [redacted] and beg for mercy like damn dogs begging for a damn piece of meat after not eating for 3 months.  I think my message is clear.  God has now asked me to refrain for the rest of this night and tomorrow from further profanity.  I shall always follow my God's's will and never anyone's on earth, including mine.

Last word, if any of you get within missile range of my office or home, I will have you arrested.  You make one more threat, at false accusation or attempt to interrupt me and as far as I'm concerned, you can all rot to hell in jail.

You know me, always one more last word…. It's not going to be pretty for you.  Fraud is never pretty.  Ask Michael Avenatti. Never has been. Never shall.

Good night.

L. Lin Wood

(Emphasis added).

<div align="center">135.</div>

Plaintiff Wilson responded respectfully on February 15, 2020 at 8:15 a.m., denying Defendant Wood's fantastical accusations and conspiracy theories.

<div align="center">136.</div>

Defendant Wood responded, again copying the 9 additional individuals, stating, in material part, as follows:

<div align="center">39</div>

Exhibit N

Keep lying. USDOJ shall be checking ALL computers. I know liars. You been lying ever since your yelled at me and accused me of being insane. Liar.

You miserably lying sack of shit. You low life lying snake….

You are ALL in trouble. Big trouble. Computer fraud. Conspiracy to commit computer fraud. Violation of fiduciary duties. Conspiracy to violate fiduciary duties. Slander and defamation. Conspiracy to slander and defame. Conspiracy to interfere with my business relations, including clients and co-counsel. I think you are in more criminal and civil trouble than the former big mouth, Michael Avenatti.

Your time would best be served on your knees telling me you are sorry….

Best outcome for you in eternity Is Hell for repeatedly interfering with God's commandment to children to honor their father.

*I will make sure that you never practice law again ever if you do not admit your sins*, all of them by 10:30 am. Extensions grants each quarter hour thereafter depending on the amount of truth you tell me with each email. Start with admitting your lies.

Tell the truth or suffer through full pains thereafter….

I want those facts by 10:30 AM. *If you want to have a chance to save your future for your career, yourself and your family*. You better come clean and tell the truthgiver the truth starting NOW.

I am going to learn that information in a criminal case involving you if necessary. I am going to learn that information from you in a civil case involving you that is an almost certainty. Your best chance for mercy from L. Lin Wood is for you to start pouring the truth on me regarding information on [redacted]/[redacted] by 10:30 AM this morning. *Save your child. Save your wife. Save your life*….

Your are doing to want a major dose of mercy from me. The sooner you come clean, the better. The longer it takes, the worse….

(Emphasis added).

40

Exhibit N

137.

On February 15, 2020, at 2:18 pm, Defendant Wood left a voicemail for Plaintiff Wilson

stating, in material part, as follows:

> Taylor Wilson, your *former partner*… You're lucky you and I share something in
> common: I care about and love your wife, I care about and love your little
> boy. Right now, I don't give a damn about you. But if I hurt you bad enough, it's
> gonna hurt them. I don't wanna hurt you, Taylor…. I want you to tell me in an
> email in 15 minutes who in the hell asked for those computer files to be deleted. I
> think it was Jonathan Grunberg. I think he did it because [redacted] wanted it
> done… I'm going after [redacted]. I've already gone after [redacted]. . . . I'm
> going to get [redacted]. I don't want to get you cause it will hurt your wife and
> your child. Send me an email and just tell me the truth without getting a lawyer,
> without trying to cover your ass …

138.

After leaving voicemails for Plaintiff Wilson and Grunberg stating that he felt that

Plaintiff Grunberg was the chief force behind these unspecified criminal acts, on February 17,

2020 at 12:17 a.m., Defendant Wood left a voicemail for Plaintiff Wilson stating, in material

part, as follows:

> Taylor, I hate to call you at 12:14 am because it's the act of a crazy man, but it's
> not son. You need to watch out for Nicole Wade. She would be the person that
> would go in and get this information. She's evil…. [Redacted] was sent here by
> [redacted].... The FBI is going to be involved tomorrow. There's going to be
> some serious stuff going down. Watch your ass. I'm telling you. Watch out for
> Nicole Wade… You don't want to be unwittingly involved in a federal
> crime. [Redacted] could go to jail for the rest of his life…. If I'm right about
> Nicole, she's gonna come crashing down. She'll try to take everybody down that
> she can. I know Nicole Wade… He's gonna be in federal trouble because the FBI
> is on it. I don't want you to get hurt, Taylor… I love you. This is the time to
> understand that Lin Wood really loves you. Cause I'm trying to give you
> information to protect you and your family. You got some thieves and criminals
> around you. Don't get involved it in OK...

Exhibit N

139.

That same day at 6:16 a.m., Defendant Wood sent to Plaintiff Wilson and 8 other individuals an e-mail stating, in material part, as follows:

> All,
>
> Attached is the IC3 Complaint Referral Form I filed with the FBI this morning related to [redacted] and his co-conspirators this morning….

140.

In Defendant Wood's FBI complaint alleging federal crimes, Defendant Wood refers to Plaintiffs Wade, Grunberg, and Wilson as "***one or more former members of my law firm of L. Lin Wood, P.C.***" (Emphasis added).

141.

Defendant Wood followed up with another voicemail to Plaintiff Wilson on February 17, 2020, at 7:18 a.m., stating, in material part, as follows:

> . . . You have damn fucked up your life. Shame on you. Your wife, your kid. I take back everything I said nice about you. You better get the word, that somebody better call me, and somebody better get over to my damn house, and tell me what the hell the truth is about what y'all did…. I'm gonna burn your asses. Y'all fucked up. Shame on you…. You're a son of a bitch, Taylor Wilson. And you gonna rot in hell when I'm done with you, buddy, you got that? Pass that message to every damn one of them…. *All of y'all are going down*…. Goodbye sir. Get me the name of the person that's gonna get me the damn truth about this and they better call me in 30 fucking minutes. You hear the rage? *You ain't seen nothing yet, buddy.* Goodbye.

142.

