UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

L. LIN WOOD, JR.,

     **Plaintiff,**

     **v.**                 **CASE NO. 1:21-CV-1169-TCB**

**PAULA J. FREDERICK,** *et al.,*

     **Defendants.**

_____/

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

**COMES NOW** Plaintiff L. Lin Wood and in conformance with this Court's Order [Doc. 38], submits this Response to Defendants' Motion To Dismiss [Doc. 34].

### I.     FACTS SUPPORTING PLAINTIFF'S CLAIMS.

L. Lin Wood, Jr. is an attorney licensed to practice in the State of Georgia and is a member in good standing of the State Bar of Georgia. He was first admitted to the Georgia bar on June 10, 1977. Now a resident of the State of South Carolina, he remains actively engaged in the practice of law, representing clients in several cases involving complex litigation in state and federal cases in Georgia and in other jurisdictions across the country.

Mr. Wood does not at this time have any bar complaint or investigation pending before the State Bar of Georgia involving allegations of any ethical violation or professional misconduct brought by any former or present client; nor is there any proceeding pending against Mr. Wood by any client which calls into question his mental acumen and competence to practice law or conduct constituting a threat of harm to the public.

There has been no finding of probable cause by the State Bar of Georgia or the State Disciplinary Board that Mr. Wood has committed any wrongdoing.  Nor is there any probable cause finding by either of these state agencies that Mr. Wood suffers from any form of mental impairment affecting his ability to practice law.

The genesis of this case stems from an investigation into four informal complaints filed in December of 2020 and January of 2021 by four out-of-state residents, each of whom admit they have never had any direct contact with Mr. Wood.  All four of these complaints arise in the context of political opposition to expressions by Mr. Wood on his personal social media which are protected speech under the First Amendment of the United States Constitution.[1]

---

[1]  A full description of these four complaints from Ted Kurt (Ohio), John Bellocchio (New Jersey), Paul Fine (Illinois) and Stacey Smith-Goldenberg (Oregon) are set forth in ¶¶ 48-52 of the Verified Complaint [Doc. 1].

In addition to the four out-of-state resident complaint, the overwhelming majority of the documents attached by the Defendants to their Notice of Investigation consist of pleadings in cases challenging the legitimacy of certain balloting procedures in Georgia, Michigan, Wisconsin and Arizona during the 2020 Presidential election in which Mr. Wood served as one of the Plaintiff's counsel. In not one of these cases was the Plaintiff ever sanctioned by the court, and preliminary injunctive relief was actually granted in several of these cases.[2] The concerns raised in these lawsuits have also been vindicated in several other jurisdictions. One sitting Justice on the U.S. Supreme Court, Justice Clarence Thomas, has expressed grave concerns regarding the lack of integrity in the election process in November of 2020.[3]

---

[2]   The cases cited are *King, et al. v. Whitmer, et al.,* District Court for Eastern District of Michigan, Case No. 2:20-cv-13134); *Pearson, et al. v. Kemp, et al.*, 1:20-cv-48098, U.S. District Court for the Northern District of Georgia; *Feehan v. Wisc. Elections Comm'n*, 20-cv-1771, U.S. District Court of Wisconsin; *Bower v. Ducy,* CV-20-02321, U.S. District Court, District of Arizona (Lin Wood Of Counsel only); *Rosyn La Liberte v. Joy Reid*, 18-CV-5398, U.S. District Court Eastern District of New York.

[3]   "That is not a prescription for confidence. Changing the rules in the middle of the game is bad enough. Such rule changes by individual and officials who may lack authority to do so is even worse. When those changes alter election results, they can severely damage the electoral system on which our self-governance so heavily depends. If state individual and officials have the authority they have claimed, we need to make it clear. If not, we need to put an end to this practice now before the consequences become catastrophic."

*Republican Party of Pennsylvania v. Degraffenreid*, 592 U.S. _____ (2021), J. Thomas dissenting from denial of certiorari (joined in a separate dissent by Alito and Gorsuch, JJ).