Defendant Wood followed up with another voicemail to Plaintiff Wilson on February 17, 2020 at 7:23 a.m., stating as follows:

> Let me tell you something you little snotty ass son of a bitch. Don't write me back and tell me you're taking care of your son. Your son's looking into the eyes of a damn low life, cheating, lying, probably criminal defendant. How could you

Exhibit N

do this to your family, Taylor? The FBI's not gonna play around. You've all engaged in computer fraud. I don't give a damn whether you did it or if Nicole did it. I know who did it, and you got [redacted] involved in it. You've ruined everybody's life. ***You're not gonna get one thin dime from me***. Sue me. I don't think they allow you to file lawsuits like that when you're behind bars. Somebody better call me, put their baby down, and give me the damn truth if there's gonna be any mercy shown by anybody for you, including the FBI, cause I'm one of their number one witnesses. [Redacted] is going to jail. Don't go with him. Quit playing your games ya snotty ass little bastard, you came in here and ran your damn mouth in my office and yelled at me. ***You're lucky I'm not with you right now, Taylor, cause I'd do to you what I'd do to* [redacted] *and I'd beat your ass with a switch till you couldn't sit down for 20 fucking years.***

143.

Also on February 17, 2020, Defendant Wood left a voicemail for Plaintiff Grunberg

stating, in material part, as follows:

I'm gonna be a little calmer with you than I have been with Taylor and [redacted] on their voicemail messages, Jonathan Grunberg, you sorry slimy piece of shit. How do you look at those babies? I've got it all, I know what y'all been doing. But here's your problem, you teamed up with [redacted], he's going to federal penitentiary, I'm afraid y'all need criminal defense attorneys, in fact I know, I've been up all night dealing with this, I've locked it all down…. The FBI's gonna be knocking on your door, Jonathan. You need to go get a criminal defense lawyer. Somebody *in that damn former piece of shit firm I had* better get on the phone and tell me the damn truth so I can tell the FBI that at least somebody's gonna be good to them and cooperate. You got in bed with [redacted] and you manufactured shit from [redacted]…. In the process, you look at those two little babies, you hurt them. You look at your wife, you hurt her. ***You're not gonna get one thin dime from me about anything***. You might even get sued by me. What the hell were you thinking. Man oh man, ***you're glad you're not with me in an elevator with me right now buddy*** [referring to his prior battery of Grunberg], cause you're damn lucky, I'm that mad…. That's how serious it is you little fucker. You look in the mirror and you're gonna see **a Chilean Jewish fucking crook**. Goodbye, Jonathan … you sorry bastard.

144.

Then on February 18, 2020, at 8:20 a.m., Defendant Wood recanted every one of his accusations in an e-mail to Plaintiffs Wade, Grunberg, and Wilson, along with 18 other individuals, subject "Correction and Retraction of False Accusations," stating, in material part, as follows:

> I know that I am generally recognized as an experienced and skilled lawyer in the area of First Amendment defamation law. I am also by my own admission, fully capable of being a dumb ass or worse. Given some of my recent emails and the filing of a IC3 Complaint Referral Form [with the FBI], the latter description may be more applicable to me than the former….
>
> *The primary purpose of this email is [sic] correct and retract some very hurtful and false accusations that I recently made against [redacted], [redacted], [redacted], [redacted], and* **my current law partners** *and employees.* In the worse example of a defamer, I published accusatory statements with incomplete information and out of anger, coupled with a tried brain and body….
>
> **Allow me to make clear that in all of the recipients of this email, there is not a dishonest or criminal bone in any of their bodies**. I say this unequivocally and in direct contradiction to any suggestions or accusations or statements that I may have made against anyone on this email. In recent days. My legal career has been one of pursuing for truth and achieving justice which I define as providing fairness and respect to all within our legal system. The recent emails to which I refer are the worst examples of the failure by an individual – ME – to pursue truth and achieve justice. My statements against the identified individuals were not true and inflicted an injustice upon them, and all of the recipients[.] In addition to asking for your forgiveness, I want to make it very clear that **the individuals who were falsely accused are innocent of any wrongdoing** and are encouraged to seek any further remedies against me for my wrongdoing, which they feel are appropriate or necessary.
>
> With the help of [redacted], [redacted], [redacted], and individuals identified by [redacted], I have now completed an examination of my office computer system, and while my office computer system was hacked, **no accused individual was involved in any manner in that improper and illegal activity**. After careful examination, no office emails have been deleted or otherwise altered in a manner that was not intended by authorized users of my system. If I had bothered to

44

Exhibit N

undertake the complete examination prior to making my unfounded accusations, I would never have made the accusations against the individuals….

For the past several months, particularly since Thanksgiving, I have been besieged by a variety of individuals, all of whom I love dearly with their own concerns about my mental health and my relationship with [redacted]…. Sadly, I did not serve well the best interest of my [redacted] and making my false statements and accusations against others. I can only hope and pray that my stupidity serves as a shining example to them of why statements should always be investigated before published and should never be made out of a state of mind that might alter reality. I have assessed my mental health and spent some time with [redacted] discussing it. I am a little crazy, but I'm also mainly sane and possess a healthy mind….

I love each and every one of individuals on this email and I love and respect [redacted] as a law firm. I hope and pray *that my own law partners* at the present time and all of the individuals who serve me so well at my firm will be willing to forgive me and continue to practice with me in the profession I love dearly and have loved for 43 years…..

(Emphasis added).

145.

Unfortunately, three hours later, Defendant Wood changed his mind again. On February 18, 2020 at 11:38 a.m., Defendant Wood e-mailed co-counsel in the Disputed Case stating, in material part, as follows:

[Redacted],

Please inform your firm members that Taylor is NOT to be copied on any other emails on any [Disputed Case] matters. *He and the former members of my firm* will not be working on any of the other [Disputed Case] in the future. We have reached a binding agreement on other cases *so their transfer out of L. Lin Wood, P.C.* will be smooth going forward despite the recent bumps….

*The former members of my firm* are now off to a new and exciting adventure of their own….

(Emphasis added).

Exhibit N

146.

The very next day, at midnight, Defendant Wood changed his mind yet again. Following this e-mail, on February 18 and 19, 2020, Defendant Wood made multiple requests to Plaintiff Wilson for the individual Plaintiffs to return to work.  Wilson, continuing to try to avoid Wood's wrath, politely declined to return to work at Defendant LLW PC.