**A.    The Arbitrary and Coercive Nature Of The Defendants' Request For A Mental Examination.**

The gravamen of this case involves an arbitrary, coercive invidious and bad faith actions by a governmental agency of the State of Georgia to compel the Plaintiff to undergo a mental examination.  It is arbitrary because it is being imposed despite the absence of a scintilla of evidence from anyone whom the Plaintiff has represented that he suffers from any mental impairment.  It is coercive because if the Plaintiff fails or refuses to submit to this requested mental examination, he is in jeopardy of this refusal alone serving as grounds for an emergency suspension of his law license.[4] It is invidious and in bad faith because as Defendants acknowledge, there has been no probable cause finding, but more importantly, there is no due process opportunity for Plaintiff to be heard before the State Disciplinary Board is permitted, in *ipse dixit* fashion, to request Plaintiff to submit to a mental health evaluation under the threat of further disciplinary action.

As the Defendants admit, the Plaintiff is not entitled under the Bar Rules of the State of Georgia to any pre-deprivational hearing to challenge this governmental fiat.  Despite his many written requests to the State Bar of Georgia to furnish him

---

[4]   The Defendants use the misnomer "Consensual Mental Health Evaluation" in their Motion.  It is only "consensual" if one consents to undergo the medical examination; otherwise, he is subject to disciplinary action.

with the evidentiary basis for its demand for a mental examination, no evidence has been provided.  The Defendants have declined to afford Mr. Wood a reasonable opportunity for a pre-determination hearing, or an opportunity to subpoena or cross-examine witnesses, or present any evidence to challenge its pre-determination that he should undergo a mental examination prior to the Defendants making this determination.  Mr. Wood filed a Petition in the Georgia Supreme Court seeking a stay of the Defendants' requirement that he submit to this intrusive examination.  On May 3, 2021, the Supreme Court of the State of Georgia entered an Order declining original jurisdiction to hear the Plaintiff's constitutional arguments.[5]

Meanwhile, although the Plaintiff is not entitled to compel the production of any evidence while the Defendants conduct their investigation, on February 1, 2021, the Defendant Paula issued a subpoena to three former attorneys in the Plaintiff's law firm who are currently Plaintiffs in a case against Mr. Wood involving disputed attorney's fees. The case is styled *Wade, et al. v. Wood,* Fulton County Superior Court Civil Action No. 2020CV339937 ("Wade Litigation").[6]

---

[5]  A true and correct copy of this Order is filed as Exhibit A to this Response to Defendants' Motion To Dismiss.

[6]  Ms. Frederick issued this subpoena pursuant to Georgia Bar Rules 4-202(d) and 4-221(c)(2) which grant the Defendants exclusive authority to issue subpoenas and conduct certain discovery.

Specifically, GA BAR RULE 4-202(d) provides as follows:

Notably, these Bar Rules do <u>not</u> grant a reciprocal right of discovery to Mr. Wood as the one who is the subject of this investigation.  Ms. Frederick's subpoena was issued to Andrew M. Beal, the attorney who sued Mr. Wood in the Wade Litigation, requesting that he produce "any and all communications in your possession, in any form, from January 1, 2020 to present, from L. Lin Wood or L. Lin Wood, P.C., in connection with the claims or counterclaims in <u>Nicole Wade, et al. v. L. Lin Wood</u>, Fulton County Superior Court Civil Action 2020CV339937, including communication in support of statements in the verified complaint."

In their Motion To Dismiss, Defendants cite to the allegations in the Wade Litigation presumably to support their pre-determination that Mr. Wood should undergo a mental examination.  The Defendants fail to mention, however, that all of these "facts" are disputed and denied in the Answer and Counterclaim filed by Mr. Wood in that case.  These allegations thus prove nothing.