147.

After Plaintiff Wilson again refused to return to work at Defendant LLW PC with Defendant Wood, Wood left Wilson another voicemail on February 19, 2020 at 6:29 p.m., in contradiction to all other prior statements he had made, contrary to the Lease for the LLW PC office space, and contrary to the Parties' February 17 agreement, stating as follows:

> Taylor, hey buddy, give me one call back tonight, cause I'm close to making a decision.  [Redacted] is not coming back, and I that's a good thing, I think that I need a clean break.  And, I don't want to stay in that space and I don't need to cause I don't need the space as much as y'all do, and that means y'all gotta pick it up or pay three quarters of the lease.  Y'all are indemnitors on that, each one of ya individually.  I'm the, the L. Lin Wood, P.C., is the leaseholder, and then our liability is a fourth, a fourth, a fourth, y'all signed it, so you've got three quarters of the liability for that space.  I figured under that scenario, y'all would wanna come up and take the space, strike a deal with me, I'll pay my quarter but I'm not gonna pay it up front, I'm not gonna pay it over the months, we'd have to kind of present cash dollar it down. Or, if you don't do that, Taylor, and I'm stuck with that lease, **_I'm gonna have to hold every dime of your [Disputed Case] money against your liability until the end of that lease_**.  So, it's easier for me to move out, which I'd like to do, candidly, Taylor, and for y'all to stay in there.  That may be the win-win.  So, give me a call and let me know what you think.  Bye bye.

148.

Defendant Wood left a similar voicemail on February 19, 2020, for Plaintiff Grunberg, threatening that he would hold Plaintiffs liable on the Lease for which they are not, and never

46

Exhibit N

were, liable, and that he would withhold the money he agreed to pay in the February 17 agreement until the Lease was satisfied.

<div align="center">149.</div>

Defendant Wood then e-mailed Plaintiffs Wade, Grunberg, and Wilson on February 19, 2020, at 8:01 p.m., along with four other individuals, stating, in material part, as follows:

> Nicole, Jonathan, and Taylor:
>
> … As Nicole has heard me say before, ***I do not intend to pay you "one thin dime" in satisfaction of your legal obligations***….
>
> *Until the matter is resolved between us and the building, I do not intend to make any payments to you on fees owed to you in any case.* I will escrow the amount that I agreed to pay you until I am satisfied that my escrow account has covered me for your amount of the entire remaining lease obligation and other legal liabilities you owe to me for your misconduct….

(Emphasis added).

<div align="center">150.</div>

Even after recanting all of his false and malicious accusations against Plaintiffs Wade, Grunberg, and Wilson, one day later on February 19, 2020, at 8:01 p.m., Wood again accused Plaintiffs of unspecified acts, referring to himself as "their partner" and threatening to hurt them "in the court of public opinion."

<div align="center">151.</div>

The next morning, Defendant Wood had changed his mind again and wanted to profess his love for Plaintiffs. On February 20, 2020, Defendant Wood left a voicemail for Plaintiff Grunberg stating, in material part, as follows:

> Jonathan … I want y'all to come over to my house tonight. I don't want another night of this nonsense that y'all have created. If ya wanna go to war and you think you're gonna beat me, you're gonna lose. I got ya every which way, coming and going…. The last thing you wanna do is start off your law firm,

<div align="center">47</div>

<div align="right">Exhibit N</div>

before you even get started *getting crushed by me, and I got the power to do it*….
I've been two steps ahead of you at every damn…. I love you, I love your family,
I love your babies….

152.

That same day, Defendant Wood emailed again to profess his love, and this time to make

a variety of threats, all based upon his desire to get Plaintiffs to help him pay for his Lease.

153.

Defendant Wood followed up with another voicemail to Plaintiff Wilson on February 20,

2020 at 6:59 p.m., stating, in material part, that Plaintiffs had to pay for the Lease and he

threatened to drag out any claims or suits for any amounts that he owed Plaintiffs:

> Taylor Wilson, man oh man, it's your old boss, the guy you love one minute, test
> one minute, love one minute, test one minute. Taylor, you're in a damn mess, and
> you know it, and if you don't, you're gonna talk to a lawyer and you're gonna
> know it then.
>
> This is not the way to start your law firm, Taylor. Here's what we're gonna
> do. You're gonna get off your ass and put your pride aside, and you're gonna
> come over here and you're gonna talk to me. And I'm gonna tell you exactly what
> I'm willing to do to get y'all out of the mess you got yourselves in with your
> damn foolishness. *You're playing with fire when you come after Lin Wood*.
>
> [talking to himself] "Now stop being mad, Lin. Okay, God."
>
> *Taylor, I don't want to hurt you guys, but you've set it up where I could destroy*
> *you before you even got your foot off the ground.* You can't pay for a
> lawyer. You can't afford to litigate with me and you're gonna lose, cause you
> owe 75% of that lease to me. Not a guarantor, you signed on that for me. I'll pay
> the building, and then I'll hold your money until I litigate it with you….
>
> If you wanna sit down, Taylor, with me, I'll be humble, you'll be humbler. We'll
> talk about what you did wrong, we'll talk about how you're gonna fix it. And I'm
> gonna fix it, cause you did just about what I thought you were gonna do. I'm
> always one step, two steps ahead of everybody. I see around corners, Taylor.

Exhibit N

Now why don't you come over and talk to me, it won't take an hour, and we'll settle this mess that y'all created? … *But if you wanna go to war, you wanna bash egos with me, you wanna do your free will versus mine, you're gonna lose and it's gonna affect your family and your baby boy,* and I'm not gonna let that happen if I can avoid it.  If it happens, it's gonna be on your watch, not mine.

So, please, Taylor, stop the foolishness.  Come talk to a man that loves you, that wants you to succeed, that's taken a lot of abuse from you but at every turn has reached out and tried to get you to do the right thing.  You're gonna be able to practice law with your people, you're not gonna have me around much to worry about, I'm gonna get out, I wanted to get out, I wanted to be by myself … everything's together, everything in your life is not.  Call me, bye.