On February 11, 2021, the Defendant Paula J. Frederick issued a *Notice of Investigation of Bar Grievance* to Mr. Wood stating: "Pursuant to Bar Rule 4-104,

---

(d) **The Office of the General Counsel may request the Chair of the State Disciplinary Board to issue a subpoena** as provided by OCGA § 24-13-23 requiring a respondent or a third party to produce documents relevant to the matter under investigation. Subpoenas shall be enforced in the manner provided at Rule 4-221(c).

the Board hereby requests that you consent to a confidential evaluation by a medical

professional."  Ms. Frederick further advised:

> The Board has preliminarily identified a medical doctor who has
> agreed to perform the evaluation at the Bar's expense. Please respond
> to this letter advising me whether you will undergo the evaluation so
> that we can finalize arrangements with the doctor and give you contact
> information. I understand that you are now living in South Carolina,
> so if you prefer to see a doctor closer to your residence, I will make
> those arrangements.
>
> Bar Rule 4-104 provides that a lawyer's refusal to participate in an
> evaluation recommended under the rule may be grounds for further
> proceedings under Bar Rules. If you decline to cooperate, I will
> convey that decision to the State Disciplinary Board so that they may
> decide how to proceed.
>
> (Exhibit A to Verified Complaint at p. 1, [Doc. 1-1]).

The Bar Rule cited by Ms. Frederick in her February 11, 2021, Rule 4-104

clearly provides that Mr. Wood's failure to submit to a mental evaluation may itself

constitute grounds for further disciplinary proceedings, including the emergency

suspension of his law license.

> GA BAR RULE 4-104(2).
>
> A lawyer's refusal to cooperate with the medical or mental health
> professional or to participate in the evaluation or recommended
> treatment may be grounds for further proceedings under these Rules,
> including **emergency suspension proceedings pursuant to Rule 4-
> 108.**

Mr. Wood responded to Ms. Frederick's letter on February 18, 2021:

> Likewise, any request for an independent medical examination, physical or mental, raises serious privacy issues, among other significant concerns. . . To date, the Bar has not provided me with the alleged factual justification for the Bar's intrusive demand for a mental health examination and I am aware of no basis for this unprecedented demand on a member of the Bar of Georgia.

(Exhibit B to Verified Complaint, [Doc. 1-2]).

When the Defendants failed to respond to Mr. Wood's request, he sent a second letter dated March 2, 2021, again asking Ms. Frederick to provide any evidence on which the Board based its request that he submit to a mental examination.

> Finally, you have asked for a psychological examination, but that seems premature if there is no basis for your statements that I "appear[] to be impaired to practice law" So far, nothing in the Complaint has dealt in any way with my conduct in the practice of law. Proposed Counsel have asked if there is any specific case which serves as the basis for the Bar to challenge my competency to practice law or which justifies an allegation that I "appeared" impaired. Have you or the Bar identified any case in which a client or former client complained that my competency was impaired, if so, which case? Existing case law only includes arguments for such an examination only after such a hearing had been held and evidence had been presented regarding the attorney's substance abuse or mental incapacities - in all cases which affected his or her competency as a lawyer.

(Exhibit D to the Verified Complaint, [Doc. 1-4]).

As of the date of this Memorandum, the Defendants have yet to come forward with any written explanation for their determination, and have failed to provide any evidence, facts or information to suggest that the Plaintiff suffers from any mental

illness, cognitive impairment, alcohol abuse or substance abuse to the extent of impairing his competency as an attorney.

As more fully stated in his Motion for Preliminary Injunction, the fact that the Defendants have already "determined" that the Plaintiff is in need of a mental evaluation has itself created an ongoing threat of irreparable harm to the Plaintiff. His ability as an attorney to sign on new clients or engage in needed commitments in his legal practice, have now been interrupted due to the fact that he may face imminent suspension of his license unless he consents to undergo an entirely subjective mental health evaluation by a medical doctor, a psychiatrist.

**B.     The Grievance Process Does Not Provide An Adequate Post-Deprivational Remedy**.

The Defendants argue that the grievance procedure which calls for a public disciplinary hearing once the State Disciplinary Board collects its evidence and makes its report is sufficient to alleviate any harm or prejudice caused by its prior determination that he should undergo a mental examination.  (Defendants' Motion at pp. 6-7).  This argument is flawed for a number of reasons.  First, in the instant case, the Defendants have already made public their demand on the Plaintiff that he undergo a mental examination. On January 29, 2021, Paula J. Frederick disclosed and published this confidential information to Atlanta Journal-Constitution reporters, in violation of Bar Rule 4-221.1, wherein she acknowledged that the State

Disciplinary Board was investigating Plaintiff and had requested that he submit to a psychiatric evaluation.  (Verified Complaint at ¶ 102).