<div align="center">154.</div>

On February 22, 2020, at 5:07 a.m., Defendant Wood e-mailed Plaintiffs Wade, Grunberg, and Wilson, and their counsel, stating, in material part, as follows:

[Disputed case] – As you were informed by [redacted], he will deposit … the [Disputed Case compensation] into his firm's escrow account.  [The client], not me, control the amount of fees to be paid to WGW, and the clients **will only agree at best to pay to WGW quantum meruit for services** strictly related to the [Disputed Case] *which will be very difficult for WGW to calculate*….

(Emphasis added).

<div align="center">155.</div>

On February 22, 2020 at 7:29 p.m., Defendant Wood e-mailed Plaintiffs' counsel and a third party stating, in material part, as follows:

… If I am right, and I and others believe I am, further discord, disagreement, or even God forbid, litigation *will destroy the chances your clients have if [sic] building a successful and financially viable law firm*….  With respect to the [Disputed Case], your client will have to submit to me their actual hours worked on the [Disputed Case] and Their proposed hourly rate.  Taylor can include any hours that he feels were reasonably dedicated to [the Disputed Case] when he began his initial [work].  ***To be clear, I will not pay Nicole Wade any money on the [Disputed Case].***  So only Jonathan and Taylor need to bother will [sic] compiling and submitting to you to provide to me their actual hours worked or their best estimate of them….

<div align="center">49</div>

<div align="right">Exhibit N</div>

(Emphasis added).

<div align="center">156.</div>

On February 25, 2020 at 4:51 a.m., Defendant Wood e-mailed Plaintiffs' counsel copying five third parties, referring to Plaintiffs' counsel's first name on 66 separate occasions and otherwise stating, in material part, as follows:

> … Take whatever action you and your clients believe is necessary, Drew.  I will be prepared to respond with the full legal wrath and vengeance like an angry God, Drew….
>
> **One last matter, Drew.  I shall not voluntarily pay you or your clients one thin damn dime, Drew.**

(Emphasis added).

<div align="center">157.</div>

Shortly thereafter, Defendants engaged their current counsel.

<div align="center">158.</div>

Hiring new counsel did not stop Defendant Wood from contacting Plaintiffs in a threatening and abusive manner.

<div align="center">159.</div>

On March 3, 2020, at approximately 10:30 p.m., Defendant Wood called and left a voicemail for Plaintiff Wilson's wife professing his love for her and her family in a manner she found terrifying and stating, in material part, as follows:

> [Redacted] Wilson.  You've got a handsome little baby boy, I need to see him soon, I know I will.  Listen, I know I'm calling you, I'm not calling Taylor, I'm not supposed to.  You're gonna learn some things, Taylor's gonna learn some things in the next day or two, involving Taylor, Nicole, and Jonathan, and me and the lease.  It's gonna sound bad for him at first.  Bad for you.  I want you to know something, [redacted].  I told you I loved you.  I told you I loved your son, I love your husband, Taylor.  *I'm not gonna let anybody get hurt too badly*…. I think

<div align="center">50</div>

Exhibit N

Taylor Wilson's one of the best damn young lawyers I've ever seen. A lot of things about Taylor remind me of me. I meant it every time I told you I love you, I meant it then I mean it now. I meant every time I told Taylor I loved him, I meant it then I mean it now. Just relax, hang loose, it's all gonna be good, it's not gonna be good as everybody wants it to be on your side, his side, but it will be good in the long run…. We'll talk one day soon. It'll be when you decide to call me or maybe we'll run into each other, but we'll talk again and we'll be friends, cause I love you and you love me. That answers every dispute that we have in life, doesn't it? We don't have disputes, we're different. We're different but we're alike, we love each other…. I love you and you love me. I love Taylor, he loves me. We'll talk soon…. When you listen to this in the next day or two, you'll understand why. I see around corners before I cross the corner. Buh-bye, talk soon.

<p style="text-align:center">160.</p>

Throughout this entire ordeal, Defendant Wood has continued to text Plaintiff Wilson's wife, despite being instructed to stop by Plaintiffs' counsel multiple times.

<p style="text-align:center">161.</p>

On March 4, 2020 at 3:40 a.m., Defendant Wood made clear his intentions not to pay any amounts on the fee distribution agreement he had previously made with Plaintiffs on February 17 when he e-mailed Plaintiffs Wade, Grunberg, and Wilson, their counsel, and a third-party, alleging a series of unspecified criminal conduct in violation of their "fiduciary duties" and stating, in material part, as follows:

> ***In any event, you may rest assured that I shall never voluntarily pay your clients one thin damn dime***. Your clients shall be required to pay their 75% of the lease obligations even if they find themselves prohibited from engaging in the practice of law in the State of Georgia in the future….

(Emphasis added).

<p style="text-align:center">162.</p>

Two days after Defendants stated they would not honor the terms of the Settlement Agreement for the reasons stated herein, Defendant Wood texted Plaintiff Grunberg, again

<p style="text-align:center">51</p>

<p style="text-align:right">Exhibit N</p>

threatening criminal liability based upon his admittedly blatantly false and recanted conspiracy theory that Grunberg, along with Defendants' former law partners, somehow committed some unspecified criminal act involving tampering with his computers:



> The CFAA ("the Computer Fraud and Abuse Act") provides for fines up to $250,000 and imprisonment for as long as 20 years for individuals convicted under the act.
>
> Sorry, that last text was inadvertently sent to you. My apologies. - Lin
>
> 10 min

**Defendants' Conduct During Negotiations of Settlement Agreement**

163.

Defendants' fraudulent and malicious intent is also revealed by and through their drafts of the Settlement Agreement.

164.

Upon information and belief, when they entered in the Settlement Agreement, Defendants were intent on forestalling a lawsuit by Plaintiffs Wade, Grunberg, and Wilson that would reveal Defendant Wood's indisputable pattern of violent, abusive, and erratic behavior supporting claims for assault, battery, intentional infliction of emotional distress, and defamation. Defendant Wood had repeatedly voiced his concerns about his misconduct being disclosed as he feared it would interfere with his imminent receipt of the Presidential Medal of Freedom and appointment as Chief Justice of United States Supreme Court. The latter belief was based, in part, on (1) a decade-plus old "prophecy" Defendant Wood heard in a YouTube video, and (2) a conspiracy theory that Chief Justice Roberts would be revealed to be part of Jeffrey Epstein's sex trafficking ring and was being blackmailed by liberals to rule in their favor.