Secondly, the mere failure or refusal by the Plaintiff to accede to the Defendants' pre-determination that he is in need of a mental examination of the Defendants' choosing despite the absence of any evidence supporting this directive may *itself* serve as a basis for a probable cause finding by the SDB.  In her letter of February 11, 2021 to Mr. Wood, Paula Frederick makes clear that the Plaintiff's failure to cooperate in this regard will be reported to the State Disciplinary Board "so they may decide how to proceed."  The strong implication is that the SDB will invoke its powers under GA BAR RULE 4-104(2) and refer the Plaintiff "for further proceedings under these Rules, including emergency suspension proceedings pursuant to Rule 4-108."  (Verified Complaint at Exhibit A).

Third, were there any evidence of mental impairment or substance abuse from a client, or from one who is not ostensibly alienated against the Plaintiff such as his political adversaries or former law associates who are in litigation against him, this would be a far different case.  There is not.

## II.    ARGUMENT

### A.  Standard of Review

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc*., 187 F.3d 1271, 1273 n. 1 (11th Cir.1999); *F.D.I.C. v. Blackwell,* 2012 WL 3230490, at *3 (N.D.Ga.2012). Challenges to subject-matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure can exist in two substantially different forms: facial attacks and factual attacks. *Sinaltrainal v. Coca–Cola Co*., 578 F.3d 1252, 1260 (11th Cir.2009). When presented with a facial attack on the complaint, as in the instant case, the court determines whether the complaint has sufficiently alleged subject-matter jurisdiction. *Sinaltrainal*, 578 F.3d at 1260. The court proceeds as if it were evaluating a Rule 12(b)(6) motion; that is, it views the complaint in the light most favorable to the plaintiff and accepts all well-pled facts alleged in the complaint as true. *Id*.

## B. The *Younger* Doctrine Does Not Require Abstention.

The *Younger* doctrine, embodied in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) does not serve as a bar to the Plaintiff's claims in this case. In *Middlesex County Ethics Comm. v. Garden State Bar Assoc*., 457 U.S. 423, 102 S.Ct.2515, 73 L.Ed.2d 116 (1982), the Court sets out three benchmarks to guide the application of abstention: "first, do state bar disciplinary hearings within the

constitutionally prescribed jurisdiction of the State Supreme Court constitute an ongoing state judicial proceeding; second, do the proceedings implicate important state interests; and third, is there an adequate opportunity in the state proceedings to raise constitutional challenges." *Id*. at 2521.   The Plaintiff's case satisfies two of these benchmarks in *Middlesex*.

In *Middlesex*, the attorney Lennox Hinds made no response to the state bar's finding of probable cause of a violation of the New Jersey disciplinary code. Nor did he assert any constitutional objections to the state bar challenging its finding of probable cause. Instead, he filed an action in federal court <u>during an ongoing state bar proceeding after a finding of probable cause</u>, challenging the disciplinary rules as violative of the First Amendment. The district court dismissed based on *Younger*, and the Supreme Court affirmed.

The Court in *Middlesex* concluded that Hinds had an adequate opportunity to raise his challenges in the New Jersey court system.  As the Supreme Court has advised, the "pertinent inquiry is whether the state proceedings afford an adequate opportunity to raise the constitutional claims...." *Middlesex*, 102 S.Ct. at 2521, quoting *Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 2380, 60 L.Ed.2d 994 (1979).

In the instant case, there is no adequate forum under the Georgia system of state disciplinary proceedings for a lawyer to challenge the pre-determination by the

State Disciplinary Board that he should submit to a medical examination.  Instead, a lawyer must either submit in advance to a requested mental examination *prior* to any probable cause finding of a violation or evidentiary finding of impairment or else risk his failure to do so being cited against him as grounds for disciplinary proceedings.