165.

More specifically, in reviewing Defendants' drafts of the Settlement Agreement, it is apparent that Defendants were always planning to find a way to "never pay one thin dime" and attempted to have Plaintiffs agree to a Settlement Agreement that would allow Defendants to renege on their covenant to pay Plaintiffs fee splits when the time came for performance, on the purported basis that client consent was required, by setting forth a false recital of their relationship as lawyers, fully cognizant of Georgia Rule of Professional Conduct 1.5(e) and its application.

166.

Defendants' first draft of the Settlement Agreement stated: "Nicole Wade, Jonathan Grunberg, and Taylor Wilson have never been law partners in L. Lin Wood, P.C. (hereinafter 'LLW PC') but have worked **with** L. Lin Wood, P.C. **by agreement on a case-by-case basis** while sharing office space since 2018." (Emphasis added).

167.

Plaintiffs objected to the above false description of their indisputable association with Defendant LLW PC. Plaintiffs Wade, Grunberg, and Wilson did not work with Defendant LLW PC by agreement on a case-by-case basis. Defendant Wood *never* handled any litigation solely by himself. Since 2018, if not earlier, every case for which Defendant LLW PC entered into an engagement was worked on by Plaintiffs Wade, Grunberg, and/or Wilson, all as lawyers *of* Defendant LLW PC. While Defendant Wood and Plaintiffs Wade, Grunberg, and Wilson would discuss which attorneys should work on which matters, Defendant Wood would direct Plaintiffs Wade, Grunberg, and Wilson what work to handle for what case, because he was their "boss."

Exhibit N

168.

When Plaintiffs objected, Defendants claimed that this language was there "for insurance purposes."

169.

Defendants then edited this recital to state: "Nicole Wade, Jonathan Grunberg, and Taylor Wilson have never held any ownership interest in L. Lin Wood, P.C. (hereinafter 'LLW PC') but, through Wade Law, LLC and Grunberg & Wilson, LLC, have worked **with** L. Lin Wood, P.C. **by general agreement on hourly fee cases** and **by agreement on a case-by-case basis on contingency fee cases** while sharing office space since 2018." (Emphasis added)

170.

Plaintiffs again objected to the above false language. The distinction between hourly cases and contingency cases was a complete farce, plainly intended by Defendants as a material representation of the agreement, a false representation of the parties' relationship, and plainly designed to allow Defendants to renege on their promises to pay fee splits.

171.

Defendants edited this recital again to state: "WGW never held any ownership interest in L. Lin Wood, P.C. (hereinafter 'LLW PC') but worked **with** L. Lin Wood, P.C. on cases and were held out as partners since 2018." (Emphasis added).

172.

Plaintiffs again objected to the above false language, questioning why – if Defendants insisted on a recital setting forth the facts and nature of their relationship with Defendant LLW PC – Defendants insisted on falsely stating Plaintiffs were anything but lawyers of Defendant LLW PC.

Exhibit N

173.

Defendants finally edited this recital a fourth time, arriving at the agreed upon language, which is the truth: "WGW never held any ownership interest in L. Lin Wood, P.C. (hereinafter 'LLW PC') but have worked as lawyers *of* L. Lin Wood, P.C. on cases since 2018." (Emphasis added).

174.

As demonstrated by the number of negotiations on this point, Defendants' agreement to this fact was a material representation inducing Plaintiffs to enter into the Settlement Agreement, as both parties knew this representation was integral to payment of fees under Rule 1.5 and liability for the Lease.

175.

Georgia Rule of Professional Conduct 1.5(e) "does not prohibit or regulate division of fees to be received in the future for work done when lawyers were previously associated in a law firm." Rule 1.5(e), cmt. 8.

176.

Because Plaintiffs Wade, Grunberg, and Wilson acted as lawyers of Defendant LLW PC at the time they performed work in the Disputed Case (and all cases subject of the Settlement Agreement), Georgia Rule of Professional Conduct 1.5(e) is inapplicable with respect to Plaintiffs' claim for breach of contract.

177.

Defendants always intended to take the position that Plaintiffs were not lawyers of Defendant LLW PC, including prior to, at the time of, and after executing the Settlement Agreement.

Exhibit N

178.

Defendants always intended to take the position that client consent was required and knew as counsel for the clients in the Disputed Case, that such consent would not be given, including prior to, at the time of, and after executing the Settlement Agreement.

179.

Defendants' intent prior to, at the time of, and after executing the Settlement Agreement was as they had repeatedly stated: never to pay to Plaintiffs "one thin dime."

180.

As set forth herein, Defendants thereafter and prior to executing the Settlement Agreement, including as early as their February 11, 2020 e-mail, repeatedly threatened that they would pay to Plaintiffs only quantum meruit for their work on the Disputed Case even though Defendant Wood had already agreed to pay Plaintiffs a fee comparable to his previous practice and procedure with respect to distribution of attorneys' fees in cases.

181.

After multiple settlement offers of quantum meruit were rejected by Plaintiffs, Defendants agreed to the terms of the Settlement Agreement, which required payment to Plaintiffs on a lump sum basis rather than a quantum meruit basis.

182.

However, Defendants attempted to draft the agreement in a manner that would allow Defendants to do exactly what they always intended to do despite their express agreements to the contrary in the Settlement Agreement that (1) Plaintiffs were acting as lawyers of Defendant LLW PC and (2) Defendant LLW PC would pay to Plaintiffs the agreed sum: never pay to

Exhibit N

Plaintiffs "one thin dime," except possibly as quantum meruit as Defendants, or purportedly their clients, determine is appropriate in their sole authority.

<div align="center">183.</div>

Moreover, despite the Settlement Agreement not containing a single provision requiring the payment of any money by Plaintiffs to Defendants – providing instead that Defendants would pay a lump sum to Plaintiffs after withholding the Lease payment (stating, "LLW PC shall pay the stated portion of said fees … to WGW, minus the lease amount referenced in Section 2 below," which itself provides that "[t]his amount [for the Lease] shall be deducted from the payment by LLW PC to WGW referenced" above) – Defendants took the position that they both get to keep the fees they were supposed to pay to Plaintiffs *and* Plaintiffs had to pay to Defendants the Lease payment, i.e., Defendants would not be paying Plaintiffs "one thin dime."