Unlike the situation in *Middlesex*, in the instant case, Mr. Wood filed a Petition in the Georgia Supreme Court seeking to stay the Defendants' actions until he could be heard on their request that he submit to a mental evaluation.   The Supreme Court of Georgia declined to exercise jurisdiction in the following one sentence ruling: "As this is not one of the 'extremely rare' instances in which it would be appropriate for this Court to exercise its original jurisdiction, see *Gay v. Owens*, 292 Ga. 480, 483 (738 S.E.2d 614) (2013), this petition is dismissed."

The Plaintiff thus satisfies one of the benchmarks of *Middlesex* because no adequate forum exists for him to challenge the constitutionality of the Defendants' coercive request that he submit to a mental examination in the absence of any evidence or probable cause finding of impairment.

The Plaintiff also satisfies a second benchmark in *Middlesex*.  The present action was filed *before* any probable cause finding by a state bar association of violation of the disciplinary rules.  Unlike the Plaintiff in *Middlesex*, in the instant

case Mr. Wood is not seeking to enjoin an ongoing state judicial proceeding.  The relief sought in this case qualitatively different and much more precise than that sought by the Plaintiff in *Middlesex*. Here, the Plaintiff only challenges the constitutionality of the Defendants' ability, while conducting an investigation, and without citing to any evidence or probable cause, to require him to undergo a mental examination, and their ability to use his refusal as grounds for disciplinary action, including the emergency suspension of his license.

The U.S. Supreme Court has recognized exceptions to *Younger* abstention where the plaintiff makes an adequate showing of bad faith or other extraordinary circumstances that "render the state court incapable of fairly and fully adjudicating the federal issues before it ..." *Kugler v. Helfant*, 421 U.S. 117, 124–125, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975).  Taking the allegations of the Verified Complaint as true, which the Court is required to do in the context of the present motion, there are ample factual allegations which demonstrate bad faith on the part of the Defendants, i.e. 1) steadfastly refusing to respond to the Plaintiff's repeated requests for evidence on which Defendants justify their insistence on a medical examination; 2) releasing to the public the fact of their request that Plaintiff submit to a mental examination; and 3) basing their request for a mental evaluation on politically-motivated complaints by non-residents and non-clients; and 4) using the mechanism of a

request for mental evaluation as a form of retaliation against the Plaintiff for the exercise of his protected free speech rights.

In *Berry v. Schmitt*, 688 F.3d 290 (6th Cir. 2012), an attorney brought a federal action against the Chair of the Kentucky Bar Association challenging on First Amendment grounds the imposition of sanctions under a Kentucky bar rule which prohibited attorneys from "making false or reckless statements about judicial officers." The Sixth Circuit noted at the outset that the case was especially problematic because "attorneys are often the citizens best situated to criticize government abuse." *Id.* at 290.

The Inquiry Commission, which is the investigative arm of the Kentucky Bar Association and performs a role very similar to the State Disciplinary Board in this case, issued a warning letter to Mr. Berry advising him to conform his conduct to the requirements of the Rules of Professional Conduct and implying that if he failed to cooperate, disciplinary action could be taken against him. As in the instant case, the Plaintiff in *Berry* contended that the warning letter contained threats of enforcement that violated his First and Fourteenth Amendment rights. The Defendant in *Berry*, like the Defendants in this case, asserted as their primary defense that the federal court should abstain citing a close cousin of *Younger*, the *Rooker-Feldman* doctrine. This doctrine bars lower federal courts from conducting

appellate review of final state-court judgments.  The Sixth Circuit rejected this abstention defense based on the relief sought, i.e. declaratory and injunctive relief against the threatened enforcement of the Kentucky Bar Rule as a means of chilling the Plaintiff's free speech rights.

The Plaintiff has asserted an identical claim for relief in this case, *i.e.* that the threat of subjecting an attorney in good standing with the bar to a mental examination based on complaints arising out of his free speech activity is an unconstitutional abuse of state power.

The State of Georgia has effectively conditioned the Plaintiff's ability to assert this constitutional challenge in a later state bar proceeding on his willingness to first undergo a mental evaluation in the absence of any evidentiary justification therefor.