<div align="center">184.</div>

In summary: (1) after months of repeatedly reiterating that Plaintiffs were partners and otherwise associated in Defendants' law firm LLW PC, falsely accusing Plaintiffs of various crimes, threatening them with various fantastical civil liabilities, making up various acts allegedly committed by Plaintiffs, assaulting and battering Plaintiffs Grunberg and Wilson, repeatedly reiterating that Defendants would never pay Plaintiffs "one thin dime" on the cases subject of the Settlement Agreement, repeatedly claiming Defendant Wood would destroy Plaintiffs' careers, and making repeated threats of physical harm against Plaintiffs Grunberg and Wilson, Defendants executed a Settlement Agreement promising to pay them a lump sum on various cases in return for which Plaintiffs made financial concessions totaling hundreds of thousands of dollars and giving Defendants a release for their conduct *specifically in order to avoid filing this lawsuit*; and (2) after executing the Settlement Agreement, Defendants made

<div align="center">57</div>

<div align="right">Exhibit N</div>

good on their repeated statements that they would never pay Plaintiffs "one thin dime" by claiming that the client in the Disputed Case, for whom Defendants were and remain counsel, refused his consent to the compensation required by the Settlement Agreement, which Defendants claimed was required because, despite the conduct described herein, it is Defendants' position that Plaintiffs were never associated with Defendants' law firm.

## COUNT I:
## BREACH OF CONTRACT

185.

Plaintiffs hereby incorporate by reference paragraphs 1 through 184 of their Complaint, as if specifically set forth herein.

186.

The parties entered into the Settlement Agreement on or around March 17, 2020, whereby Defendant LLW PC would pay Plaintiffs a portion of its fees for their work on certain cases, including the Disputed Case.

187.

The portion of Defendant LLW PC's fees in the Disputed Case is a liquidated sum.

188.

All conditions precedent under the Settlement Agreement have been satisfied to trigger the payment by Defendant LLW PC of a portion of its fees for the cases to Plaintiffs, including the Disputed Case.

189.

Defendants breached the terms of the Settlement Agreement by failing and refusing to pay to Plaintiffs the agreed amounts within 72 hours of Defendant LLW PC's receipt of its portion of its fees in the Disputed Case, as required in the Settlement Agreement.

Exhibit N

190.

Defendants' refusal to pay Plaintiffs the agreed-upon amounts was in bad faith as it was purportedly based upon a Georgia Rule of Professional Conduct which Defendants knew was inapplicable, especially since Defendants had personal knowledge that Plaintiffs Wade, Grunberg, and Wilson had acted as lawyers of Defendant LLW PC in all matters related to the Disputed Case, and no such consent was required for the fee sharing set forth in the Settlement Agreement because, inter alia, Plaintiffs Wade, Grunberg and Wilson were lawyers of Defendant LLW PC—i.e., they were associated in the law firm with Defendant Wood.

191.

The Settlement Agreement, itself, recites as follows: "WHEREAS, Nicole Wade, Jonathan Grunberg, and Taylor Wilson and Wood are lawyers who practiced law and shared office space together for several years."

192.

The Settlement Agreement, itself, recites as follows: "WHEREAS, WGW never held any ownership interest in L. Lin Wood, P.C. (hereinafter 'LLW PC') but have worked as lawyers of L. Lin Wood, P.C. on cases since 2018."

193.

In addition to the many indisputable facts contained herein establishing that Plaintiffs Wade, Grunberg, and Wilson have at all times acted as lawyers of Defendant LLW PC, the above recital is conclusive proof of that fact.

194.

The amounts owed by Defendants are owed for the substantial work that Plaintiffs performed for the clients of LLW PC and for which they have not yet been paid.  The clients for

Exhibit N

the cases in question have already paid the fees to LLW PC, and the issue resolved in the Settlement Agreement was how those fees would be distributed among the lawyers who worked on the cases.

<div align="center">195.</div>

In addition, Defendants executed the Settlement Agreement representing that clients in the Disputed Case were specifically clients of Defendant LLW PC and that Defendant Wood was their attorney.  As such, Defendant Wood had the apparent authority to bind the clients in the Disputed Case to the terms of the Agreement, and in fact, did so bind these clients.

<div align="center">196.</div>

Defendants further breached the Settlement Agreement by breaching the implied covenant of good faith and fair dealing, and by failing "to use [their] best efforts to bring about the happening of the condition to his promise," to the extent client consent can be said to have been a condition to performance.  *Cf. Turner Broadcasting System, Inc. v. McDavid*, 303 Ga. App. 593, 602 (2010).

<div align="center">197.</div>

Defendants' breach of the Settlement Agreement proximately caused Plaintiffs to suffer damages for the liquidated sum set forth in the Settlement Agreement, as well as other amounts owed under the Settlement Agreement.

<div align="center">198.</div>

Defendant LLW PC is liable to Plaintiffs in the amount of the fees set forth in the Settlement Agreement owed to Plaintiffs for their work on those cases, together with attorney's fees for Defendants' bad faith refusal to pay and with interest pursuant to O.C.G.A. § 7-4-12.

Exhibit N

## COUNT II:
## FRAUDULENT INDUCEMENT

### 199.

Plaintiffs hereby incorporate by reference paragraphs 1 through 184 of their Complaint, as if specifically set forth herein.

### 200.

Defendants fraudulently induced Plaintiffs to enter into the Settlement Agreement.

### 201.

At the time they entered into the Settlement Agreement, Defendants did not intend to perform their obligations under the Settlement Agreement, including to pay a portion of the fees for the Disputed Case and to honor the non-disparagement provision, which was a misrepresentation of a material fact.

### 202.

Plaintiffs reasonably relied on Defendants' affirmative but fraudulent representation that they would perform their obligations under the Settlement Agreement, including to pay the promised fees for the Disputed Case and the other cases and to honor the non-disparagement provision.