*Younger* does not apply because there is no adequate opportunity for the Plaintiff to raise the constitutional challenges to the Bar's insistence that he submit to a medical examination until *after* the fact, and his refusal to submit may be cited as a strike against him in the further proceedings.

The Defendants' reliance on *Cohran v. State Bar of Georgia*, 790 F.Supp. 1568 (N.D. Ga. 1992) is similarly misplaced.  In *Cohran*, the Georgia State Bar Review Panel recommended that Mr. Cohran be disbarred.  The Georgia Supreme Court later upheld this determination.  Cohran sued each member of the

Georgia Supreme Court in federal court, and asserted for the first time his constitutional claims under the First, Fifth, Sixth and Fourteenth Amendments. He also requested relief in the form of declaratory judgment to declare the judgment of the Georgia Supreme Court unconstitutional.

In the instant case, unlike in *Cohran*, the Plaintiff is not asking this Court to sit in judgment over a decision of the Georgia Supreme Court.  Nor is the Plaintiff seeking declaratory relief to declare any specific rule of the Georgia Bar Rules unconstitutional. Rather, the relief being sought in this case is much more tailored.  The Plaintiff here is challenging the constitutionality of the Defendants' actions *prior* to, and unrelated to any judicial finding or ruling, and only as to one narrow aspect of their conduct which he alleges was undertaken with deliberate indifference to his clearly established constitutional rights.   The following paragraphs from the Verified Complaint bear this out:

> ¶ 61. A "determination" by the Board, as that term is used in the second sentence of Rule 4-104, and as cited in Paula Frederick's letter of February 11, 2021, must, at a minimum, signify that the Defendants have a good faith and evidentiary basis for requesting a practicing attorney to undergo a mental examination. Given the paramount privacy interests at stake in ordering someone to undergo such an intrusive process, such a "determination" cannot be based on a whim, rumor or mere speculation and further cannot be based on private speech not related to legal representation of a client.

> ¶ 66.  To the extent the Defendants' directive that the Plaintiff consent to a mental evaluation is premised, in whole or in part, on

political remonstrances submitted by the four, non-client out-of-state complainants it is an infringement of the Plaintiff's First Amendment right of freedom of expression.

¶ 69.  The actions of the Defendants, acting individually and in their roles as members of the State Disciplinary Board and/or General Counsel for the State Bar of Georgia are being carried out under color of state law, and with reckless disregard for the Plaintiff's clearly established constitutional rights   under the First Amendment.

¶ 92.  The Plaintiff is entitled to temporary injunctive relief to enjoin and restrain the Defendants, and all those acting in concert with them, from the continued violation of his due process rights under the Fourteenth Amendment of the United States Constitution.

¶ 93. In addition, the Plaintiff requests that this Court enter a declaratory judgment declaring the actions of the Defendants to be in violation of the Plaintiff's rights as guaranteed by the Fourteenth Amendment of the United States Constitution.

### C.  This Case Is Factually Unprecedented From Every Reported Case In Which An Attorney Has Been Subjected To A Bar Imposed Mental Examination Under GA R BAR Rule 4-104.

The Plaintiff has canvassed Georgia law for every single reported decision in which Bar Rule 4-104 has been cited as a basis for requiring an attorney to undergo a mental examination.  In every single reported case in which Rule 4-104 has been invoked, there was a pattern of grievances from a client and clear evidence or an admission by the attorney himself of an acute mental health problem or alcohol or substance abuse to the extent it impaired the attorney's competence. The following is a representative sample of these cases:  *In re LeDoux*, 288 Ga. 777, S.E.2d 88