### 203.

At the time they entered into the Settlement Agreement, Plaintiffs reasonably relied on Defendants' statement and representation in the Settlement Agreement that, *inter alia*, Plaintiffs Wade, Grunberg, and Wilson "worked as lawyers of L. Lin Wood, P.C. on cases since 2018"—a clause that was heavily negotiated, as Defendants initially drafted it to falsely convey that Plaintiffs Wade, Grunberg, and Wilson were not attorneys of Defendant LLW PC.

Exhibit N

204.

As Defendants have themselves proven, they never intended to abide by this true statement of fact that Plaintiffs Wade, Grunberg, and Wilson "worked as lawyers of L. Lin Wood, P.C. on cases since 2018".

205.

Defendants always intended to take the position that client consent to the fee splits in the Settlement Agreement was required, and they knew at the time they entered into the Settlement Agreement that such consent from the clients in the Disputed Case had been withheld or would be withheld, and/or that Defendants would ensure that it was withheld; i.e., that the future event would not take place.

206.

Defendants' fraud is proven by additional substantial and irrefutable circumstantial evidence concerning their fraudulent intent – prior to and at the time of executing the Settlement Agreement – to induce Plaintiffs to enter into the Settlement Agreement with false promises.

207.

Defendants represented as early as February 10, 2020, and on multiple occasions thereafter and prior to the Settlement Agreement, that the clients in the Disputed Case would only agree to compensate Plaintiffs in quantum meruit.

208.

To induce Plaintiffs to sign the Settlement Agreement, Defendant drafted the Settlement Agreement to state that Defendants were indeed counsel for the clients in all of the cases referenced therein, including the Disputed Case, and therefore, as their counsel, that Defendant Wood had all requisite authority to enter into the Settlement Agreement. Defendants further

Exhibit N

induced Plaintiffs to enter into the Settlement Agreement by drafting language that asserted that Plaintiffs at all times acted as lawyers of Defendant LLW PC, thereby eliminating any purported need for client consent.

<center>209.</center>

Defendants further expressly instructed and demanded under threats of civil liability, criminal liability, and repercussions with the State Bar, that Plaintiffs were not permitted to contact Defendant LLW PC's clients or co-counsel, including the clients in the Disputed Case.

<center>210.</center>

Defendants at all times relevant hereto acted as counsel to the clients in the Disputed Case, allowing Plaintiffs to reasonably rely on Defendants' apparent authority (1) to bind the clients in the Disputed Case and/or (2) rely on Defendants' implicit representation that said clients knew of and agreed to the terms of the Settlement Agreement.

<center>211.</center>

Defendants' fraudulent intention to never pay to Plaintiffs "one thin dime" is further evidenced by the manner in which they drafted the terms triggering Defendant LLW PC's payment obligations to Plaintiffs. For instance, at the time the Settlement Agreement was entered into, Defendants had already received the compensation necessary to pay Plaintiffs fees in multiple cases subject of the Settlement Agreement, but they drafted the Agreement only to trigger payment to Plaintiffs upon receipt of compensation in the Disputed Case at a later date. Meanwhile, the Lease obligation Plaintiffs agreed to in the Settlement Agreement (but were not otherwise responsible for) was larger than the fees owed in cases other than the Disputed Case and would only be paid out of the fees in the Settlement Agreement. Thus, Defendants have

<center>63</center>

<div align="right">Exhibit N</div>

attempted to make good on the "one thin dime" statements by withholding for months fees owed so that they could later claim the Lease obligation swallowed all fees owed to Plaintiffs.

212.

Defendants attempted to make good on their repeated statements they would never pay to Plaintiffs "one thin dime" by attempting (and failing) to build into the Settlement Agreement the very fraudulent defense on which they now rely:   that Plaintiffs were not lawyers of Defendant LLW PC in the years preceding this dispute.

213.

All of Defendant Wood's prior conduct leads to one inescapable conclusion – that he never intended to pay Plaintiffs.  That conduct includes his assault and battery of Plaintiffs Grunberg and Wilson; additional threats of physical harm against Plaintiffs Grunberg and Wilson, including that he would fight them to the death; repeatedly reiterating that he would never pay to Plaintiffs "one thin dime" prior to executing the Settlement Agreement; making repeated threats to destroy Plaintiffs' careers prior to executing the Settlement Agreement; making repeated false, fantastical, and malicious accusations of criminal conduct against Plaintiffs prior to executing the Settlement Agreement; making repeated fantastical threats that Plaintiffs would spend many years or the rest of their lives in prison for Defendant Wood's fantastical conspiracy theories about their alleged and false criminal acts; repeatedly threatening the families, including Plaintiffs Grunberg and Wilson's wives and young children aged between 3 months and approximately 2 years; and making numerous false, fantastical, and defamatory statements against Plaintiffs in addition to those relating to criminal acts, including that Plaintiffs were extortionists attempting to extort money from him to which they were not entitled (it appears based solely on Plaintiffs' request that Defendants honor his previous promises

Exhibit N

regarding their compensation), including the payment of the compensation owed to them in the Disputed Case.

<div align="center">214.</div>

Plaintiffs reasonably relied upon Defendant Wood's status as counsel to the clients in the Disputed Case and his implicit representations that he had all requisite authority and consent to enter into the Settlement Agreement and would otherwise employ best efforts to ensure his compliance with the Settlement Agreement.

<div align="center">215.</div>

Defendants' fraudulent inducement of Plaintiffs to enter into the Settlement Agreement proximately caused damage to Plaintiffs, including but not limited to by inducing them to enter into the Settlement Agreement and to give up their valuable claims for fees as well as tort claims and to agree to allow LLW PC to retain certain sums as payment on the Lease, all in the promise of payment on the Disputed Case, which Defendants never intended to pay. As such, Defendant Wood's fraudulent inducement bars Defendants from raising the defense they fraudulently attempted to build into the Settlement Agreement.

<div align="center">216.</div>

Plaintiffs are entitled to a verdict against Defendant Wood individually and against Defendant LLW PC for compensatory damages consisting of the full value of the Settlement Agreement, punitive damages, and attorneys' fees in an amount to be proven at trial.

<div align="center">

**COUNT III:**
**PUNITIVE DAMAGES**

217.
</div>

Plaintiffs hereby incorporate by reference paragraphs 1-216 of their Complaint, as if specifically set forth herein.