(Ga.2011)( was hospitalized for psychiatric treatment due to an acute mental health episode and sedative-hypnotic dependence); *Matter of Healy*, 308 Ga. 658, 842 S.E.2d 844 (2020)(attorney was subject of numerous client grievances and voluntarily sought and obtained an alcohol and drug evaluation); *In re Pak*, 295 Ga. 458, 761 S.E.2d 82 (2014)(attorney diagnosed with bi-polar disorder and admitted suffering from mental illness); *In re Cullen*, 293 Ga. 782, 749 S.E.2d 741 (2013)(complaints from multiple clients of mismanagement of fiduciary funds and admission of psychological impairment); *In re Jaconetti,* 291 Ga. 772, 732 S.E.2d 447 (2012)(eight formal complaints by clients complaining of neglect of cases and admission of psychiatric problems); *In re Fair,* 288 Ga. 17, 701 S.E.2d 160 (2010)(Attorney admitted that he was physically, mentally and emotionally impaired); *In re Knight*, 287 Ga. 466, 696 S.E.2d 662 (2010)(attorney admitted to drug addiction); *In re Giallanza*, 287 Ga. 257, 695 S.E.2d 254, 254 (2010)(attorney accused of misappropriation of client funds showed significant signs of dementia); *In re Bagwell*, 286 Ga. 511, 689 S.E.2d 316 (2010)(five clients complained of neglecting their cases and attorney showed signs of bi-polar disorder and depression); 11.   *In re Moody*, 281 Ga. 608, 642 S.E.2d 17 (2007)(attorney voluntarily surrendered license due to heavy consumption of alcohol to self-medicate); *In re Rand*, 279 Ga. 555, 616 S.E.2d 452 (2005)(attorney with diagnosed

bi-polar disorder and hospitalized due to psychiatric problems accused of mismanaging client funds).

Likewise, a review of Georgia reported cases citing GA R BAR Rule 4-108, which authorizes emergency suspension of an attorney's license for mental health reasons, reveals that in each case there was evidence of impairment due to mental health issues or addiction.  In the instant case, the Defendants, despite repeated requests from the Plaintiff, have failed to come forward with any such evidence or a probable cause basis for their request for a mental examination.

### D. This Court Has Subject-Matter Jurisdiction Over Plaintiff's Claims.

"[A] motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) can be based upon either a facial or factual challenge to the complaint." *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). "A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id*. "Factual attacks, on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered." *Id*. Defendants in this case lodge a facial attack.

In this case the Plaintiff has pled plausible claims under the First and Fourteenth Amendments that the actions of the Defendants were carried out with deliberate indifference for his clearly established constitutional rights and in retaliation for his expression of his protected free speech and without any adequate remedy for redress of his due process rights.  Jurisdiction is vested in this Court pursuant to 28 U.S.C. §§ 1331and 1343(a). In addition, this Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy is in excess of $75,000.00 exclusive of interest and costs, and this action is between citizens of different states.

The Defendants rely for this argument on GA BAR Rule 4-225 which vests state court jurisdiction for litigation of any claims against the State Disciplinary Board or persons connected with disciplinary proceedings in the Georgia Supreme Court.   This rule does not and cannot pre-empt federal jurisdiction for the enforcement of federal constitutional claims such as those presented in this case. Notably, nowhere in the case cited by the Defendants of *Cohran v. State Bar of Georgia*, 790 F. Supp. 1568 (N.D. Ga. 1992) did the court rely on GA BAR Rule 4-225 as a basis for denying subject matter jurisdiction.

As recently recognized in *City of South Miami v. Desantis*, 408 F.Supp.3d 1266, 1292 (S.D.Fla. 2019), the Supremacy Clause mandates that federal law "shall

be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.  The Defendants' argument, if valid, would essentially deprive federal courts of all jurisdiction to enforce federal constitutional rights if they happen to arise in the context of a state disciplinary proceeding.

The Supreme Court in *Middlesex* explained that, where state interests are involved, the federal court should abstain "unless state law clearly bars the interposition of the constitutional claims." *Id*. at 424.  As previously stated, the Defendants' refusal to afford the Plaintiff a "pre-determination" avenue to challenge their request for a mental evaluation, there is no state forum available in which the Plaintiff may assert these constitutional claims but in federal court.[7]

### E.     Plaintiff Is Entitled To Prospective Injunctive Relief.

As this Court has expressly recognized, judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in his judicial capacity. *Cohran v. State Bar of Georgia*, 790 F.Supp. 1568, 1574 n. 6 (N.D.Ga.,1992), citing *Pulliam v. Allen*, 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984).  At this time,