<div align="center">65</div>

Exhibit N

218.

Defendants' actions showed willful misconduct, malice, fraud, wantonness, oppression, and that entire want of care which would raise the presumption of conscious indifference to consequences as to entitle Plaintiffs to punitive damages against Defendants in accordance with O.C.G.A. § 51-12-5.1.

## COUNT IV:
## ATTORNEY'S FEES

219.

Plaintiffs hereby incorporate by reference paragraphs 1 – 216 of their Complaint, as if specifically set forth herein.

220.

Plaintiffs are entitled to the recovery of the costs of litigation and their attorney's fees under O.C.G.A. § 13-6-11 as Defendants have acted in bad faith, been stubbornly litigious, and caused Plaintiffs unnecessary trouble and expense. Accordingly, Plaintiffs are entitled to expenses of litigation, including attorney's fees, under O.C.G.A. § 13-6-11.

221.

Further, Plaintiffs are entitled to the recovery of attorneys' fees and the costs of litigation from Defendants for the fraud they engaged in, including by fraudulently inducing Plaintiffs to enter into the Settlement Agreement. Defendants' behavior in negotiating, entering into, and carrying out the Settlement Agreement evidences that species of bad faith sufficient to justify an award of attorney's fee and the expenses of litigation under Georgia law.

**WHEREFORE**, Plaintiffs respectfully pray of this Court as follows:

A. Enter judgment in favor of Plaintiffs against Defendants as set forth in each count of this

66

Exhibit N

Complaint;

B. Award Plaintiffs actual, special, and compensatory damages as set forth above in an amount to be determined at trial, plus interest pursuant to O.C.G.A. § 7-4-12;

C. Award Plaintiffs punitive damages pursuant to O.C.G.A. § 51-12-5.1;

D. Award Plaintiffs their reasonable attorneys' fees and expenses of litigation;

E. For an award of Plaintiffs' costs of this action against Defendants; and

F. For such other and further relief as this Court deems just, proper and equitable under the circumstances.

Respectfully submitted this 31st day of August, 2020.

/s/Andrew M. Beal
Andrew M. Beal
abeal@buckleybeal.com
Georgia Bar No. 043842
Milinda Brown
mbrown@buckleybeal.com
Georgia Bar No. 363307

BUCKLEY BEAL LLP
600 Peachtree Street, NE
Suite 3900
Atlanta, Georgia 30308
T: (404) 781-1100
F: (404) 688-2988
*Counsel for Plaintiffs*

Exhibit N

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

NICOLE WADE; JONATHAN GRUNBERG;
TAYLOR WILSON;
WADE, GRUNBERG & WILSON, LLC;

Plaintiffs,

v.

L. LIN WOOD and L. LIN WOOD, P.C.,

Defendants.

Civil Action File No: **2020CV339937**

JURY TRIAL DEMANDED

## **VERIFICATION**

I, NICOLE WADE, Plaintiff in the above-styled matter, hereby certify under penalty of perjury, before the undersigned officer authorized to administer oaths, that the information contained in the foregoing *Complaint* is true and correct to the best of my knowledge, information, and belief.

This 25th day of August, 2020.

By: Nicole Wade

Sworn and subscribed before me
this 25th day of August, 2020.

NOTARY PUBLIC



Exhibit N

**IN THE SUPERIOR COURT OF FULTON COUNTY**
**STATE OF GEORGIA**

NICOLE WADE; JONATHAN GRUNBERG;
TAYLOR WILSON;
WADE, GRUNBERG & WILSON, LLC;

Plaintiffs,

v.

L. LIN WOOD and L. LIN WOOD, P.C.,

Defendants.

Civil Action File No:_____

JURY TRIAL DEMANDED

## VERIFICATION

I, Jonathan Grunberg, member of WADE, GRUNBERG & WILSON, LLC, Plaintiff in the above-styled matter, hereby certify under penalty of perjury, before the undersigned officer authorized to administer oaths, that the information contained in the foregoing *Verified Complaint* is true and correct to the best of my knowledge, information, and belief.

This ___ day of _August_____, 2020.

_____
By: Jonathan Grunberg, Member,
Wade, Grunberg & Wilson, LLC

Sworn and subscribed before me
this 25th day of _August_, 2020.

_____
NOTARY PUBLIC

Exhibit N

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

NICOLE WADE; JONATHAN GRUNBERG;
TAYLOR WILSON;
WADE, GRUNBERG & WILSON, LLC;

Plaintiffs,

v.

L. LIN WOOD and L. LIN WOOD, P.C.,

Defendants.

Civil Action File No:_____

JURY TRIAL DEMANDED

### VERIFICATION

I, TAYLOR WILSON, Plaintiff in the above-styled matter, hereby certify under penalty of perjury, before the undersigned officer authorized to administer oaths, that the information contained in the foregoing *Complaint* is true and correct to the best of my knowledge, information, and belief.

This __25__ day of __August__, 2020.

By: Taylor Wilson

Sworn and subscribed before me
this __25__ day of __August__, 2020.

_____
NOTARY PUBLIC

My Commission Expires July 9, 2022



MILLICENT VAN MOL VANCE
STATE
OF
TENNESSEE
NOTARY
PUBLIC
DAVIDSON COUNTY

Exhibit N

**IN THE SUPERIOR COURT OF FULTON COUNTY**
**STATE OF GEORGIA**

NICOLE WADE; JONATHAN GRUNBERG;
TAYLOR WILSON;
WADE, GRUNBERG & WILSON, LLC;

Plaintiffs,

v.

L. LIN WOOD and L. LIN WOOD, P.C.,

Defendants.

Civil Action File No:_____

JURY TRIAL DEMANDED

## VERIFICATION

I, JONATHAN GRUNBERG, Plaintiff in the above-styled matter, hereby certify under penalty of perjury, before the undersigned officer authorized to administer oaths, that the information contained in the foregoing *Complaint* is true and correct to the best of my knowledge, information, and belief.

This 25th day of August, 2020.

_____
By: Jonathan Grunberg

Sworn and subscribed before me
this 25th day of August, 2020.

_____
NOTARY PUBLIC



Exhibit N