---

[7]  This point is now abundantly clear from the decision of the Georgia Supreme Court declining to exercise original jurisdiction to hear these constitutional claims.  See May 3, 2021 decision of the Georgia Supreme Court, Exhibit A to this Response.

the Plaintiff seeks prospective injunctive relief against the Defendants enjoining and restraining them from violating the Plaintiff's constitutional rights under the First, Fourth and Fourteenth Amendments of the United States Constitution to require that he undergo a medical, mental, psychiatric or psychological examination or from using his failure to submit to a mental examination as a basis for imposing disciplinary action against him.   Plaintiff has also requested declaratory relief declaring the actions of the Defendants to be in violation of the Plaintiff's rights as guaranteed by the First and Fourteenth Amendments of the United States Constitution.

**F.     Plaintiff's Claims Are Not Barred By Qualified Immunity.**

Qualified immunity generally shields government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Simmons v. Bradshaw*, 879 F.3d 1157, 1162 (11th Cir. 2018); *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Resolution of the question of qualified immunity often turn on issues of fact.   Hence, it is rare that this determination should be made until the summary judgment after an opportunity for discovery. The likelihood of material factual disputes upon which the Defendants' qualified immunity defense turns, including how much either of them knew about

facts supporting any claim of mental impairment and when they knew it may also make summary judgment inappropriate for certain Defendants.

Taking the allegations of the Verified Complaint as true, the Plaintiff has alleged that the Defendants' actions in ordering him to submit to a mental examination are substantially motivated as a response to Plaintiff's exercise of constitutionally protected conduct.   At the time the Defendants made their determination that Mr. Wood should undergo a mental examination the only "evidence" before the Defendants were the four, out-of-state grievances which relied exclusively as the basis of their complaints the comments posted to Plaintiff's personal social media.   A close temporal nexus between protected speech activity and retaliatory action can serve as a sufficient basis for an inference that the government acted out of an improper motive. *Joyner v. City of Atlanta*, 2018 WL 1442931, at *5 (N.D.Ga. 2018).

Qualified immunity "does not offer protection if an official knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff]." *Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018).   In this case, the Plaintiff has alleged in his Verified Complaint actions which when taken as true raise a factual issue

regarding whether the Defendants' acted with deliberate or careless indifference with regard to the Plaintiff's clearly established constitutional rights.

> **G.    Plaintiff's Entitlement To Attorney's Fees Is Governed By 42 U.S.C. § 1988.**

The Plaintiff is not presenting at this time a claim for attorney's fees, but reserves the right to do so when he is determined to be a prevailing party under 42 U.S.C. § 1988.

May 10, 2021.

Respectfully submitted,

Crain Law Group, PLLC
By: */s/ Larry L. Crain*
Larry L. Crain, Esq.
(Tenn. Supr. Crt. # 9040)
5214 Maryland Way, Suite 402
Brentwood, TN 37027
Tel. 615-376-2600
Fax. 615-345-6009
Email: Larry@crainlaw.legal

*Counsel for the Plaintiff*
*(Pro Hac Vice)*

*/s/ Ibrahim Reyes*
Ibrahim Reyes, Esq.
Florida Bar No. 581798
REYES LAWYERS, P.A.
236 Valencia Avenue
Coral Gables, FL 33134
Tel. 305-445-0011
Fax. 305-445-1181
Email: ireyes@reyeslawyers.com

*Counsel for the Plaintiff*
*(Pro Hac Vice)*

*/s/ L. Lin Wood, Jr.*
L. LIN WOOD, JR., Esq.
State Bar No. 774588
L. LIN WOOD, P.C.
P.O. Box 52584
Atlanta, GA 30355-0584
Tel. 404-572-6600
Fax. 404-506-9111
Email: lwood@linwoodlaw.com

*Counsel, Pro Se*

## CERTIFICATE OF COMPLIANCE

I CERTIFY that this document has been prepared in compliance with Local Rule 5.1C using 14-point Times New Roman font.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 10th day of May, 2021, the above Plaintiff's Response to Defendant's Motion To Dismiss was filed with the Court's electronic filing system that will provide notice to all parties.

By: */s/ Larry Crain*